UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

        Plaintiff,

**Case No.: 1:17-cv-00070-WCG**

v.

**WAL-MART STORES EAST, LP,**

        Defendant.

---

## DECLARATION OF AMY JO STEVENSON

I, Amy Jo Stevenson, declare as follows:

1. I am the Charging Party in this litigation. I am also the sister and legal guardian of Marlo Spaeth.

2. I filed a Charge of Discrimination with the EEOC to protect Marlo's civil rights under the Americans with Disabilities Act.

3. I interact with Marlo on a day-to-day basis and have for over fifty years. As her guardian, I manage Marlo's medical care and accompany her at medical examinations.

4. I accompanied Marlo to a two-hour psychological examination conducted by Wal-Mart's Expert Witness, Dr. Thompson, on June 1, 2018. The examination began at 1 p.m. and ended around 3 p.m.

5. During that examination, I noted that Marlo repeatedly looked for me, said my

1

name, and looked for the door.

6. Marlo did not understand many of the questions Wal-Mart's expert asked her. I also heard her say, "I don't want to do this," at multiple points during the two-hour examination. She also whispered, "I want to go home," "I wish I could go home," and asked, "Why are you doing this to me?" as well as, "Why is this happening to me?" during the examination.

7. Once we left the building and began walking to our car, Marlo was despondent. She did not say good bye to the EEOC attorneys and did not speak to me or to her step-sister. She walked five feet behind us and shrugged off our efforts to speak to her. This was abnormal behavior for Marlo.

8. In the car, Marlo began to tremble and covered her face with her hands. She started crying and said, "Why me?!" Marlo continued crying for several minutes of the ride from Milwaukee to Manitowoc while I and our sister Barbara attempted to console her.

9. Based on her negative reaction to the first two hours of examination with Wal-Mart's expert, as Marlo's guardian, I chose not to subject Marlo to further psychological testing beyond the two-hour examination she completed on June 1, 2018.

10. At the time, I believed further examination was too great a burden for Marlo to bear.

11. Several months later at my September 21, 2018 deposition, Wal-Mart's attorney asked me what I would do if I had to choose between having Marlo examined further by Wal-Mart's expert and having the case dismissed.

12. I explained that there are certain lengths am willing to go through to get justice for Marlo and to prevent Wal-Mart from treating others the way the company treated Marlo. I confirmed that if the issue presented itself I may potentially reconsider my earlier decision not to continue the examination.

13. The next week, on September 26, 2018, Wal-Mart's attorney deposed Marlo. Based on her reaction to the two hours of psychological testing by Wal-Mart's expert in June, I had some reservations regarding the deposition. I asked Marlo to attend the first hour of my deposition the week before, so she would know what to expect at her deposition. I believe observing the first hour of my deposition helped Marlo immensely.

14. At her deposition, Marlo surprised me with her resilience and ability to cope with the hours of questioning. The deposition began at 7:58 a.m. and ended at 5:17 p.m. Though it is my belief that Marlo did not understand many of the questions Wal-Mart's counsel asked her, Marlo remained in good spirits during the deposition and cooperated to the best of her ability. During the deposition, she even smiled at me and said, "I got the truth out."

15. Marlo far-exceeded my expectations at her deposition. Unlike at the June examination by Wal-Mart's expert, Marlo did not ask to go home until over 9 hours after the deposition started. Unlike her reaction to the examination with Dr. Thompson, Marlo did not cry after her deposition. Although she was tired, she remained in a positive mood for the rest of the day. Based on Marlo's deposition experience, I began to reconsider whether Marlo may be able to complete two more hours of examination with Wal-Mart's expert. However, I was not given much time to reflect on these new developments, as Wal-Mart filed their first motion to dismiss the next week.

16. As Marlo's guardian, I was faced with a difficult decision. I still believe that additional testing with Wal-Mart's expert will be difficult and burdensome to Marlo. However, considering the new resilience and positive attitude Marlo demonstrated at her deposition, I now believe that Marlo may be able to better cope with the examination by Wal-Mart's expert and complete the two additional hours of testing. I will be with her to support her at the examination and to guard her interests and intervene if it becomes necessary.

17. The EEOC has no control over the decisions I make as Marlo Spaeth's guardian.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 8, 2018.

_____
Amy Jo Stevenson