**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION,**

        Plaintiff,

                                        **CASE NO. 17-CV-00070**

**vs.**

**WALMART STORES EAST, LP,**

        Defendant.

---

### NOTICE OF MOTIONS AND MOTIONS *IN LIMINE* OF DEFENDANT

---

Pursuant to Federal Rule of Civil Procedure 16, Civil L.R. 7, the Court's Pretrial Order dated January 28. 2021 (ECF No. 176), and Federal Rules of Evidence 401, 402, 403, 404, 608, 702, 801, 802 and 803, Defendant Wal-Mart Stores East, LP ("Defendant" or "Walmart"), by and through its undersigned counsel, moves the Court *in limine* for an Order barring the introduction of any testimony or evidence, and/or the making of any argument regarding, referring, or otherwise relating to evidentiary matters discussed herein.

Under Federal Rule of Evidence 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence, however, may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time . . . ." *See* Fed. R. Evid. 403. "Evidence is unfairly prejudicial 'if it will induce the jury to decide the case on an improper basis . . . rather than on the evidence presented.' " *United States v. Miles*, 207 F.3d 988, 993 (7th Cir. 2000) (*quoting United States v. Pulido*, 69 F.3d 192, 201 (7th Cir. 1995).

Guided by these or other basic tenants of evidence and by case law in this Circuit and others, Walmart respectfully prays for an Order excluding any evidence or argument relating to the following:

**1.  The Court Should Prohibit Evidence Pertaining to the EEOC's Internal Determination.**

Walmart moves *in limine* to bar evidence that the EEOC issued a determination, after an investigation, that discrimination had occurred. Issued August 31, 2016, by District Director Julianne Bowman on behalf of the EEOC, the determination set forth the EEOC's opinion in a cursory fashion, without discussion of any of the evidence on which the agency based that conclusion.  The agency specified its findings as follows:

> I have considered all the evidence disclosed during the investigation and find that there is reasonable cause to believe that the Respondent violated the ADAAA. Notwithstanding its knowledge of Ms. Spaeth's disability, the Respondent changed her work schedule.  Despite requests from Ms. Spaeth and the Charging Party, the Respondent failed to engage in the interactive process and denied her the reasonable accommodation of working the same hours she had worked for years. This accommodation would not have caused an undue hardship. The Respondent disciplined, discharged and failed to re-hire Ms. Spaeth thus denying her the benefits and privileges of employment in violation of the ADAAA.

(Declaration of Emery Harlan at ¶ 2, Ex. A.)

Courts in the Seventh Circuit routinely bar such evidence for multiple reasons.  Among those reasons, courts note that the EEOC is not the ultimate fact-finder – district judges and juries fulfill that role – so the EEOC's opinion is of marginal relevance at best.  Those determinations, like this one, are often bereft of any discussion of the evidence, so the weight a judge or jury should give it is not discernible. Third, since review is *de novo*, in all likelihood, the jury will hear the same evidence – the witnesses and documents – that the EEOC considered and judge for itself whether discrimination occurred.  Next, the evidence exaggerates the importance of the views of one litigant, the EEOC's, over its adversary's and therefore puts a proverbial thumb on the scale

in favor of the Plaintiff. "To admit the report under these circumstances would amount to admitting the opinion of an expert witness as to what conclusions the jury should draw, even though the jury had the opportunity and the ability to draw its own conclusions from the evidence presented regarding disparate treatment." *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984).

Fifth, "EEOC determinations are not homogenous products; they vary greatly in quality and factual detail," *Tulloss v. Near N. Montessori Sch., Inc.*, 776 F.2d 150, 153 (7th Cir. 1985) (citing *Johnson*, 734 F.2d at 1309), and this one provides no insight into what evidence the EEOC considered or even the reasons that purportedly justify the agency's conclusions. Moreover, and even more to the point, these determinations are inadmissible because proceedings before the EEOC are non-binding and non-adjudicative in nature. *Id.* at 152; *Campbell v. Dwyer Prods. Corp.*, 31 F. Appx. 916, 920 (7th Cir. 2002) (citing *Tulloss*, 776 F.2d at 152). There is no assurance that the EEOC acquired any information based on sworn testimony and certainly none of it was tested by an adversary's cross-examination. EEOC investigations are often a "mish-mash of self-serving and hearsay statements and records" of uncertain value. *Campbell*, 31 F. Appx. at 920 (quoting *Tulloss*, 776 F.2d at 154). Indeed, the EEOC's conclusion may be more confusing to the jury than helpful. After all, "[it] states only a conclusion and does not provide much additional probative information. . . . It merely presents the question the jury was tasked with answering. And it could have confused the jury into thinking that the issue was already decided." *Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 442 (7th Cir. 2009). As *Tulloss* noted, presenting the EEOC's determination of discrimination would be "tantamount to saying 'this has already been decided and here is the decision." 776 F.2d at 154. In fact, admitting the determination is not only wasteful (since the jury will likely evaluate the same witnesses and same documents that the EEOC

evaluated), but extravagantly so since "admission of the determination would have necessitated the taking of additional evidence to apprise the jury of the nature and extent of the EEOC investigation. To do so undoubtedly would have lengthened the trial." *Johnson*, 734 F.2d at 1309.

Most courts bar this evidence as hearsay under Fed. R. Evid. 803(8)(c) [now Rule 803(8)(B)]. *Chandler v. Roudebush*, 425 U.S. 840, 863 n.39 (1976) (citing Fed. R. Evid. 803(8)(c)), noted in passing that "[p]rior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal[] trial de novo[,]" but that rule of evidence does not pertain to public records, where "the sources of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). Indeed, *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988), confirms that that passage is an integral aspect of the rule. That court noted "a trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof -- whether narrow 'factual' statements or broader 'conclusions' -- that she determines to be untrust-worthy." *Id.*

The court in *Beech Aircraft* added that "safeguards built into other portions of the Federal Rules, such as those dealing with relevance and prejudice, provide the court with additional means of scrutinizing, and, where appropriate, excluding evaluative reports or portions of them." *Id.* at 167-68. That alluded, of course, to Fed. R. Evid. 403, which permits exclusion of even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." As explained above, introducing the EEOC's determination implicates all of these. In fact, introducing this determination is especially egregious because here the EEOC functions in two roles. In one, it served as a government agency investigating and assessing a claim of discrimination, a role where it ostensibly assumed a mantle

of neutrality. In the other, it stands before the court as a litigant, and, as with most litigants, a point of view and an agenda. Putting forward an official government document that asserts discrimination has occurred elevates one litigant's status above another's. Suddenly, the EEOC presents not as one of two parties embroiled in litigation, but a government agency whose opinions and conclusions are entitled to special deference and weight for many jurors will think, after all, why otherwise would it have been presented.

In sum, courts apply both rules and conclude that cursory, unexplained determinations of discrimination based upon undisclosed evidence after a non-binding, non-adjudicative, investigation based on unsworn, unchallenged testimony that constitutes a "mish-mash" of hearsay and self-serving information fails to satisfy both rules' requirements. *See Young v. James Green Management Inc.*, 327 F.3d 616, 624 (7th Cir. 2003). Accordingly, the initial determination is barred by both Fed. R. Evid. 403 and Fed. R. Evid. 803(8)(B).

2. **Evidence About Other Cases or Claims of Discrimination Involving Walmart Should Also Be Barred.**

Walmart moves to bar any argument or evidence the EEOC may submit suggesting that Walmart has engaged in discrimination on other occasions. Walmart is a very large company and has faced multiple claims of discrimination over the years. Consequently, the EEOC may attempt to offer evidence of other cases in order to prove that Walmart discriminated against Ms. Spaeth as it alleges here. But Fed. R. Evid. 404 prohibits such efforts. Subpart A of the Rule prohibits "[e]vidence of a person's character or character trait" and makes it inadmissible "to prove that on a particular occasion the person acted in accordance with the character or trait." So too, subpart B of the same Rule prohibits "[e]vidence of any . . . wrong or act" that would "prove a person's character in order to show that on a particular occasion the person acted in accordance with the

character." Evidence of wrongs or acts are, on occasion, admissible for other purposes, but that evidence must always be relevant. *See* Fed. R. Evid. 402.

Walmart anticipates that the EEOC can present no claims or events with sufficient similarity to this claim to make those relevant. For example, it is doubtful that the EEOC will present disability discrimination claims involving other associates (employees)[1] working at the Manitowoc store involved here, terminated by the same store manager, or where the termination was reviewed by the same people participating in the internal appeals process. It is equally doubtful that the associates' work will have been evaluated by the same supervisors or that their discipline and discharges will involve excessive absenteeism. The associates will certainly not suffer from Down syndrome or likely any similar cognitive impairment. Nor will they have worked for Walmart for more than a decade as Marlo Spaeth did. As the Seventh Circuit recently observed in *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368-69 (7th Cir. 2019) (internal quotation marks and citations omitted), while all those "similarly situated employees need not be identical in every conceivable way, they must be directly comparable to the plaintiff in all material respects. In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." While the court noted that there exists no "hard and fast" test, "[i]n the employment discrimination context, the requirement to find a similarly situated comparator is really just the same requirement that any case demands – the requirement to submit relevant evidence." *Id*. at 369 (internal quotation marks and citations omitted).

---

[1] Walmart refers to its employees as "associates."

*McDaniel* followed *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708 (7th Cir. 2018) and *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887 (7th Cir. 2018), which suggest that evidence without employee names, work histories, performance reviews, explanations of the nature of any disability, job responsibilities, supervisors, similar disciplinary records and the like is too vague to allow for a meaningful comparison. *Skiba* and *Johnson* involved disparate treatment claims and summary judgment, but the analysis is no less relevant to evidentiary issues about whether its treatment of other employees demonstrates Walmart discriminated against Marlo Spaeth. After all, "[e]vidence of what has happened to other employees is only relevant if that employee is in the same boat as the plaintiff." *Johnson*, 892 F.3d at 895.

Even if Rule 404 fails to bar the evidence, it is tailor-made for Fed. R. Evid. 403. Rule 403 precludes the introduction of evidence which, in the court's discretion, it determines confuses issues, wastes time, misleads the jury, or unfairly prejudices a party. Introducing other claims about discrimination does all that and more. It invites – indeed requires – that Walmart explain the dissimilarities between those matters and the present one and invites multiple trials within a trial. The genus of Rule 404 is that it confines juries to addressing the question of what the defendant supposedly did and forbids the evaluation of a case based upon who that defendant supposedly is. Parading a series of other claims before such a jury distracts from, rather than focuses on, this central question. The issue for this jury is whether the people in Manitowoc, Wisconsin who determined, after considerable effort, that Marlo Spaeth's constant and excessive absenteeism required her employment to end did so because of her disability. What other people working at other Walmart stores did with other employees has no bearing on that subject and should be excluded from this trial.

**3.      The Court Should Preclude Testimony and Argument to the Effect that Supposed Violation(s) of Walmart's Internal Anti-Discrimination Policies Means Walmart Discriminated in Violation of Federal Law.**

Walmart moves, next, to preclude argument or testimony suggesting that alleged violations of its internal anti-discrimination policies somehow means that Walmart discriminated against Marlo Spaeth in violation of federal law. Walmart, like many employers, promulgated internal rules and policies forbidding discrimination based on disability and the like among associates (employees) at its stores. Some deposition questioning examined those policies with an implication that because Walmart supposedly violated an internal policy, it had discriminated against Marlo Spaeth.

No one knows whether the EEOC will repeat that questioning or engage in that argument at trial, but it would be improper and evidentiary rules of relevance forbid it. Under Fed. R. Evid. 402, only relevant evidence is admissible; irrelevant evidence is inadmissible. As noted above, Fed. R. Evid. 401 defines relevant evidence as that which makes "a fact more or less probable than it would be without the evidence" and requires that the fact be "of consequence in determining the action." To the extent that Walmart's internal policies prohibiting discrimination exceed the requirements of federal law, any supposed violation is of no legal consequence. To the extent those policies coincide with federal law, it is the statute, not the policy, that imposes a legal duty on Walmart. The EEOC's Complaint accuses Walmart of violating federal law, not company policy, and this court does not sit to evaluate Walmart's personnel policies or their implementation. Indeed, any suggestion otherwise imposes a responsibility on federal courts far beyond what they have assumed. "As we have stated many times, our role is not to make suggestions to managers on how to deal with employees more fairly or effectively -- we leave that to a company's personnel department. This [c]ourt does not sit as a super-personnel department that reexamines an entity's

business decisions." *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 806 (7th Cir. 2001) (internal quotation marks and citations omitted).

As a postscript, this does not suggest that Walmart's policies prohibiting discrimination based on disability are out of bounds for other purposes. Whether those policies are admissible for other reasons remains to be seen. At the same time, however, as *Kohls* explains, the violation of an internal policy – there a decision to terminate an employee immediately when the company's written discipline policy required progressive discipline –violates no federal law and the jury here should be informed of that important distinction.

**4.  Testimony or Evidence Relating to Remote in Time Attendance Records of Non-Similarly Situated Associates Should be Excluded at Trial.**

Fed. R. Evid. 402 and 403 compels the exclusion of any testimony or evidence, and/or the making of any argument regarding, referring, or otherwise relating to remote in time attendance records of non-similarly situated Walmart associates. Through a Motion to Seal and Objection to Confidential Designation (the "Motion to Seal"), the EEOC sought to remove the confidential designations of attendance records for two associates, Debbie Moss (a training coordinator) and Karen Becker (a personnel coordinator). (ECF No. 107 at pp. 3 and 4; ECF No. 111-1; ECF No. 111-5.) Walmart suspects that the EEOC will seek to introduce these records at trial, but these records concern non-similarly situated associates and are remote in time. They are not relevant to any issue in this case and would operate only to confuse issues for the jury, result in unnecessary mini-trials and unfairly prejudice Walmart.

In its Motion to Seal, the EEOC argued that the attendance records of the two referenced associates show a "widespread" pattern of Walmart excusing early departures for non-disabled individuals and will be important for a jury in determining whether Walmart's treatment of Marlo

Spaeth deviated from this practice. (ECF No. 107 at p. 4.) It does not, and in any event is wholly irrelevant to the considerations at issue in this case.

As an initial matter, the attendance records of a mere two associates do not show a widespread pattern of excusing non-disabled associates from attendance policies by any stretch of the imagination. Further, these records are remote in time, as they stop in 2008. (ECF No. 111-1; ECF No. 111-5.) The attendance issues which eventually led to Ms. Spaeth's discharge all took place toward the end of 2014 and into 2015. (ECF No. 100 at ¶¶ 7-11; ECF 100-1; 100-2 and 100-3.) In addition, these attendance records concern a period of time before Walmart's November 2014 shift in scheduling practices, where it transitioned to mandatory computer-generated schedules based on customer traffic analytics. (ECF No. 116 at ¶¶ 14-17.) The attendance matters at issue in this case for Ms. Spaeth all occurred after this shift in scheduling practices. Accordingly, the years-old attendance records of a mere **two associates** would not be probative of Walmart's attendance practices at or around the time of the adverse employment actions at issue in this case, which appears to be what the EEOC hopes to offer this evidence for. *See Gates v. Caterpillar, Inc*., 513 F.3d 680, 689 (7th Cir. 2008) (the relevant consideration is whether an employer met the employer's expectations at the time of the adverse employment actions at issue).

Moreover, this evidence cannot serve as comparator evidence and for this additional reason has no probative value in this case. While comparator information can certainly be relevant in employment discrimination claims, the Seventh Circuit has long held that comparators in employment discrimination cases must be "similarly situated" to the complaining party/employee to be probative and relevant. *See Gates v. Caterpillar*, 513 F.3d 680, 690-91 (7th Cir. 2008). This requires, in the Seventh Circuit, that Marlo Spaeth be comparable to Ms. Moss and Ms. Becker in all material aspects. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) ("In order

for an individual to be similarly situated to the plaintiff, the plaintiff must show that the individual is directly comparable to her in all material respects. Factors relevant to this inquiry include whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications.") (Internal citations and quotations omitted.)  Neither Ms. Moss nor Ms. Becker were similarly situated to Ms. Spaeth. They were not sales associates with customer facing/centric positions who worked on the salesfloor like Ms. Spaeth and they did not report to the same immediate supervisors as Ms. Spaeth. (ECF No. 116 at ¶¶ 11-12.)  The analysis courts utilize for employment discrimination cases place no value on, and in fact disregard, comparator information for non-similarly situated employees. Accordingly, the attendance record of the two associates at issue is of no value to this case.

Additionally, the threshold question here is whether Ms. Spaeth is a qualified individual with a disability under the ADA, as the jury does not get to the question of whether Walmart discriminated against her or failed to reasonably accommodate her if she is not a qualified individual with a disability. An individual is a qualified individual with a disability if he or she can **perform the essential functions of the employment position** that such individual holds or desires" with or without reasonable accommodations. 42 USC § 12112(a); 42 USC § 12111(8); *Basith v. Cook Cty*, 241 F.3d 919, 927 (7ᵗʰ Cir. 2001) (emphasis added). As the Seventh Circuit has instructed, in most circumstances, regular attendance is an essential function of every job. *See e.g. Jovanovic v. In-Sink-Erator*, 201 F.3d 894, 899-900 (7ᵗʰ Cir. 2000) ("[c]ommon sense dictates that regular attendance is usually an essential function in most every employment setting"); *EEOC v. Yellow Freight*, 253 F.3d 943, 948 ("in most cases, attendance at the job site is a basic requirement of most jobs").  The attendance records of other associates concern those associates and not Ms.

Spaeth or her circumstance. Accordingly, they have no relevance to the question of whether *Ms. Spaeth* could perform the essential functions of her job with or without reasonable accommodations.

Inserting the attendance records at issue into this case would confuse and mislead the jury into believing that remote in time attendance records of associates who neither held similar positions to that of Ms. Spaeth nor reported to the same supervisor are relevant considerations when they are not. It would only improperly direct the jury to focus on random attendance issues of non-comparators rather than the actual issues in the case. It would also lead to mini-trials over each associate's attendance record, which may include testimony from additional witnesses (such as perhaps additional managers), a review of the management team and attendance practices years prior to Ms. Spaeth's termination, and examination of the particular circumstances of each early departure in those records, for example. This is not only highly prejudicial to Walmart, but it would also result in undue delay. Such evidence must be excluded.

5.    **The Court Should Also Bar All Testimony, Evidence and/or Argument Relating to, Concerning or Referencing Certain Statements of Non Decisionmaker Karen Becker and Walmart Not Contacting Marlo Spaeth's Mother or Sister to Discuss Any Scheduling Change.**

Pursuant to Fed. R. Evid. 401, 402 and 403, Walmart requests an Order barring any testimony, evidence, and/or argument relating or pertaining to: (i) statements of Karen Becker, a non-decisionmaker Walmart associate, expressing regret that she did not speak with the mother of Marlo Spaeth ("Ms. Spaeth") regarding certain scheduling changes and speculating that had she done so it may have avoided certain problems; and (ii) Walmart not contacting Ms. Spaeth's mother or sister to discuss any scheduling change.

As noted above, Ms. Becker works at Walmart as a Personnel Coordinator. During the course of Ms. Becker's deposition in this case, counsel for the EEOC elicited testimony from her

about her personal regret regarding communication with Ms. Spaeth's mother. Specifically, Ms.

Becker testified as follows:

> Q Okay. In your previous conversations that you testified about with Sandra Barnes, did you have pleasant exchanges? How would you characterize your relationship with Sandra Barnes?
>
> A No. It was pleasant. She would ask me what was going on, and when I explained it to her, you know, that everything was fine.
>
> Q And did she have a confrontational tone with you ever?
>
> A No, not that I can remember.
>
> Q Is it a stretch to say you considered her a friend?
>
> A Yes, I would consider her a friend. I mean, we got along with, you know, any situation we had with Marlo, as far as I know. I didn't have any, you know, ill feelings toward her or mad at her for any time that she had called me for anything.
>
> Q Why didn't you call Sandra Barnes when you saw this scheduling availability form scheduling Marlo till 6:00 p.m.?
>
> A I thought that Bonnie was going to take care of that.
>
> Q Did it occur to you that Sandra Barnes should know that Marlo was now going to be available till 6:00 p.m.?
>
> A Not at that time, no, it did not.
>
> Q In hindsight --
>
> A In hindsight --
>
> Q -- what do you think?
>
> A In hindsight, I think I should have.
>
> Q And why do you say that?
>
> A I think it would have created a lot less problems, and I think then if I would have talked to Sandra, if there would have been some other reason that we didn't know about, we could have talked about it and maybe figured something out.
>
> Q Did you -- you had a way to contact Sandra, right? You had her phone number; is that right?
>
> A Yes.
>
> Q Was it in Marlo's file?
>
> A Yes. It was under her, like, her emergency contacts.
>
> Q Okay. And did you have a way to contact Amy Jo Stevenson?
>
> A No.

The EEOC cited this aspect of Ms. Becker's testimony in its Additional Proposed Findings in

connection with the summary judgment briefing process. (ECF No. 109 at ¶ 87.) Accordingly,

Walmart anticipates that the EEOC will seek to use Ms. Becker's testimony to support its claims

of discrimination in this matter. The Court should bar introduction of Ms. Becker's statements

because they are not relevant to any issue in this matter. Ms. Becker played no role in any of the employment decisions at issue in this case. Hence, her regret over not contacting Ms. Spaeth's mother and her speculative opinion that had she done so, it could have eliminated "problems" that subsequently arose, is utterly irrelevant to the issue of whether Ms. Spaeth was the victim of intentional discrimination. Further, it is undisputed that neither Ms. Becker nor Walmart were under any legal obligation to communicate with Ms. Spaeth's mother or sister regarding any aspect of Ms. Spaeth's employment, let alone a relatively straightforward issue such as scheduling. And, there is nothing in Walmart's records indicating that Ms. Spaeth, Ms. Spaeth's mother, or Ms. Spaeth's sister had requested that Ms. Becker or anyone else at the Company contact Ms. Spaeth's mother or sister regarding issues pertaining to Ms. Spaeth's employment.

Additionally, even if the fact that Walmart did not contact Ms. Spaeth's mother or sister about Ms. Spaeth's schedule change or Ms. Becker's statements and speculative opinion had some probative value, the prejudicial impact of the proffered evidence far outweighs that marginal benefit. Indeed, admission of that evidence could cause the jury to be side-tracked with considering why Walmart or Ms. Becker did not make contact with Ms. Spaeth's mother and what would have happened had either done so, rather than focusing on the central issue of whether Ms. Spaeth was the victim of intentional disability discrimination. Accordingly, evidence and argument relating to Ms. Becker's statements should be barred.

**6.    Additionally, Evidence Relating to Availability Forms for Marlo Spaeth and Testimony or Evidence Relating to a Misstatement in a Position Statement Relating to Those Availability Forms Should be Excluded as Evidence at Trial.**

Under Fed. R. Evid. 402 and 403, Walmart is entitled to an Order barring the introduction of any testimony or evidence, and/or the making of any argument regarding, referring, or otherwise relating to scheduling availability forms for Marlo Spaeth and a misstatement in a position

statement from Walmart concerning an availability form for Marlo Spaeth. Based on Plaintiff EEOC's submissions during summary judgment, Walmart suspects the agency will seek to introduce evidence on and make argument regarding Ms. Spaeth's purported availability to work as set forth on internal availability forms at Walmart and a misstatement in Walmart's initial position statement during the administrative stage of this case regarding those forms.

At issue in this case is not Ms. Spaeth's availability preferences as set for on internal availability forms. Rather, at issue is whether Ms. Spaeth is a qualified individual with a disability and, if so, whether Walmart failed to reasonably accommodate her and/or discriminated against her on account her disability. Ms. Spaeth's availability forms have nothing to do with any of this, and infusion of evidence relating to the same will only operate to confuse and mislead the jury.

Indeed, there is no evidence in this case to suggest that Ms. Spaeth's availability forms were completed with her medical condition in mind. For instance, there are no doctor's notes or medical documentation around the time the forms were completed indicating that Ms. Spaeth had to work the hours listed on the forms because of any medical condition, let alone the medical condition at issue in this case. There is also no evidence from Walmart associates suggesting that Ms. Spaeth's Down syndrome was a consideration when the availability forms were completed and the EEOC cannot tender evidence to suggest otherwise as (other than Ms. Spaeth) none of the EEOC's witnesses were present during the times the forms were completed and have first-hand knowledge of the same. As such, the internal availability forms have no tangible, non-speculative connection to Ms. Spaeth's medical condition and are therefore not probative to questions on whether she was a qualified individual with a disability and whether she was denied a reasonable accommodation. The only function the introduction of testimony and evidence relating to internal availability forms completed for or by Ms. Spaeth would have would be to confuse the jury into

believing that the times listed on the forms had something to do with her disability (when they did not) and to compel the jury to make assumptions and draw conclusions from that on both the qualified individual with a disability issue and the reasonable accommodation issue. That would be improper.

Evidence relating to the availability forms would also serve no legitimate purpose on the question of whether Walmart discriminated against Ms. Spaeth because of her disability. While the EEOC suggests that scheduling (allegedly) Ms. Spaeth outside of her stated availability is evidence of discrimination, Ms. Spaeth's discipline and termination had nothing to do with whether or not an availability form was in place or what was on any particular availability form. She was issued written warnings and eventually discharged for leaving work early and, in some cases, not coming to work at all. (*See* ECF No. 100 at ¶¶ 8-10; ECF No. 100-1 at p. 3; ECF No. 100-2 at p. 2; ECF No. 100-3 at p. 3.) Significantly, regardless of what times in the day Ms. Spaeth was purportedly available to work as reflected on her availability forms (i.e. 12:30pm to 4:00pm vs. 12pm to 6pm), many of the attendance issues that served as the basis for her discipline and discharge would have still existed, as there were several occasions in which she was a no-call/no-show and several occasions in which she left work prior to 4:00pm. (ECF No. 100-1 at p. 2 .)[2] Moreover, and as noted in Walmart's summary judgment filings, Ms. Spaeth was discharged after 17 attendance occurrences/violations, even though Walmart policy called for termination after 7 occurrences. (ECF No. 102 at ¶ 67.) Looking just at her 4 no-call/no-shows and combining those with the multiple occasions in which she left work before 4:00pm, she met the 7-occurrence threshold and

---

[2] As the Court may recall, at the time of her discharge, the internal availability form on file for Ms. Spaeth and electronic records for Ms. Spaeth indicated that she was available to work on various days from noon to 6pm. (ECF No. 106 at ¶ 18; ECF No. 106-17 at p. 4.) Prior to this stated availability, electronic records and an availability form on file for Ms. Spaeth indicated that she was available to work from 12:30pm to 4:00pm. (ECF No. 106 at ¶ 18; ECF No. 106-17 at p. 2.)

could have been discharged consistent with written policy even if her previous availability of 12:30pm to 4:00pm was applied. (ECF No. 110 at ¶¶ 18 and 80.) In other words, and for all the reasons discussed here, her availability forms and the information reflected in the same is utterly irrelevant to the question of whether Walmart had legitimate, non-discriminatory grounds to end her employment or whether it discriminated against her in any way. Allowing testimony and evidence on Ms. Spaeth's availability forms would unduly prejudice Walmart by misdirecting the jury to red herrings and non-consequential considerations.

This extends to a statement concerning Ms. Spaeth's availability forms made by Walmart during the EEOC's administrative processing of the case. With this, Walmart suspects the EEOC will attempt to highlight for the jury a comment Walmart's previous counsel made in a position statement that Walmart had an availability form showing Ms. Spaeth was available to work from noon to 6pm at the time of her November 2014 schedule change. Citing to an availability form dated February 2015 as the first form to show Ms. Spaeth was available during the hours at issue, the agency has argued, as part of its effort to show pretext, that Walmart made a false statement in its position statement. None of this, however, is relevant to a material issue in this case or admissible.

First, as noted above, Ms. Spaeth's availability forms and the information on those forms are not relevant to whether or not Ms. Spaeth is a qualified individual with a disability and, if so, whether or not Walmart failed to reasonably accommodate her or discriminated against her on account of the same when it disciplined her and ultimately terminated her employment. Second, the position statement notes, on the first page, that:

> "This response, while believed to be accurate, does not constitute an affidavit or a binding statement of Walmart's legal position, nor is it intended to be used as evidence of any kind in any administrative or court proceeding in connection with [Ms. Spaeth's] allegations. Because additional facts likely would be uncovered through discovery or following a full investigation,

> Walmart in no way waives its right to present new or additional information at a later date, for substance or clarification."

(ECF No. 106-28 at fn. 1.) Accordingly, comments in the position statement were not intended to be definitive, unequivocal statements or attestations on facts and are not otherwise admissions of fact in any way. Third, the position statement was prepared by legal counsel and not a decision-maker in this case and there are no affidavits or declarations from decision-makers attesting to the statement at issue. The statement in question, therefore, does not shed light on the mindset, beliefs and motivations of actual decision-makers in the case, including but not limited to what specific documentation and information decision-makers may have relied on in taking the employment actions at issue in the case. Fourth, Walmart has not adopted the statement at issue as its own. During the 30(b)(6) deposition in this case, the EEOC asked Walmart about the contents of the position statement submitted during the administrative phrase of the case and Walmart's corporate deponent testified in relevant part as follows:

> "      . . . what I am not trying to say is that I'm acknowledging the accuracy of everything in this initial response. There's actually one error that we -- that we discovered in here already as it relates to -- as it relates to a scheduling availability form because we acknowledge that there was a missing scheduling availability form which I feel like we went through in previous testimony, but it doesn't necessarily point that out in this document accurately so I want to make sure that that's captured in my answer. Does that make sense.
>
> Q      Yes. Thank you.
>
> A.      So I'm acknowledging what this is for and what it's referring to, but I want to make sure its clear that there was an error in here that I'm not now saying is accurate."

(Harlan Decl. at ¶ 3, Ex. B.) Again, the statement is not an attestation of fact and it is not an admission. And finally, while in certain situations statements in position statements may be admissible, "statements made to the EEOC [in a position statement] do not carry significance independent of possible impeachment." *Gage v. Metro. Water Reclamation Dist. of Greater Chi.*, 365 F. Supp. 2d 919, 936-937 (N.D. Ill. 2015). Walmart does not anticipate calling a witness to testify that there was a physical availability form in place for Ms. Spaeth at the time of the

November 2014 scheduling system change reflecting her availability as noon to 6pm. There would be no occasion for impeachment and the statement at issue would be irrelevant and inadmissible. *See Id.* (over plaintiff's argument that statements in a position statement were relevant and admissible as evidence of pretext, granting defendant's motion *in limine* to exclude the same because such statements are only probative for impeachment purposes). This evidence, and any argument related to it, should be excluded from trial.

7.  **The Court Should Limit the Testimony of Plaintiff's Expert, David S. Smith, M.D.**

Pursuant to Federal Rules of Civil Procedure 16 and Fed. R. Evid. 401, 402, and 403, Walmart additionally moves *in limine* of the pretrial for an Order to limit Dr. David S. Smith, a retired family doctor, from testifying regarding: (i) Walmart's obligations under the Americans with Disabilities Act and the prudence of maintaining Ms. Spaeth's existing work schedule and (ii) the psychological testing administered to Ms. Spaeth by Walmart's expert, Dr. David W. Thompson. Very simply, Dr. Smith is not qualified to opine on any of these subjects and, in any event, his opinions would not aid the jury in this matter.

Additionally, pursuant to Fed. R. Evid. 401 and 403, Walmart moves for an Order barring Dr. Smith from offering opinions regarding "grooves" and the purported disruption of Ms. Spaeth's "groove." Dr. Smith's "groove" related opinions are wholly irrelevant and would unfairly prejudice Walmart. The pertinent issue is what information Walmart's decisionmakers had at the time of the alleged accommodation requests. Dr. Smith's after the fact expert opinions regarding Ms. Spaeth's "groove" is of no moment here because there is no evidence that either Ms. Spaeth or Amy Jo Stevenson (Ms. Spaeth's sister) provided Walmart with any doctor's statement to suggest a connection between her Down syndrome condition and inability to adhere to the new work schedule.

This Court is to serve as the gatekeeper in ensuring that proffered expert testimony meets the standards established by Rule 702 of the Federal Rules of Evidence. Before admitting expert testimony under Rule 702, the Court must ensure that the testimony is reliable and relevant. *Higgens v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015). Plaintiff bears the burden of establishing that Dr. Smith's expert testimony is admissible. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

### a. Dr. Smith Is Not Qualified to Offer an Opinion on Walmart's Obligations Under The ADA, Nor Would His Opinions Be Useful to the Jury.

In his initial report, Dr. Smith opines: "[i]t does not seem that Walmart made accommodations for a long-term employee as required to do under the American's with Disabilities Act. It seems to me the easiest solution at the time would have been to allow Ms. Spaeth to maintain her previous work schedule." (Harlan Decl. at ¶ 5, Ex. D.) While this Court has decided to allow Dr. Smith to testify regarding certain aspects of Ms. Spaeth's condition, it should not allow him to testify regarding the ADA or Walmart's obligations under the law. Dr. Smith is a medical doctor. He concedes that he does not know or understand "all the ins and outs" of the ADA and admits that he has never even read it. (Harlan Decl. at ¶ 4, Ex. C.) Hence, Dr. Smith is clearly not qualified to render an opinion as to whether Walmart's actions violated the ADA.

Additionally, Dr. Smith's opinions regarding Walmart's compliance with the ADA and the wisdom of allowing Ms. Spaeth to maintain her previous schedule should be excluded because those opinions would not be helpful to the jury in this case. In order for an expert's opinion to be deemed admissible, that testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. This Court will instruct the jury on the applicable aspects of the ADA and how to determine whether that law was violated by Walmart. It is the jury's role to determine whether the EEOC has meet its burden of proving intentional discrimination

under the ADA. Dr. Smith's views about Walmart's obligations under the ADA and speculation as to what might have occurred if Ms. Spaeth was allowed to maintain her work schedule would not, in any way, assist the jury in fulfilling its duty in resolving the disputes in this matter. Courts have repeatedly rejected proffered expert testimony where, as here, that testimony addresses a legal conclusion and is not useful to a jury in reaching its determination. *See McGuffey v. Neil*, No. 1:18-cv-322, 2020 U.S. Dist. LEXIS 17974 (S.D. Ohio Jan. 15, 2020) (certain expert opinions from employment attorney excluded because, *inter alia*, they were framed in legal terminology and addressed subjects not requiring his specialized assistance); *Rieger v. Orlor, Inc*., 427 F. Supp. 2d 99, 104 (D. Conn. 2006) (expert precluded from opining as to whether a company could have accommodated a plaintiff's disability given that the opinion implicates legal standards and seeks to substitute the judgment of the expert for that of the jury).

In sum, this Court should bar any testimony or other evidence from Dr. Smith relating to Walmart's obligations under the ADA or the wisdom of maintaining Ms. Spaeth's work schedule.

**b.    Dr. Smith Should Also Be Barred from Testifying About the Propriety of Dr. Thompson's Testing Instruments or Methodology.**

In addition to expounding upon Walmart's obligations under the ADA, Plaintiff also appears poised to have Dr. Smith testify regarding the merits of the tests administered to Ms. Spaeth and the interpretation of the test results. In fact, Dr. Smith flatly opines that: "Dr. Thompson's use of standardized testing in this situation is inappropriate." (Harlan Decl. at ¶ 5, Ex. D.) The simple fact is that Dr. Smith is a layperson relative to psychological testing and hence should not be allowed to testify as an expert regarding a subject that he has no particular expertise in. Fed. R. Evid. 702 requires courts to zealously guard against an otherwise qualified expert from straying beyond his or her expertise. A court is to determine an expert's qualifications relative to **each** matter he or she purports to testify about. *See Hartle v. FirstEnergy Generation Corp.*, No.

08-1019, 2014 U.S. Dist. LEXIS 43033, at *7 (W.D. Pa. Mar. 31, 2014). For "[a]n expert may be generally qualified but may lack qualifications to testify outside his area of expertise." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003). Courts have consistently applied this principle to exclude testimony on subjects that a medical expert is not qualified to opine on. *See, e.g.*, *Trevino v. Boston Sci. Corp.*, No. 2:13-cv-01617, 2016 U.S. Dist. LEXIS 65967, at *74 (S.D. W. Va. May 19, 2016) (in light of urogynecologist's lack of product testing experience court barred expert from opining on defendant's product testing and clinical trial processes); *Edwards v. Ethicon, Inc.*, No. 2:12-CV-09972, 2014 U.S. Dist. LEXIS 92316, at *45 (S.D. W. Va. July 8, 2014) (urogynecologist and professor of obstetrics and gynecology barred from testifying regarding purported insufficiency of urethra device testing in light of his lack of knowledge or experience regarding the appropriate testing a manufacturer should conduct); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 197 (S.D.N.Y. 2009) (medical doctor precluded from offering expert opinions regarding defendant's marketing of drugs because, *inter alia,* his knowledge of the marketing practices "were based mostly on conversations with colleagues").

In his deposition in this matter, Dr. Smith freely admitted that he has no expertise relative to the administration of psychological testing. (Harlan Decl. at ¶ 4, Ex. C.) He also concedes that he has not authored any articles on that subject and is not "in the testing business." (*Id.*). And, there is nothing in his Curriculum Vitae which indicates that he has any particular expertise on the subject of psychological testing. (Harlan Decl. at ¶ 5, Ex. D.) Hence, even though this Court has deemed Dr. Smith qualified to testify on certain issues, it should bar Dr. Smith's opinions regarding the tests administered to Ms. Spaeth by Dr. Thompson and the value of the results of those tests. To allow Dr. Smith to offer testimony in these areas would expose the jury to the lay musings of a witness with no foundation whatsoever on the subject of psychological testing.

**c.    Dr. Smith's Opinions Regarding "Grooves" and the Supposed Impact of the Disruption of Marlo Spaeth's Groove Are Irrelevant and Prejudicial and Should Be Excluded.**

Walmart fully recognizes that the Court has deemed Dr. Smith qualified to offer opinions on the subject of "grooves."  However, the Court has not decided whether Dr. Smith's "grooves" opinions are admissible under Rules 401 and 403 of the Federal Rules of Evidence. Walmart respectfully requests that the Court rule on that issue in the context of the instant Motion.

In *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009), the Seventh Circuit observed: "an employer may not be obligated to provide a specifically requested modest accommodation unless the employer is made aware of its medical necessity to the employee."  The court further observed that: "the language of the **ADA** demonstrates that a reasonable **accommodation** is **connected** to what the employer knows about the employee's precise limitations." *Id.* (emphasis added.) Significantly, the ADA expressly defines discrimination to include "not making reasonable accommodations to the **known** physical or mental limitations of an otherwise qualified individual . . . ." 42 U.S.C. § 12112(b)(5)(A) (emphasis added). Finally, in underscoring the importance of discerning the employer's actual knowledge in reasonable accommodation ADA cases, the court noted:

> "[O]ur cases have consistently held that disabled employees must make their employers aware of any nonobvious, medically necessary accommodations **with corroborating evidence such as doctor's note or at least orally relaying a statement from a doctor**, before an employer may be required under the ADA's reasonableness standard to provide a specific modest accommodation the employee requests." *Ekstrand*, 583 F.3d at 976 (emphasis added).

The Seventh Circuit decision in *Ekstrand* makes it clear that a factfinder's task is to assess what an employer knew at the time of the accommodation request. In light of that standard, Dr. Smith's proffered opinions regarding "grooves" is simply irrelevant. At no point during Ms. Spaeth's employment were Walmart's decisionmakers provided with information from Dr. Smith

or any other medical professional that indicated Ms. Spaeth's failure to adhere to her new work schedule was connected, in any way, to her Down syndrome condition - - let alone to a "groove." Interestingly, Dr. Smith has testified that the "groove" is a condition that is not well understood even among medical professionals. (Harlan Decl. at ¶ 4, Ex. C.) Hence, Dr. Smith's *post hoc* opinions on the issue of "groove" does not, in any way, address the issue of whether Walmart violated any reasonable accommodation obligation it had under the ADA. Further, admission of such testimony from Dr. Smith would cause the jury to improperly occupy itself with the question of whether Ms. Spaeth had a "groove" as opposed to assessing what Walmart reasonably understood about Ms. Spaeth's known limitations. Accordingly, this Court should bar Dr. Smith from offering any "groove" related opinions in this matter.

## 8. The Court Should Also Bar All Testimony, Evidence and/or Argument Relating To, Concerning or Referencing Alleged Retaliation.

Pursuant to Fed. R. Evid. 401, 402 and 403, Walmart requests an Order barring any testimony, evidence, and/or argument relating or pertaining to allegations that Ms. Spaeth was subjected to retaliation. On or about December 17, 2018, while this matter was pending, Amy Jo Stevenson filed a Charge of Discrimination with the EEOC alleging that her sister, Ms. Spaeth, was denied rehire by Walmart in retaliation for Ms. Stevenson's opposition to discrimination. Ultimately, neither the EEOC nor Ms. Stevenson elected to further pursue the allegations of retaliation set forth in the Charge. As a result, any testimony or other evidence relating to alleged retaliation is irrelevant and should be excluded at trial. Indeed, courts have regularly barred evidence relating to claims that have been dismissed or abandoned. *See, e.g.*, *Arroyo v. Volvo Grp. North Am., LLC*, No. 12-cv-6859, 2016 U.S. Dist. LEXIS 102286, **11-12 (N.D. Ill. Aug. 4, 2016) (evidence relating to claims not before the court deemed irrelevant); *Kimes v. Univ. of Scranton*, No. 3:14-cv-00091, 2016 U.S. Dist. LEXIS 44274, **4-5 (M.D. Pa. Apr. 1, 2016) (evidence

relating to whistleblower and hostile work environment claims excluded at trial since court disposed of those claims on summary judgment).

Moreover, even if the Court determined that evidence relating to the abandoned retaliation allegations had some marginal relevance in this case involving alleged intentional disability discrimination, it should nevertheless be barred under Fed. R. Evid. 403 since it would cause unfair prejudice against Walmart, confuse the issues, mislead the jury, create undue delay and waste time. Numerous courts have cited one or more of these factors in excluding evidence relating to claims not being pursued at trial. *See, e.g.*, *Ledford v. Lamartz*, 462 F. Supp. 3d 905, 909-10 (N.D. Ind. 2020) (" [A]llowing the introduction of evidence relating to dismissed claims would needlessly burden the trial proceedings with delays and inefficiency because of the necessity of 'mini trials' on each dismissed claim.").

## 9. All Testimony, Evidence and/or Argument Relating to Associates Other Than Ms. Spaeth Should Be Barred.

Walmart next moves *in limine* of the pretrial conference for an Order barring any testimony, evidence, and/or argument relating or pertaining to performance assessments or evaluations of Walmart associates other than Ms. Spaeth. In this case, the EEOC issued written discovery requests for various personnel records of Walmart Associates. Walmart produced various associate personnel records, including performance evaluations and assessments, in response to the EEOC's requests. During certain depositions of Walmart associates, the EEOC asked numerous questions regarding performance evaluations of those individuals. As an initial matter, this material is not relevant to any issue in this case. Relevant evidence under Fed. R. Evid. 401 is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *United States v. Bouye*, 688 F.2d 471, 475 (7th Cir. 1982). The central issue in this case is whether Ms. Spaeth was subjected

to intentional discrimination because she has a disability. Performance evaluations of various Walmart associates, during different periods of time, have no relevance to the question of whether Ms. Spaeth was the victim of intentional discrimination.

Evidence regarding the performance assessments of various associates would only serve to disparage these individuals and divert the jury's attention to focus on disparate matters having no connection to the actual issues in the case. Admission of such material would not only be unfairly prejudicial, but also likely to lead to a series of mini-trials. Accordingly, any evidence relating to the performance evaluations or assessments of associates other than Ms. Spaeth should be barred pursuant to Fed. R. Evid. 401, 402 and 403.

Additionally, the performance evaluations and assessments of associates should be excluded because such evidence represents improper propensity and character evidence. Fed. R. Evid. 404(b) provides that: "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Further, Fed. R. Evid. 405 limits admission of character evidence to instances in which the person's character or character trait is an essential element of the claim asserted. Fed. R. Evid. 405(b). Finally, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). Any performance issues or shortcomings referenced in evaluations or reviews bear no relation to the issue of alleged intentional disability discrimination which serves as the basis of Plaintiff's Complaint in this case. And, there is no basis for admission of extrinsic evidence for the purpose of showing conformity therewith or to attack a witnesses' character.

**10. Finally, Evidence and Testimony Relating to Marlo Spaeth's Remote in Time Attendance Infractions and the Practice of Non-Decision Makers Ignoring Marlo Spaeth's Attendance Violations Should Be Excluded from Trial.**

Fed. R. Evid. 401, 402 and 403 bars the introduction of any testimony or evidence, and/or the making of any argument regarding, referring, or otherwise relating to Ms. Spaeth's remote in time attendance infractions and history and the practice of non-decision makers ignoring Ms. Spaeth's attendance violations.

That is, any evidence regarding Ms. Spaeth's attendance record prior to the time she reported to Julia Stern and any evidence related to the actions or inaction of supervisors or managers (in response to Ms. Spaeth's remote in time attendance infractions) who did not have a role in the adverse employment actions alleged in this case should be excluded as both irrelevant and unfairly prejudicial to Defendant. Plaintiff EEOC alleges that when Julia Stern worked as Ms. Spaeth's supervisor Walmart unlawfully failed to accommodate, discriminated against and disciplined Ms. Spaeth for her inability or refusal to work her scheduled shift, which the EEOC argues could have been avoided if Walmart/Ms. Stern had modified Ms. Spaeth's work schedule as an accommodation. (*See* ECF No. 103 at pp. 7-9, 18.) While Walmart suspects that the EEOC will seek to introduce and make arguments that Walmart's change in holding Ms. Spaeth accountable for leaving work prior to the end of her scheduled shift proves that her new manager, Ms. Stern, discriminated against her on the basis of her Down syndrome, Ms. Stern only became Ms. Spaeth's supervisor in 2014 (ECF No. 100 at ¶ 4; ECF No. 118 at ¶2) and there is no evidence suggesting that she had a long history of excusing Ms. Spaeth's incomplete shifts or that she treated Ms. Spaeth differently than anyone else. Further, the history, if any, of excusing Ms. Spaeth's past incomplete shifts is not the history of a decision maker in this case -- Ms. Stern. Accordingly, Ms. Stern's decision to hold Ms. Spaeth accountable does not lend itself to an inference of

discrimination and introducing evidence of the practice of others would only confound the issues in the case and force the jury to focus on irrelevant considerations, all of which would be highly prejudicial to Defendant. *See e.g. United States EEOC v. Rust-Oleum Corp.*, 1990 U.S. Dist. LEXIS 5041 at *11-12 (N.D. Ill. 1990) (holding that employee's "relative qualifications in his own judgment and that of his former supervisor are irrelevant" and that "only the perception of the decision-maker . . . is relevant") (also holding that the "EEOC's evidence of age discrimination must be associated with a person involved in the decision to not hire [the applicant]"); *also see Champagne v. Servistar Corp.*, 138 F.3d 7, 14 (1st Cir. 1998) (finding no threat or interference with ADA rights when new management enforced an essential function of the job not enforced by other managers).

Regardless, the Walmart Manitowoc store underwent a revamp in its scheduling practices in November of 2014. (ECF No. 116 at ¶¶ 14-17.) After this change, managers were directed to stop the practice of manually assigning associates schedules and to, instead, have associates' schedules automatically generated by the system, which was based on customer traffic. (*Id*. at ¶¶16-17.) Accordingly, there was clear expectations following the November 2014 change that associates were to be at work during shifts generated by the system. Thus, there are two periods in time at issue in this case -- one before the shift in scheduling practices and the other after the shift in scheduling practices. These two periods do not coincide with each other and do not support an inference that regular, reliable attendance was not required after Walmart switched its practices. The relevant consideration (on both the qualified individual with a disability inquiry and the discrimination inquiry) is Ms. Spaeth's attendance and ability to come and stay at work (for full shifts) at the time of the adverse employment actions at issue. *See e.g. Gates v. Caterpillar, Inc*., 513 F.3d 680, 689 (7th Cir. 2008); *also see See e.g. Bay v. Cassens Transp. Co.*, 212 F.3d 969, 974

(7th Cir. 2000) ("Whether or not an individual meets the definition of a qualified individual with a disability is to be determined as of the time the employment decision was made."); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996) (holding the same); *Payton v. Jewel Foods Stores, Inc.*, 120 F.Supp.3d 794, 800 (N.D. Ill. 2015) (citing Seventh Circuit precedent and holding that the plaintiff's July 2008 evaluation was not material because "the relevant inquiry is whether [the plaintiff] was meeting [the employer's] expectations *at the time of termination*," which was a few months later in November of 2008) (emphasis original) (citations omitted). Hence, the only relevant consideration is Ms. Spaeth's attendance at and around the time of the adverse action complained of in this case. Everything else is a red herring that only distracts and confuses the issues and should be summarily excluded from trial.

WHEREFORE, for all of the foregoing reasons, Walmart respectfully prays for an Order barring the introduction of any testimony or evidence, and/or the making of any argument regarding, referring, or otherwise relating to the evidentiary matters outlined above.

Dated this 8th day of June, 2021.

*s/ Emery Harlan*
MWH LAW GROUP LLP
Emery K. Harlan, Esq.
emery.harlan@mwhlawgroup.com
Warren E. Buliox, Esq.
warren.buliox@mwhlawgroup.com
735 N. Water St., Suite 610
Milwaukee, WI 53202
Phone: (414) 436-0353
Fax: (414) 436-0354

CONWAY, OLEJNICZAK & JERRY, S.C.
George Burnett, Esq.
gb@lcojlaw.com
231 South Adams Street
Green Bay, WI 54301
Phone: (920) 437-0476
Fax: (920) 437-2868
**ATTORNEYS FOR DEFENDANT**