IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil No. 3:17-cv-0070 |
| v. | ) ) | |
| WAL-MART STORES EAST, L.P., | ) ) | EEOC'S RESPONSE IN OPPOSITION |
| Defendant. | ) ) ) | TO DEFENDANT'S MOTIONS IN LIMINE |
| | ) ) ) | |

Walmart's 10 motions in limine must be evaluated in light of the EEOC's allegations and Walmart's defenses. In this case, the EEOC brings three claims: (1) Walmart failed to reasonably accommodate Marlo Spaeth by denying her a modified schedule; (2) Walmart disciplined and terminated Spaeth based on her disability or because of the need to accommodate her disability; and (3) Walmart failed to rehire Spaeth because of her disability or because of the need to accommodate her disability. Walmart defends by arguing that Spaeth was not qualified to perform the essential functions of the job with or without a reasonable accommodation and by asserting that providing Spaeth a modified schedule accommodation would have posed an undue hardship. Walmart further argues that Spaeth or her family members did not request a reasonable accommodation based on her disability, which EEOC disputes. The EEOC seeks damages, including compensatory and punitive damages from Walmart.

1

Walmart's motions try to exclude evidence relevant to the claims and defenses. The motions to exclude relevant evidence should be denied.

1. **EEOC's Internal Determination Shows The Jurisdictional Pre-requisites To This Litigation Were Met.**

EEOC does not seek to present its letter of determination issued August 31, 2016 to the jury. The parties stipulated that all procedural prerequisites have been satisfied. (Stip. of Parties, ECF No. 90.) Further, EEOC moved in limine for a holding that jurisdictional pre-requisites were met so that such issues would not need to be presented to the jury at trial. (Pl.'s Mem. Supp. Mot. Lim. 6, ECF No. 178.) Walmart's motion in limine regarding EEOC's determination is moot.

2. **Evidence About Other Discrimination Claims Against Walmart Is Relevant For Injunctive Relief And Should Not Be Barred In Its Entirety.**

Walmart seeks to exclude "any argument or evidence" that the EEOC may submit regarding previous claims or cases of discrimination against the company under Fed. R. Evid. 404. The EEOC does not anticipate offering evidence in its case in chief of other cases to prove that Walmart discriminated against Spaeth, but such evidence should not be barred in its entirety in this case as it is relevant to the issue of injunctive relief if the EEOC prevails at trial. The EEOC's objection to Defendant's motion is that it appears to be too broad if its intent is to go beyond evidence submitted at trial and include any post-trial matters.

Once discrimination has been shown, district judges have broad discretion to issue injunctions addressed to the proven conduct. *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997). A pattern or practice of unlawful conduct is not required to be shown, instead, injunctive relief is authorized once the court has found that the defendant intentionally

engaged in an unlawful employment practice. *Id*. at 1578; *See also EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1292 (7th Cir. 1993). Other discrimination claims or cases against Walmart are relevant as courts have held that injunctive relief is warranted where defendant's past and present misconduct indicates a strong likelihood of future violations. *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990). Courts may consider past violations and whether past violations were isolated or widespread. *See EEOC v. KarenKim, Inc.*, 698 F.3d 92, 100-01 (2d Cir. 2012); *Malarkey v. Texaco Inc.*, 983 F.2d 1204, 1215 (2d Cir. 1993); *EEOC v. United Health Programs of America, Inc.,* 350 F.Supp.3d 199, 218 (E.D.N.Y 2018).

Accordingly, since the EEOC does not intend to present other cases or claims of discrimination against Walmart to the jury at trial, Defendant's motion is moot. If the EEOC prevails at trial, the EEOC reserves the right to introduce such evidence to the Court for consideration of injunctive relief as pled in the EEOC's Complaint. (Pl.'s Comp., ECF No. 1.)

### 3. Testimony and Argument Regarding Walmart's Policies and Whether Walmart Followed Such Policies Should Not Be Precluded, As It Is Relevant To Issues At Trial Regarding Accommodation, Undue Hardship, Pretext And Punitive Damages.

Although Walmart moves to preclude evidence that alleged violations of its internal anti-discrimination policies shows that it discriminated against Spaeth, Walmart acknowledges that its policies prohibiting discrimination based on disability are relevant and are not "out of bounds for other purposes." (Def.'s Mot. Lim. 9, ECF No. 185.) It appears Walmart wants to use its policies to support its case but exclude the same policies where it may hurt its case. Walmart cannot have it both ways.

First, the EEOC should be permitted to produce evidence at trial that Walmart has anti-discrimination policies based on disability which outline a procedure for accommodation and the

3

interactive process. The EEOC should also be allowed to present evidence that Walmart did not follow such policies, as it is relevant evidence under Fed. R. Evid. 401 and 402 for the jury to consider on the issue of failure to accommodate and undue hardship. The jury should be presented evidence that Walmart's management guidelines state, where an employee has a known disability, managers should proactively approach the employee and ask them if they need an accommodation. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. 16, ECF No. 108.)

In addition, testimony that Walmart's Personnel Coordinator expressed regret that she had not contacted Spaeth's mother regarding the change in schedule is relevant evidence for the jury to consider in determining whether Walmart did or did not follow its policies and whether such action led to a failure to accommodate Spaeth in violation of the ADA. As the Court noted, "Given the nature of her disability, it is at least arguable that instead of documenting her lapses and warning her of possible consequences, engaging in an interactive process required by the ADA would have resulted in an accommodation that worked." (Ord. Den. Def.'s Mot. Summ. J. 18-19, ECF No. 156.) The Court also noted that a reasonable jury could find the requested accommodation would not have caused undue hardship on the operation of its business. (Ord. 21, ECF No. 156.) Thus, evidence regarding Walmart's anti-discrimination policies and its employees' application of such policies to Spaeth's situation are relevant under Rules 401 and 402 and should not be excluded.

Second, the EEOC should be permitted to present testimony, evidence and argument using Walmart's anti-discrimination policies to show that Walmart's claim that it terminated Spaeth's employment for absenteeism is pretext for disability discrimination. The issues at trial as to whether Walmart failed to accommodate Spaeth's disability and whether she was terminated because of her disability or absenteeism are intertwined, and the EEOC should be

allowed to present evidence related to these facts to the jury, including Walmart's anti-discrimination policies and its attendance policies. As the Court noted, the problem with Walmart's argument that Spaeth was terminated for absenteeism is that, "[U]nder the ADA, discrimination includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee' unless the employer 'can demonstrate that the accommodation would impose an undue hardship on the operations of the business.'" (Ord. 21, ECF No. 156.)

Evidence that Walmart deviated from its practice of allowing early departures and that it refused to consider Spaeth's request for a reasonable accommodation is relevant for a jury to consider on the issue of pretext. A defendant's failure to follow its own internal procedures can point to a discriminatory motivation. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 723 (7th Cir. 2005). Courts have held that evidence of selective enforcement of a rule calls into question the veracity of the employer's explanation for its adverse action. *Olsen v. Marshall & Illsley Corp.*, 267 F.3d 597, 601 (7th Cir. 2001); *see also Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 202 (3d Cir. 1996) (plaintiff's showing that the company did not enforce such a policy is evidence from which the jury could rationally conclude that the legitimate non-discriminatory reason offered by the employer was pretext for discharge); *Williams v. City of Valdosta*, 689 F.2d 964, 975 (11th Cir. 1982) (city's adherence to its formal promotional policy was inconsistent and arbitrary at best and the inconsistency supports a finding of pretext).

Third, Walmart's policies prohibiting discrimination are relevant to the issue of punitive damages. This Court held that the fact that Walmart has policies in place concerning reasonable accommodations for people with disabilities does not mean punitive damages are not available, especially when there is evidence that Walmart's employees failed to comply with those policies

5

in responding to Spaeth's obvious difficulties with a change in her hours. (Ord. 22, ECF No. 156.) This Court further held that the fact that Walmart supervisors undergo training on ADA issues and it has an entire department dedicated to addressing reasonable accommodations can sometimes serve as evidence that its failure to comply with the ADA was malicious or in reckless indifference to the plaintiff's federal rights. (Ord. 21, ECF No. 156.)

The EEOC should not be precluded from presenting relevant evidence, testimony and argument that Walmart has internal anti-discrimination policies and its employees failed to comply with such policies, which a reasonable jury could infer is evidence that Walmart acted with malice or with reckless indifference to Spaeth's federally protected rights. The fact that Walmart supervisors and managers persisted in their decision to terminate Spaeth's employment and failed to consider an accommodation, even when confronted by her sister and even after she requested re-employment, is relevant evidence for a jury to consider on the issue of punitive damages. Accordingly, Walmart's motion in limine on this issue should be denied.

### 4. Attendance Records of Other Hourly Employees are Relevant and Admissible.

Walmart claims that attendance is an essential function of the job and claims to have fired Spaeth because her early departures earned attendance policy violations. (Def.'s Mot. Summ. J. 4, ECF No. 93.) Yet, the attendance records of Marlo Spaeth as well as two other hourly employees indicate that early departures were frequently authorized by Walmart managers. Throughout Spaeth's employment, Walmart's tracking of attendance included a frequent practice of manager-authorized early departures. (*See* Pl.'s Prop. Finding of Facts ("PPFOF) ¶ 18, ECF No. 109.) Moreover, the attendance records for hourly employees Karen Becker and Deborah Moss show that other hourly employees left work early hundreds of times without being subject

6
Case 1:17-cv-00070-WCG   Filed 06/15/21   Page 6 of 19   Document 193

to termination for attendance violations. (PPFOF ¶¶ 21-22, ECF 109.) Such evidence of an organization's routine practice is admissible under Rule 406.

Walmart's practice of manager approval for early departures was not specific to Ms. Spaeth. The attendance tracking reports of Walmart's Training Coordinator, Deborah Moss (who remains currently employed by Walmart) indicate that in the 68 months within the limited time periods from June 1999 – April 2002, from November 2004 to May 2005, and from March 2006 through April 2008, she left her shift early with manager approval more than 200 times. (*See* PPFOF ¶¶ 21-22, ECF 109; Vance Decl. 6/15/2021 ¶ 6, Ex. 5 - Moss Attendance Report). Ms. Moss testified that, among other scenarios, a manager may approve an early departure when an employee finished all their work for the day. (Vance Decl. 6/15/2021 ¶ 2, Ex. 1 - Moss Deposition, 81:16 – 89:17).

Additionally, the attendance tracking records of Walmart's Personnel Coordinator, Karen Becker (who remains currently employed by Walmart) indicate that on more than 100 occasions in the 36 months within the limited time periods of November 2001 to May 2002, November 2004 to April 2005, and May 2006 to March 2008 she clocked out early and left with manager approval. (PPFOF ¶ 22, ECF 109; Vance Decl. 6/15/2021 ¶ 7, Ex. 6 - Becker Attendance Report). Becker and Moss are not being put forth by EEOC as traditional comparators. Rather, their attendance records are used as evidence that early shift departures at Walmart were normal and did not render an employee unqualified.

The Seventh Circuit found similar evidence relevant and probative on the issue of whether a termination was discriminatory in *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). In *Ortiz*, Ortiz asserted that he was fired for taking actions that were generally accepted as normal when such actions were taken by other employees at Werner. In *Ortiz*,

several brokers testified that they (and other brokers) sometimes removed their names from unprofitable loads. *Id.* Werner could not identify an express policy that forbids the practice. A former Werner broker with 20 years' experience submitted a declaration that while at Werner he had sometimes asked tardy carriers to lower their rates and that such action reflected industry practice. *Id*. The Court found that "[a] reasonable juror could infer that [employees at Werner] didn't much like Hispanics (or Jews, though Ortiz is not Jewish) and tried to pin heavy losses on Ortiz to force him out the door. *A juror also might infer that,* because of Ortiz's ethnicity, *Werner's managers fired him for using techniques that were tolerated when practiced by other brokers*. In the end a jury might not credit Ortiz's evidence and could accept Werner's explanations. But given the conflict on material issues, a trial is necessary." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016) (emphasis added).

Likewise, a reasonable jury in this case could infer that Spaeth's managers fired her for attendance behavior that was tolerated when practiced by other Walmart employees. This evidence is relevant and probative to the jury's determination of whether Walmart had a routine practice of allowing early departures and, if so, whether firing Spaeth for leaving work early contradicted this practice. Therefore, this evidence should not be excluded under Fed. R. Evid. 402 or 403.

### 5. The Statements of Walmart's Personnel Coordinator, Karen Becker, are relevant and admissible.

Personnel Coordinator, Karen Becker, maintains the personnel files of associates at the Walmart Manitowoc Store. She also maintains and manages the flow of paperwork for requesting reasonable accommodations, which is in her office. (Vance Decl. 6/15/2021 ¶ 3, Ex. 2, Becker Dep. pp. 71:8-73:20.) Multiple managers at the Manitowoc store testified that if an

8

Case 1:17-cv-00070-WCG   Filed 06/15/21   Page 8 of 19   Document 193

associate approached them about accommodations, they would take the associate to Becker because, in her role as Personnel Coordinator, she handles accommodations. Walmart manager Bonnie Popp testified that if any employee requested a reasonable accommodation, "we would all bring them to Karen who takes care of those accommodation forms. That's what she does for us." (Vance Decl. 6/15/2021 ¶ 4, Ex. 3, Popp Dep. pp. 39-40). Store Manager, Kent Abitz, testified that if an accommodation question arose, he would partner with Karen Becker as a resource for accommodation requests. (Vance Decl. 6/15/2021 ¶ 5, Ex. 4, Abitz Dep., p. 64-65).

The role of taking an employee through the process of requesting an accommodation belongs to the Personnel Coordinator. Thus, any actions or inaction on the part of Becker regarding Spaeth and Stevenson's requests to have Marlo Spaeth's schedule modified and any deviations from the normal procedure for accommodation requests are relevant to the claim that Walmart failed to accommodate Spaeth. *Morrison v. Booth,* 763 F.2d 1366, 1372 (11th Cir. 1985) ("Departures from normal procedures may be suggestive of discrimination."). Becker's history of communication and pleasant exchanges with Marlo's mother are also relevant to her role as Personnel Coordinator and Walmart's failure to accommodate. While Becker may not be one of the managers involved in the decision to terminate Marlo Spaeth and in the failure to rehire Spaeth, the decisions she did and did not make in her role as Personnel Coordinator are central to the other claims and defenses in this case.

Becker's regret in hindsight that she did not contact Spaeth's mother about Spaeth's schedule is probative of whether Becker followed Walmart procedures, policies, and training, and whether Walmart met its duty to engage in the interactive process to find a reasonable accommodation for an employee known to have Down syndrome. As this evidence is relevant under Rules 401 and 402, Walmart's motion should be denied.

### 6. The Availability Forms for Marlo Spaeth and Related Statements by Walmart are Relevant and Admissible.

Walmart seeks to bar relevant testimony, evidence, or argument relating to the scheduling availability forms for Marlo Spaeth as well as Walmart's previous misstatements that Spaeth was not scheduled outside of her availability when, in fact, she was.

For 15 years, Spaeth's availability was set for working approximately noon to 4pm on Mondays, Tuesdays, Wednesdays, and Fridays, with a maximum availability of 14 hours per week. Walmart incorrectly argues that there is no evidence that Spaeth's availability forms were filled out with Spaeth's medical condition in mind (Def.'s Mot. Lim. 15, ECF No. 185). However, Walmart's Personnel Coordinator, Karen Becker, testified that at the time of her hire, Spaeth's availability was set for these days and times, in part, because of Spaeth's inability to drive and the local bus schedule. (Vance Decl. 6/15/2021 ¶ 3, Ex. 2, Becker Dep., pp. 117-118). Spaeth's reliance on public transportation and her inability to drive are direct results of Down syndrome and the limitations on intellectual functioning and learning caused by Down syndrome. This evidence is relevant to whether Walmart failed to accommodate Spaeth's disability and to whether Spaeth is a qualified individual who can perform the essential functions of her job with or without a reasonable accommodation.

Moreover, evidence shows that Walmart scheduled Spaeth outside of her availability, contrary to Walmart's typical practice, beginning in November 2014, without notice or consultation. (*See* Pl.'s Mem. Opp. Summ. J. 3, ECF No. 108.) Three months later, after taking formal disciplinary action against Spaeth when she did not adapt to a schedule with later and longer shifts, Walmart's manager filled out a new availability form for Spaeth and had her sign it, indicating her availability from noon to 6 pm, with a maximum availability of 24 hours per week. This evidence and the context and timing of this evidence is relevant to Walmart's failure

10

to accommodate Spaeth, Walmart's lack of interactive process, Walmart's discriminatory disciplining and ultimate termination of Spaeth because of her disability, and to punitive damages.

Walmart's subsequent misstatement of this history, in its letter to EEOC during the administrative investigation, is plainly admissible as an admission of a party opponent. *See* Fed. R. Evid. 801(d)(2)(B)-(D). That Walmart scheduled Spaeth outside of her availability, disciplined her for not adapting to the new schedule, then papered over the problem with a new availability form three months later is also relevant to central issues in this litigation, including failure to accommodate, pretext, and discriminatory intent. It is also relevant to punitive damages, since reckless disregard may be proven with evidence that an employer has "lied, either to the plaintiff or to the jury, in order to cover up its discriminatory actions." *See Bruso v. United Airlines*, 239 F.3d 848, 858 (7th Cir. 2001). While Walmart is free to argue that its statement was merely an error or that the jury should not credit it, such an argument is a matter for the jury to weigh.

### 7. The Testimony of Plaintiff's Expert, David S. Smith, M.D. Will Assist The Trier Of Fact's Determination In This Case and Are Admissible Under The Federal Rules Of Evidence

Defendant previously filed a motion to exclude the testimony of David Smith, M.D. on July 17, 2019. (Def.'s Mot. to Excl. Test. Smith, M.D., ECF No. 127). This court denied that motion on January 29, 2020, ruling that "Dr. Smith's opinions will assist the trier of fact's determination in this case and are admissible under *Daubert* and the Federal Rules of Evidence." (Ord. Den. Def.'s Mot. Excl. Test. Smith 7, ECF No. 155.) This Court noted that, "Dr. Smith's experience renders him qualified to provide expert opinions regarding individuals with Down Syndrome" and that "[i]t is clear that Dr. Smith possesses certain specialized knowledge

regarding Down Syndrome that may assist the trier of fact regarding Spaeth's ability to adapt to change." (*Id.* at 6). Further, this Court noted that "those opinions are relevant to whether Spaeth is a qualified individual who can perform the essential functions of her job with or without an accommodation." (*Id*. at 7). Despite this court's clear ruling on the issue, Defendant has moved again to limit Dr. Smith's testimony. Defendant's motion should be denied.

### a. EEOC does not seek to have Dr. Smith opine on legal compliance under the ADA.

EEOC is not offering Dr. Smith as a legal expert. EEOC will not offer Dr. Smith's opinion regarding ADA compliance.[1] Rather, based on his knowledge and experience with Down syndrome and his review and examination of Ms. Spaeth, EEOC will offer Dr. Smith's opinion as to whether there was an accommodation available that would have permitted Ms. Spaeth to perform her job duties at her position with Walmart. The Court has already found that Dr. Smith's opinions are "relevant to whether Spaeth is a qualified individual who can perform the essential functions of her job with or without an accommodation." (*Id*. at 7).

### b. Dr. Smith may testify on the appropriateness of Thompson's testing instruments and methodology.

Defendant misrepresents Dr. Smith's opinion regarding the tests performed by Defendant's proposed expert. Dr. Smith does not offer an opinion on the tests in general, but rather offered an opinion on their limitations with respect to patients with Down syndrome, an area in which Dr. Smith has expertise. As this Court has recognized, Dr. Smith has significant experience treating individuals with Down Syndrome. He started the Down Syndrome Clinic of Wisconsin in 1996 and has been a member of the Down Syndrome Medical Interest Group. (Ord. Den.

---

[1] To the extent there is any confusion regarding Dr. Smith's report, EEOC will not be offering Dr. Smith to discuss the ADA, the ADA's requirements, or Dr. Smith's opinion as to whether Defendant complied with the ADA.

Mot. Excl. Smith at 5, ECF No. 155.) Dr. Smith, based on his experience and knowledge of individuals with Down syndrome, notes that none of the tests utilized by Walmart's proposed expert was ever normed for people Down syndrome. (Harlan Decl. 6/8/2021, Ex. D - Updated Conclusions of Dr. Smith, 4 of 8, ECF 186-4). Dr. Thompson concedes this point, noting that there is no research looking at how people with Down syndrome without dementia would score on the test. (Decl. of Richard Mrizek, Ex. C, Thompson Dep. 106:22-107:2, ECF No. 183-3.) Dr. Smith also points out that no medical exam or medical history was taken, no test showing baseline functioning is available for comparison, and that Dr. Thompson did not consider or rule out any other causes in making his conclusions. Dr. Thompson admits that in a typical course of treatment for someone with dementia, medical evaluation and treatment would be included. (*Id*. at 45:19-24).

As pointed out in EEOC's Motion to Exclude the Testimony of David Thompson, Ph.D., (Mot. Excl. Thompson, ECF No. 180; Mem. Supp. Mot. Excl. Thompson, ECF No. 181), differential diagnosis and etiology is central to scientifically reliable process. *See Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 705 (7th Cir. 2015) ("But, to be validly conducted, an expert must systematically 'rule in' and 'rule out' potential causes in arriving at her ultimate conclusion. Higgins made no showing that this was done"); *Myers*, 629 F.3d at 644 ("Other than Myers's assertion that the physicians did a differential etiology, there is nothing in the record that suggests they did, or if it was done that it could be considered reliable, because they did not rule in any causes of Myers's ailment, nor did they rule out anything"); *Brown v. Burlington N. Santa Fe Ry. Co*., 765 F.3d 765, 773 (7th Cir. 2014) ("[the proposed expert] also failed to investigate several possible causes of Brown's health problems"); *Rowley v. Union Pac. R.R. Co*., No. 11-

CV-46, 2016 WL 6561296, at *4 (E.D. Wis. Nov. 3, 2016)[2] ("Jasek merely suspected that Rowley's work was a potential cause of his ailment, and he broadly failed to rule out or account for other potential causes"). As a medical doctor who treats older adults, Dr. Smith knows (and Thompson concedes) that dementia is not just a determined by a psychological test, but it is also requires medical diagnosis. Dr. Smith, as a medical doctor, is qualified to opine on the medical diagnosis steps (history and medical exam) and diagnostic considerations (ruling out medical and mental health causes) that are necessary from a medical standpoint to make a dementia diagnosis. (*See* Harlan Decl. 6/8/2021, Ex. D – Upd. Concl. Smith, 4 of 8, ECF 186-4.) Such opinions are within the knowledge and expertise of Dr. Smith who treats older patients with Down syndrome.

### c. This Court has ruled that Dr. Smith may testify as to the impact of the disruption of grooves when Ms. Spaeth's schedule was changed.

Defendant tries to reargue the previous motion it lost by claiming that the new motion is different because they are focused on Rules 401 and 403. However, Defendant's previous motion to exclude Dr. Smith's testimony was brought under "Fed. R. Evid. 702, 401 and 403" (Def.'s Mot. Excl. Smith, at 1, ECF No. 127) and this court has already ruled that Dr. Smith's "opinions are relevant to whether Spaeth is a qualified individual who can perform the essential functions of her job with or without an accommodation." (Ord. Den. Mot. Excl. Smith, at 7, ECF No. 155). Defendant has told the court that one of the issues to be decided by the jury is "To the extent Ms. Stevenson or Ms. Spaeth made a request for a reasonable accommodation, was the requested accommodation a medically necessary one given her limitations associated with Down syndrome?" (Def.'s Pretrial Rep. 4, ECF No. 190.)

---

[2] A full copy of this unpublished case is attached to the concurrently filed Declaration of Carrie Vance.

Defendant attempts to argue that Dr. Smith should not testify because Ms. Spaeth and her guardian insufficiently requested a reasonable accommodation. But this is a disputed issue for the jury to decide, not an issue to be resolved by the Court in a Daubert motion or motion in limine. As this Court previously noted, there is evidence that multiple requests were made for accommodations in the schedule and that those requests were needed to accommodate Down syndrome. (Ord. Den. Mot. Summ. J. 7-8, ECF No. 156.) Defendant essentially argues in its Motion in Limine is that there is insufficient evidence to create a dispute of fact regarding reasonable accommodations that Dr. Smith could opine on. But the Court has already rejected those arguments, ruling that the jury will be deciding "[i]f Spaeth's difficulties completing her shift after the change implemented by Walmart were due to the abruptness of the change and Walmart's refusal to accommodate her fears and concerns, a jury may conclude that the requested accommodation would have allowed Spaeth to perform her full duties." (Def.'s Mot. Lim. 19, ECF No. 185.) The Court's previous rulings on the admissibility of Dr. Smith's opinions regarding the effect of "grooves" on an individual with Down syndrome and the denial of summary judgment on the issue of reasonable accommodations should stand.

### 8. The EEOC Does Not Allege Retaliation and Defendant's Motion Should Be Denied.

The EEOC does not intend to present testimony, evidence or argument that Spaeth was subjected to retaliation at trial as there is no retaliation claim in this case. However, the facts supporting the EEOC's failure to rehire claim may overlap with facts that would support a claim for retaliation, had EEOC brought such a claim. Those common facts and evidence should not be excluded at trial. Defendant's motion is too broad if it seeks to exclude any and all facts supporting the EEOC's claim that Walmart failed to rehire Spaeth because of her disability or

because of the need to accommodate her disability. For instance, the Exit Interview documentation that Walmart gave Spaeth at termination indicated she was eligible for rehire. Shortly, after her termination, Spaeth's sister called Walmart requesting a meeting. At this meeting, Spaeth, her mother and her sister requested that Walmart rehire Spaeth. In addition, Spaeth's sister stated that Spaeth was "picked on" and according to the ADA, Walmart should have changed Spaeth's schedule as she requested as a reasonable accommodation. Instead of rehiring her, Walmart refused to communicate further with Spaeth regarding her employment or need for an accommodation. One of Walmart's managers, Robin Castro, submitted an internal ethics complaint of disability discrimination against Marlo Spaeth. The subsequent ethics investigation documents Walmart's decision-making and fact-finding as it determined whether or not to rehire or reinstate Spaeth. These are relevant facts under Fed. R. Evid. 401 and 402 regarding the EEOC's failure to rehire claim and should not be excluded.

The issue for the jury is not retaliation, but whether Walmart's refusal to rehire Spaeth was based on her disability and in violation of the ADA. EEOC does not allege retaliation and such claim will not be before the jury. Walmart's reliance on cases where courts have barred evidence relating to dismissed or abandoned claims is inapplicable to the instant case. In addition, Walmart has failed to show unfair prejudice under Fed. R. Evid. 403 that evidence, testimony or argument about the failure to rehire claim would confuse the issues, mislead the jury or create undue delay and waste time. Walmart's motion in limine should be denied.

### 9.  Performance Evaluations of Walmart managers may be relevant and admissible.

Walmart seeks to bar the EEOC from presenting evidence, testimony, and/or argument relating to performance assessments or evaluations of Walmart associates other than Ms. Spaeth.

The personnel records Walmart produced in this litigation contain evaluations of the very managers who disciplined Spaeth, failed to accommodate her, and/or who participated in the decisions to terminate her and to tell her that Walmart would not be able to rehire her. Although these witnesses are central players in Walmart's treatment of Spaeth, Walmart contends that evidence reflecting these witnesses' performance issues would be irrelevant and unfairly prejudicial.

The pattern jury instruction for the Interactive Process dictates that both the employer and the employee must cooperate in the interactive process in good faith. Fed. Civ. Jury Instr. of the 7th Cir., Instr. 4.08, Interactive Process (2017 rev.) (modified). Performance evaluations of Spaeth's manager, Julia Stern, directly address Stern's ability to cooperate with her subordinates and to understand their concerns and issues. Thus, her evaluations are relevant to the jury's analysis of the interactive process. The evaluations are also relevant to compensatory damages. Spaeth reported to her Personnel Coordinator that Stern picked on her. Therefore, Stern's failure to interact compassionately with subordinates corroborates the EEOC's claim that Stern's dealings with Spaeth caused emotional distress.

Walmart's evaluations of the managers involved in the failure to accommodate Spaeth, the discriminatory discipline and termination of Spaeth, and the failure to rehire Spaeth following the EEOC's investigations are relevant both to compensatory damages for emotional distress, punitive damages, and to the need for injunctive relief. If the jury agrees that Walmart violated the ADA and did so despite knowing that its actions were contrary to federal law, the fact that Walmart has taken no steps to correct its employees' failures is evidence that further deterrence is needed, through punitive damages, injunctive measures, or both. Finally, the

EEOC reserves the right to cross-examine Walmart's managers on their performance issues should Walmart open the door to such evidence.

### 10. Evidence and Testimony Relating to Marlo Spaeth's History of Attendance Is Relevant and Admissible.

"Evidence of whether a particular function is essential includes, but is not limited to: ... (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3).

Prior to the time Walmart changed Ms. Spaeth's schedule, Spaeth and other hourly Walmart associates routinely clocked out before the end of their shifts with manager approval. Notably, Spaeth was praised in 2014 for having zero active absences in a 6-month rolling period in her most recent performance appraisal prior to the November 2014 change to her schedule. (Vance Decl., 6/17/19, Ex. 18, at 7, ECF No. 106-18). Her attendance records during the period under evaluation as well as during the period of time when Julia Stern became her manager indicate she was authorized by Walmart managers to clock out and leave early dozens of times before the November 2014 schedule change. (Vance Decl., 6/17/19, Ex. 10, at 5-8, ECF No. 106-10). This evidence is admissible under Rule 406 to show the routine practice of Walmart. Walmart's actual enforcement of its attendance policies and this history of approving early departures for Spaeth and other employees is relevant to the jury's analysis of the essential functions of Spaeth's job, the question of whether she was qualified to her perform her job with or without a reasonable accommodation, and to pretext. A reasonable jury may conclude from the history of Walmart's actual practices in the workplace that a requirement it now claims to be an essential function simply is not. Accordingly, Walmart's motion to exclude this relevant evidence should be denied.

## CONCLUSION

For the reasons stated above, the EEOC seeks an Order from the Court on certain evidentiary rulings in advance of trial. Such rulings will expedite trial, and lead to an orderly presentation of the evidence.

Dated: June 15, 2021.

        **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Counsel for Plaintiff

*/s/ Justin Mulaire*
Justin Mulaire
Supervisory Trial Attorney

*/s/ Richard J. Mrizek*
Richard J. Mrizek
Trial Attorney

EEOC Chicago District Office
230 S. Dearborn Street, Suite 2920
Chicago, IL 60604
☏ (312) 872-9724
justin.mulaire@eeoc.gov
richard.mrizek@eeoc.gov

/s/ *Carrie Vance*
Carrie Vance
Trial Attorney

*/s/ Leslie N. Carter*
Leslie N. Carter
Trial Attorney

EEOC Milwaukee Area Office
310 West Wisconsin Avenue, Suite 500
Milwaukee, WI 53203-2292
☏ (414) 662-3686
📠 (414) 297-3146
carrie.vance@eeoc.gov
leslie.carter@eeoc.gov

19
Case 1:17-cv-00070-WCG   Filed 06/15/21   Page 19 of 19   Document 193