UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

  v.                Case No. 17-C-70

WAL-MART STORES EAST LP,

    Defendant.

---

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY

---

  Plaintiff Equal Employment Opportunity Commission (EEOC) brought this action against Defendant Walmart Stores East LP on behalf of a terminated employee with Down Syndrome, Marlo Spaeth, alleging discrimination under Title I of the Americans with Disabilities Act of 1990 (ADA) and Title I of the Civil Rights Act of 1991. Presently before the Court is the EEOC's motion in limine to exclude the testimony of David Thompson, Ph.D. For the following reasons, the motion will be denied.

### LEGAL STANDARD

  "The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702 permits a witness "who is qualified as an expert by knowledge, skill, experience, training or education" to testify in the form of an opinion or otherwise if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Expert testimony is admissible when the testimony is reliable and would assist the trier of fact to understand the evidence or determine a fact at issue in a case." *Lewis*, 561 F.3d at 705 (citation omitted). In determining reliability, *Daubert* sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the scientific community. 509 U.S. at 593–94. There is no requirement that courts rely on each factor. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). The gatekeeping inquiry is flexible and must be "tied to the facts" of the particular case. *Id.* (quoting *Daubert*, 509 U.S. at 591).

## ANALYSIS

Dr. David Thompson is a clinical and forensic psychologist whose clinical services focus on children, adolescents, and families and forensic services include evaluations of adults, adolescents, and children. Dkt. No. 26-1. He has been a licensed psychologist for more than 32 years. *Id.* Dr. Thompson evaluated Ms. Spaeth on June 1, 2018, and December 10, 2018, and provided a forensic evaluation report on December 20, 2018. Dr. Thompson offered six opinions in his report, in addition to the test results of various instruments that measure intellectual function:

1. Ms. Spaeth is currently evidencing significant cognitive difficulties that are consistent with the presence of dementia.

2. Although Ms. Spaeth initially presented as anxious during the June 1, 2018 evaluation session, she was outwardly cooperative and she did not appear to be unduly stressed by the evaluation process.

3. Ms. Spaeth did not appear distressed or uncomfortable during the December 10, 2018 evaluation session.

4. Ms. Spaeth demonstrated a number of qualities or behaviors that suggest the possibility that she may have been subject to external influences prior to the examination. These include the following:
   a. At the outset of the individual portion of the June evaluation, Ms. Spaeth spontaneously brought up her separation from employment at Wal-Mart.
   b. Ms. Spaeth's performance on the TOMM [Test of Memory Malingering] was well below the performance of most individuals with dementia.

5. The evaluation data do not allow me to offer conclusive opinions concerning Ms. Spaeth's cognitive flexibility at the time of her separation from Wal-Mart. I noted during testing, however, that she was able to adapt to changing demands. For example, during the June administration of the Dementia Rating Scale, Ms. Spaeth was asked to repeat digits backwards. She initially did not do so, but after a simple explanation by me and with minimal practice she successfully followed my instructions. During the December evaluation session Ms. Spaeth initially had difficulty learning the Digit Span task (see Bates page 36, Item A). She mastered the task (although belatedly), and with the assistance of a prompt from me she was able to adapt to the changing demands of the task and repeated the digits backward. She had to relearn these same tasks during administration of the WAIS-IV, although she did so with varying levels of success demonstrating, in my opinion, problems with new learning that are characteristics of dementia. During the December administration of the DRS, Ms. Spaeth had difficulty with the concept of similarities. She responded incorrectly to questions concerning the ways in which three objects were ". . . alike? How are they the same?" Her responses suggested that she was responding to "which do you like," despite my "how are they the same" inquiry. Later in the assessment session, when similar tasks were presented to Ms. Spaeth, she initially seemed to have difficulty with the term "alike," but when I used the prompt "How are they the same" she was able to answer correctly within the limits of her ability. Again, this behavior on Ms. Spaeth's part demonstrates her ability to adapt to changing demands within the assessment context.

6. Ms. Spaeth's ability to comprehend the results of a mammogram and to attend an otolaryngology appointment and sign a consent form in the absence of her legal guardian is not consistent with Dr. Smith's assertion that Ms. Spaeth's cognitive capacity was not sufficient to understand the content of termination documents or the implications of signing them.

Dkt. No. 101-10 at 17–18.

The EEOC seeks to bar Dr. David Thompson from offering opinion testimony at trial. The EEOC argues that Dr. Thompson's testimony is not relevant to any issue the jury will be asked to decide. The EEOC also asserts that Dr. Thompson, a child psychologist, lacks the specific

qualifications and experience to offer an opinion on the intellectual functioning of persons with Down Syndrome, as well as a geriatric diagnosis of dementia for an individual with Down Syndrome.

In determining the admissibility of expert testimony, the question the court asks is "not whether an expert witness is qualified in general, but whether his 'qualifications provide a foundation for [him] to answer a specific question.'" *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)) (alterations in original). The court should also consider "a proposed expert's full range of practical experience as well as academic or technical training." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Dr. Thompson has been a licensed psychologist in Wisconsin since 1990 and has been in active practice for over 32 years. Dkt. No. 26-1 at 2. He has evaluated individuals with Down Syndrome as well as individuals with dementia and has provided treatment to such individuals. Dkt. No. 199-6 at 1–2. The fact that Dr. Thompson is not specialized in treating individuals with Down Syndrome or dementia does not prevent him from offering his opinions in this case. Based on Dr. Thompson's qualifications, experience, and expertise, the Court concludes that he is qualified to offer his expert medical opinion in this case.

The EEOC also asserts that Dr. Thompson's opinions are not based upon reliable methods or supported by his findings. "[T]he test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co.*, 526 U.S. at 141. The objective is to ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The EEOC argues that Dr. Thompson's opinion that Ms. Spaeth has significant cognitive difficulties

consistent with the presence of dementia and his opinion regarding Ms. Spaeth's capacity to understand termination documents are unreliable. Dr. Thompson met with Ms. Spaeth two times, employed standardized testing that examined her adaptive behavior and cognitive flexibility, assessed her memory and attention, made behavior observations, and performed other testing. Dr. Thompson considered factors related to Ms. Spaeth's Down Syndrome in reaching his conclusions. The EEOC's challenges to Dr. Thompson's opinions go to weight, rather than admissibility. That is, its arguments regarding Dr. Thompson's opinions are fodder for cross-examination and do not warrant pretrial preclusion of the opinions. *Smith*, 215 F.3d at 719 ("The question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." (citation omitted)).

Finally, the EEOC argues that Dr. Thompson's opinions will not be helpful to the jury. It asserts that Dr. Thompson's opinions regarding Ms. Spaeth's cognitive limitation in 2018 as well as her cooperation, distress, or qualities of external behaviors are not relevant to any issue the jury will be asked to decide. The level of Ms. Spaeth's intellectual functioning is relevant to whether she is a qualified person with a disability, a key issue in any ADA case. The EEOC argued at the final pretrial conference that Ms. Spaeth's current level of function is essentially the same now as it was in 2015 at the time her employment at Walmart was terminated. Her intellectual limitation, whether caused by Down Syndrome alone, or now aggravated by dementia, is also relevant to compensatory damages beyond backpay and the question of injunctive relief. It is at least arguable that a person's level of cognition affects their emotional response to losses that occur in life. Such testimony may also assist the jury in assessing the credibility of other witnesses who testify about

their own interactions with Ms. Spaeth. Dr. Thompson's opinions and testimony about Ms. Spaeth's level of comprehension and ability to adapt to change are relevant to the EEOC's claim that Walmart failed to accommodate Ms. Spaeth's cognitive disability and discriminated against her. Again, any disagreement the EEOC may have with Dr. Thompson's opinions may be addressed on cross-examination. The Court concludes that Dr. Thompson's opinions will assist the jury to understand the evidence or determine fact issues. Therefore, Dr. Thompson's opinions are admissible.

## CONCLUSION

For these reasons, the EEOC's motion in limine to exclude the testimony of David Thompson (Dkt. No. 180) is **DENIED**.

**SO ORDERED** at Green Bay, Wisconsin this 22nd day of June, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge