UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

       Plaintiff,

      v.                                     Case No. 17-C-70

WAL-MART STORES EAST LP,

       Defendant.

## JURY INSTRUCTIONS

## 1.01 Functions of the Court and the Jury

Members of the jury, you have seen and heard all the evidence and are about to hear the arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone. Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them. Perform these duties fairly and impartially. Do not allow sympathy or prejudice to influence you. You should not be influenced by any person's race, color, religion, national ancestry, or sex.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

### 1.03 All Litigants Equal Before the Law

In this case, the defendant is a corporation. All parties are equal before the law. A corporation is entitled to the same fair consideration that you would give any individual person.

### Role of EEOC in Enforcement of the ADA

The Equal Employment Opportunity Commission, or the EEOC, is the plaintiff in this case. The EEOC is an agency of the United States government that is responsible for enforcing the federal laws prohibiting employment discrimination, including the American's with Disabilities Act, or ADA. When a person feels that his or her employer had discriminated against them, that person may file a charge of discrimination with the EEOC. The EEOC has the authority to file a lawsuit and seek remedies against an employer on behalf of such a person or the person may sue on his own behalf. The EEOC brings this lawsuit on behalf of Marlo Spaeth. The fact that the EEOC has brought this lawsuit is no cause for you to give more or less weight to the claims.

### 1.04 Evidence

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations.

A stipulation is an agreement between both sides that certain facts are true.

2

## 1.05 Deposition Testimony

During the trial, certain testimony was presented to you by the reading of depositions. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

## 1.06 What Is Not Evidence

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

### 1.07 Note-Taking

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

### 1.08 Consideration of All Evidence Regardless of Who Produced

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

### 1.09 Limited Purpose of Evidence

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

### Limiting Instruction

You have heard testimony by some witnesses, including Walmart employees, concerning what they believe the ADA required under the circumstances of this case. Such testimony is relevant to determine why they took certain actions and what their state of mind might be. But the question of what the ADA requires is a legal question that the court will address in its instructions at the end of the case. And whether

Walmart violated the ADA is ultimately a question for you to decide based on all the evidence in the case.

You have also heard testimony as to whether Walmart's actions complied with its own internal policies and training. You may consider this evidence in your deliberations. You should keep in mind, however, that Walmart's policies are not necessarily what the law requires. The issue is ultimately whether Walmart violated the ADA, not whether it violated its own internal policies and procedures.

## 1.11 Weighing the Evidence

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life. In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

## 1.12 Definition of "Direct" and "Circumstantial" Evidence

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

5

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining."  Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  You should decide how much weight to give to any evidence.  In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

### 1.13 Testimony of Witnesses (Deciding What to Believe)

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all.  You also must decide what weight, if any, you give to the testimony of each witness.  In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

– the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

– the witness's memory;

– any interest, bias, or prejudice the witness may have;

– the witness's intelligence;

– the manner of the witness while testifying;

– and the reasonableness of the witness's testimony in light of all the evidence in the case.

## 1.14 Prior Inconsistent Statements

You may consider statements given by the parties or witnesses under oath before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath or acted in a manner that is inconsistent with his testimony here in court, you may consider the earlier statement or conduct only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.

In considering a prior inconsistent statement or conduct, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

## 1.16 Lawyer Interviewing Witnesses

It is proper for a lawyer to meet with any witness in preparation for trial.

## 1.17 Number of Witnesses

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

Case 1:17-cv-00070-WCG   Filed 07/15/21   Page 7 of 22   Document 234

### 1.18 Absence of Evidence

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

### 1.21 Expert Witnesses

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

### 1.24 Demonstrative Exhibits

Certain demonstrative exhibits have been shown to you. Those demonstrative exhibits are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

### 1.27 Burden of Proof

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

## 4.01 Nature of ADA Claim and Defense

Plaintiff has brought this lawsuit under a federal law called the Americans with Disabilities Act, which is often referred to by its initials, "ADA." Under the ADA, it is illegal for an employer to discriminate against a person on the basis of a disability if that person is qualified to do the essential functions of her job and the employer is aware of her limitations.

In this case, Plaintiff claims that Defendant discriminated against Marlo Spaeth by not providing her with a reasonable accommodation, namely, a change of her work schedule; by terminating her employment; and by not reinstating Ms. Spaeth. Defendant denies that it discriminated against Ms. Spaeth and says that Ms. Spaeth's employment was terminated because of her failure to reliably attend work and to adhere to the schedule Defendant set, specifically her repeatedly leaving early before her shift was over. Defendant contends that reliable attendance and working the complete shift were essential to performing the job she was hired for.

As you listen to these instructions, please keep in mind that many of the terms I will use have a special meaning under the law. So please remember to consider the specific definitions I give you, rather than using your own opinion as to what these terms mean.

### 3.07 Cautionary Instruction on Defendant's Action

In deciding the EEOC's claims, you should not concern yourselves with whether Walmart's actions were wise or fair. Rather, your concern is only whether the EEOC has proved that Walmart discriminated against Marlo Spaeth because of her disability.

### 4.03 Elements of Plaintiff's Claim – Reasonable Accommodation Cases

The EEOC's first claim is that Walmart unlawfully refused to give Ms. Spaeth a "reasonable accommodation." To succeed, the EEOC must prove three things by a preponderance of the evidence:

1. Marlo Spaeth was a qualified individual with a disability.

2. Walmart was aware that Ms. Spaeth needed an accommodation due to her disability, either because Ms. Spaeth requested one or otherwise;

3. Defendant failed to provide Ms. Spaeth with a reasonable accommodation.

If you find that Plaintiff proved each of these things by a preponderance of the evidence, you should turn to the issue of Plaintiff's damages. If you find that Plaintiff has failed to prove any of these things by a preponderance of the evidence, your verdict should be for Defendant.

### 4.04 Definition of "Disability"

Under the ADA, the term "disability" means a physical or mental impairment that "substantially limits" a "major life activity." I will now define some of these

terms in more detail. Again, I remind you to consider the specific definitions I give you, and not to use your own opinion as to what these terms mean.

Under the ADA, an impairment "substantially limits" a major life activity if it impairs the individual's ability to perform the activity as compared to the average person in the general population. Major life activities are those that an average person can do without much difficulty. Thinking, speaking, and brain function are all major life activities. The term "substantially limits" is not meant to be a demanding standard, and a condition does not have to prevent, or significantly or severely restrict, a person from performing the major life activity to be considered a disability. It is not required that there be any medical analysis to make the determination of whether someone is substantially limited in a major life activity. For example, deafness substantially limits hearing; blindness substantially limits seeing; an intellectual disability (formerly termed mental retardation) substantially limits brain function; and autism substantially limits brain function. Down syndrome is a genetic disorder which varies in severity but causes lifelong intellectual disability and developmental delays.

If you find that Ms. Spaeth's impairments substantially limit one major life activity, you must find that her impairments are a disability even if they do not limit any other major life activity.

## 4.05 Definition of "Qualified"

Under the ADA, Marlo Spaeth was "qualified" if she had the skill, experience, education, and other requirements for the job and could do the job's essential functions, either with or without a reasonable accommodation. You should only consider Ms. Spaeth's abilities at the time of Ms. Spaeth's termination.

Not all job functions are "essential." Essential functions are a job's fundamental duties. In deciding whether a function is essential, you may consider the reasons the job exists, the number of employees Walmart has to do that kind of work, the degree of specialization the job requires, Walmart's judgment about what is required, the consequences of not requiring an employee to satisfy that function, and the work experience of others who held position.

In addition to specific job requirements, an employer may have general requirements for all employees. For example, the employer may generally require regular and timely attendance.

## 4.06 Reasonable Accommodation: General Instruction

Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits that it will produce.

12

A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules, but does not include elimination or change of essential job functions, assignment of essential job functions to other employees, or lower productivity or performance standards.

### 4.08 Interactive Process

EEOC has the burden of proving that Walmart was aware of Marlo Spaeth's need for an accommodation for her disability. Where the need for an accommodation is obvious, the employer must initiate an informal interactive process with the employee or those acting on the employee's behalf, to determine whether a reasonable accommodation should be provided. Where the need for an accommodation is not obvious, however, the disabled employee, or those acting on the employee's behalf, must make their employers aware of any medically necessary accommodation.

Once an employer is aware of an employee's disability and knows or should have known that there is a need for a reasonable accommodation, the employer must discuss with the employee or, if necessary, with her doctor, whether there is a reasonable accommodation that will permit the employee to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith. If an employer has a question regarding a request for reasonable accommodation, the employer must undertake to find out an answer to the question.

Neither party can win this case simply because the other did not cooperate in this process, but you may consider whether a party cooperated in this process when deciding whether a reasonable accommodation existed and when considering whether to award punitive damages.

<strong>Limiting Instruction Relating to Post-Termination<br>Request for Reasonable Accommodation</strong>

You have heard evidence that Marlo Spaeth's sister, Amy Jo Stevenson, claims to have made a request for reasonable accommodation for Marlo Spaeth's disability subsequent to the termination of Marlo Spaeth's employment.

You should not consider evidence of a request for reasonable accommodation, if any, made after Marlo Spaeth's termination in determining whether the EEOC has met its burden of proving Walmart violated the Americans with Disabilities Act by terminating Marlo Spaeth's employment. You may consider such evidence, if any, made before Walmart's decision denying her request for reinstatement.

<strong>4.09 Undue Hardship Defense</strong>

Under the ADA, Walmart does not need to accommodate Marlo Spaeth if it would cause an "undue hardship" to its business. An "undue hardship" is something too costly or something that is so disruptive that it would fundamentally change the nature of Walmart's business or how Walmart runs its business.

Walmart must prove to you by a preponderance of the evidence that Marlo Spaeth's proposed accommodation would be an "undue hardship." In deciding this issue, you should consider the following factors:

1. The nature and cost of the accommodation;

2. Walmart's overall financial resources. This might include the size of its business, the number of people it employs, and the types of facilities it runs;

3. The financial resources of the facility where the accommodation would be made. This might include the number of people who work there and the impact that the accommodation would have on its operations and costs; and

4. The way that Walmart conducts its operations. This might include its workforce structure; the location of its facility where the accommodation would be made compared to Walmart's other facilities; and the relationship between these facilities.

**Reasonable Accommodation; Good Deed**

If Walmart provided an accommodation to Marlo Spaeth that is not required by the ADA in the first place, the law does not require Walmart to continue to provide that accommodation. Rather, Walmart may lawfully discontinue the accommodation at any time and not provide it again.

15

## 4.02 Elements of an ADA Discriminatory Termination Claim

The EEOC's second claim is that Walmart discriminated against Ms. Spaeth by discharging her from her employment because of her disability or because of the need to accommodate her disability. To succeed in this case, the EEOC must prove four things by a preponderance of the evidence:

1. Ms. Spaeth had a disability. I have defined "disability" earlier.

2. Ms. Spaeth was "qualified" to perform the job with reasonable accommodation.

3. Walmart discharged Ms. Spaeth;

4. Walmart would not have discharged Ms. Spaeth if she did not have a disability or if she did not need an accommodation, but everything else had remained the same.

If you find that EEOC has proved each of these things by a preponderance of the evidence, you should turn to the issue of Marlo Spaeth's damages. If you find that the EEOC has failed to prove any of these things by preponderance of evidence, your verdict should be for Walmart.

## 4.02 Elements of an ADA Failure to Reinstate Claim

To succeed in this case, Plaintiff must prove four things by a preponderance of the evidence:

1. Marlo Spaeth, or someone on her behalf, requested reinstatement of her position at Walmart after July 10, 2015;

2. Marlo Spaeth, with or without reasonable accommodation, was "qualified" for the position she requested reinstatement for after July 10, 2015;

16

3. Walmart did not reinstate Marlo Spaeth for her position at the company despite her request after July 10, 2015; and

4. Walmart did not reinstate Marlo Spaeth because she has Down Syndrome or because of the need to reasonably accommodate her disability.

If you find that the EEOC has proved each of these things by a preponderance of the evidence, you should turn to the issue of Marlo Spaeth's damages. If you find that the EEOC has failed to prove any of these things by preponderance of evidence, your verdict should be for Walmart.

### Damages: General

If you find that the EEOC has proved any of its claims against Walmart, then you must decide what amount of damages, if any, she is entitled to recover for those claims. The EEOC must prove Ms. Spaeth's damages by a preponderance of the evidence.

If you find that the EEOC has failed to prove any of its claims, then you will not consider the question of damages.

### 3.10 Compensatory Damages

You may award compensatory damages to Marlo Spaeth only for injuries that have been proved by a preponderance of the evidence were caused by Defendant's wrongful conduct.

Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual

loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

In calculating damages, you should not consider the issue of lost wages and benefits. The court will calculate and determine any damages for past or future lost wages and benefits. You should consider the following types of compensatory damages, and no others: The mental and emotional pain and suffering that Marlo Spaeth experienced and is reasonably certain to experience in the future. No evidence of the dollar value of mental and emotional pain and suffering has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate for the injury she has sustained.

### 3.13 Punitive Damages

If you find for the EEOC, you may, but are not required to, assess punitive damages against Defendant. The purposes of punitive damages are to punish a defendant for its conduct and to serve as an example or warning to Walmart and others not to engage in similar conduct in the future.

The EEOC must prove by a preponderance of the evidence that punitive damages should be assessed against Walmart. You may assess punitive damages only if you find that the conduct of Walmart was in reckless disregard of Marlo

Spaeth's rights. An action is in reckless disregard of Marlo Spaeth's rights if taken with knowledge that it may violate the law.

The EEOC must prove by a preponderance of the evidence that Defendant's managerial employees and officers acted within the scope of their employment and in reckless disregard of Ms. Spaeth's right not to be discriminated against. In determining whether a Walmart employee was a managerial employee, you should consider the kind of authority Walmart gave them, the amount of discretion they had in carrying out their job duties and the manner in which they carried them out.

If you find that punitive damages are appropriate, then you must use sound reason in setting the amount of those damages. Punitive damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward either/any party. In determining the amount of any punitive damages, you should consider the following factors:

- the reprehensibility of Walmart's conduct;

- the impact of Walmart's conduct on Marlo Spaeth;

- the relationship between Marlo Spaeth and Walmart;

- the likelihood that Walmart would repeat the conduct if an award of punitive damages is not made;

- the relationship of any award of punitive damages to the amount of actual harm Marlo Spaeth suffered;

19

- Walmart's financial condition.

## Procedure for Jury Deliberation

Now, members of the jury, this case is ready to be submitted to you for your serious deliberation. It is an important case. It is important to plaintiff EEOC and it is important to defendant Walmart. Consider the case fairly, honestly, impartially, and in the light of reason and common sense. Give each question in the verdict your careful and conscientious consideration. In answering each question, free your minds of all feelings of sympathy, bias, or prejudice. Let your verdict speak the truth, whatever the truth may be.

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if you are convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case. I remind you that you may not bring into the jury room any research materials or additional information; this includes dictionaries, computers, electronic communication devices, or other reference materials. You may not communicate in any way with anyone other than jurors until you have reached your verdict.

There is no written transcript of the trial testimony available for use during your deliberations. You must rely primarily on your memory of the evidence and testimony introduced during the trial and your notes.

As we've discussed, a form of verdict has been prepared for your convenience.

Certain questions in the verdict are to be answered only if you have answered a preceding question in a certain manner. Therefore, read the introductory portion of each question very carefully before you answer it. Do not needlessly answer questions.

Upon retiring to the jury room, you will select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in court.

You will take to the jury room the verdict form that has been prepared for you. You must reach a unanimous verdict; that is, all eight of you must agree on the answer to each question. When you have reached unanimous agreement as to your

verdict, your foreperson will write in the verdict the answers you have agreed upon and will date and sign the verdict; and then all of you will then return with your verdict to the courtroom.

I do not anticipate that you will need to communicate with me. If you do, however, the only proper way is in writing, signed by the foreperson, or if he or she is unwilling to do so, by some other juror, and given to the bailiff. To have a complete record of this trial, it is important that you not communicate with me except by a written note.

If you have questions, I will talk with the parties before I answer, so it may take some time. You should continue your deliberations while you wait for my answer. I will answer any questions in writing or orally here in open court.

You will note from the oath about to be taken by the bailiff that he, too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case. Bear in mind also that you are never to reveal to any person how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict.