IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>        Plaintiff,<br><br>v.<br><br>WAL-MART STORES EAST, L.P.,<br><br>        Defendant. | Civil No. 1:17-cv-0070 |

**PLAINTIFF EEOC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR EQUITABLE RELIEF**

Justin Mulaire
Supervisory Trial Attorney
Richard J. Mrizek
Trial Attorney
EEOC Chicago District Office
230 S. Dearborn Street, Suite 2920
Chicago, IL 60604
☏ (312) 872-9724
richard.mrizek@eeoc.gov
justin.mulaire@eeoc.gov

Leslie N. Carter
Trial Attorney
Carrie Vance
Trial Attorney
EEOC-Milwaukee Area Office
310 West Wisconsin Avenue, Suite 500
Milwaukee, WI 53203-2292
☏ (414) 662-3711
📠 (414) 297-3146
leslie.carter@eeoc.gov
carrie.vance@eeoc.gov

# Table of Contents

I.  Injunctive relief should be granted to prevent future discrimination. ........................................... 1

a.  EEOC need not show repeated or widespread discrimination. ..................................................... 2

b.  Walmart's "robust" policies failed to prevent discrimination. ...................................................... 3

c.  Walmart failed to comply with the ADA at multiple levels in the company. ............................... 4

d.  Managers involved in the discrimination still work at Walmart. .................................................. 5

II. EEOC's requests are appropriately tailored and specific. ............................................................ 6

III. Complete relief requires back pay, interest, and a tax component award. ................................. 10

a.  Back pay of $77,307 is appropriate. ........................................................................................... 11

i.  Backpay for 16 hours of work per week is appropriate .................................................. 12

ii. The EEOC's estimated wage increases for Spaeth are reasonable ............................................ 12

b.  The parties agree on the method for computing prejudgment interest ..................................... 13

c.  Tax-component awards are appropriate for both backpay and compensatory damages ........ 13

IV. Conclusion ............................................................................................................................... 15

# Table Of Authorities

Page(s)

**Cases**

*Avitia v. Metro. Club of Chicago, Inc.*,
49 F.3d 1219 (7th Cir. 1995) .................................................................................................... 1

*Benson v. Wal-Mart Stores E., L.P*,
2021 WL 4190222 (1st Cir. Sept. 15, 2021) ............................................................................ 3

*Bruso v. United Airlines, Inc.*,
239 F.3d 848 (7th Cir. 2001) .................................................................................................... 4

*EEOC v. AutoZone, Inc.*,
707 F.3d 824 (7th Cir. 2013) ............................................................................................ passim

*EEOC v. Boh Bros.*,
731 F.3d 444 (5th Cir. 2013) .................................................................................................. 10

*EEOC v. Custom Comp., Inc.*,
No. 02-C-3768, 2007 WL 734395 (N.D. Ill. Mar. 8, 2007) ........................................... 4, 7, 10

*EEOC v. DCP*,
608 F. Supp. 2d 107 (D. Me. 2009) ......................................................................................... 8

*EEOC v. Dolgencorp*,
LLC, 899 F.3d 428 (6th Cir. 2018) .......................................................................................... 9

*EEOC v. Gurnee Inn Corp.*,
914 F.2d 815 (7th Cir. 1990) ......................................................................................... 6, 10, 11

*EEOC v. Ilona of Hungary, Inc.*,
108 F.3d 1569 (7th Cir. 1997) ........................................................................................ passim

*EEOC. v. Mgmt. Hospitality of Racine, Inc.*,
780 F. Supp. 2d 802 (E.D. Wis. 2010), *aff'd in part, rev'd in part*, 666 F.3d 422 (7th
Cir. 2012) ..................................................................................................................... 1, 4, 7, 10

*EEOC v. North Star Hospitality*,
2014 WL 282026 (W.D. Wis. Jan. 27, 2014) .................................................................. 6, 7, 9

*EEOC v. RockAuto*,
2021 WL 3487668 (W.D. Wis. Aug. 9, 2021) ...................................................................... 7, 9

*EEOC v. Serv. Temps*,
679 F.3d 329 (5th Cir. 2012) ................................................................................................ 9, 10

*EEOC v. Wal-Mart Stores, Inc.*,
   202 F.3d 281 (10th Cir. 1999) ............................................................................................7

*Gaddy v. Abex Corp.*,
   884 F.2d 312 (7th Cir. 1989) ............................................................................................11

*Hazelett v. Wal-Mart Stores, Inc.*,
   829 F. App'x 197 (9th Cir. 2020) .......................................................................................3

*McKnight v. Dean*,
   270 F.3d 513 (7th Cir. 2001) ..............................................................................................8

*Morris v. BNSF*,
   969 F.3d 753 (7th Cir. 2020) ..............................................................................................8

*Ortega v. Chicago Bd. Educ.*,
   280 F. Supp. 3d 1072 (N.D. Ill. 2017) ..............................................................................13

*Sears v. Atchison*,
   749 F.2d 1451 (10th Cir. 1984) ........................................................................................14

*Steward v. General Motors*,
   542 F.2d 445 (7th Cir. 1976) ............................................................................................13

*US Airways, Inc. v. Barnett*,
   535 U.S. 391 (2002) ............................................................................................................7

*Vega v. Chicago*,
   12 F.4th 696 (7th Cir. Sep. 1, 2021) ............................................................................ 14, 15

*Vega v. Chicago Park Dist.*,
   954 F. 3d 996 (7th Cir. 2020) .................................................................................... 11, 14

**Statutes**

ADA ................................................................................................................................*passim*

ADA Section 12112(b)(5)(A) ........................................................................................... 6, 7

## I. Injunctive relief should be granted to prevent future discrimination.

An injunction aimed at preventing further discrimination is appropriate if "the employer's discriminatory conduct *could possibly* persist in the future." *EEOC v. AutoZone, Inc.,* 707 F.3d 824, 840 (7th Cir. 2013) (emphasis added). Once a jury finds discrimination, the "burden then falls on *the employer* to prove that the discrimination is unlikely to continue, and unless *the employer* can show that the claimant's case is somehow different from the norm, evidence that would establish a prima facie case for [the claimant] serves the same function for the entire class of individuals on whose behalf the EEOC seeks relief." *Id.* at 840-41 (emphasis added). Walmart has not met this burden.

In considering equitable relief, a judge is bound by the jury's factual findings, whether explicit or implicit. *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir. 1995) ("[A] judge who makes equitable determinations in a case in which the plaintiff's legal claims have been tried to a jury is bound by any factual findings made or inescapably implied by the jury's verdict."); *EEOC. v. Mgmt. Hospitality of Racine, Inc.*, 780 F. Supp. 2d 802, 823 (E.D. Wis. 2010), *aff'd in part, rev'd in part*, 666 F.3d 422 (7th Cir. 2012) ("In deciding whether to award equitable relief, I am bound by the jury's factual findings on plaintiff's legal claims but may make additional findings of fact as needed"). Many of the factual contentions that Walmart continues to press were already rejected by the jury. Those factual questions are now resolved.

The jury made several factual findings that make an injunction appropriate in this case. For example, the jury specifically found that Walmart knew Marlo Spaeth needed an accommodation because of her disability. Special Verdict ECF No. 236, Question 2:

> **Question 2.** Was Walmart aware that Marlo Spaeth needed an accommodation due to her disability?
>
> ANSWER: Yes __X__   No _____

Further, the jury found that Walmart discriminated against Spaeth with reckless disregard to

1

her rights under the ADA. *Id.*, Question 8. In awarding $125 million in punitive damages, the jury was instructed to consider "the likelihood that Walmart would repeat the conduct if an award of punitive damages is not made." Jury Instructions ECF No. 234, § 3.13, p.19. These findings support injunctive relief.

### a. EEOC need not show repeated or widespread discrimination.

Walmart misrepresents Seventh Circuit caselaw by implying that EEOC must show a "pattern or practice" (Def. Br. ECF No. 257, pp. 3, 8) or provide other examples of discrimination to support an injunction (*Id.* at 5). To the contrary, the Seventh Circuit has been clear that "the section of Title VII authorizing injunctive relief does not itself require that a pattern or practice of unlawful conduct be shown; instead, injunctive relief is authorized once the court has found that the defendant intentionally engaged in an unlawful employment practice." *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997). In fact, in the same case that Walmart repeatedly cites to support its argument, the Seventh Circuit clarified that "the EEOC need not prove that the employer previously engaged in widespread discrimination, and 'injunctive relief is appropriate even where the [EEOC] has produced no evidence of discrimination going beyond the particular claimant's case.'" *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013). The Seventh Circuit noted that "we have approved permanent injunctions addressed to the type of discrimination proven by a particular plaintiff without searching the record for evidence of a pattern or practice of similar conduct." *Ilona of Hungary*, 108 F.3d at 1578 (collecting cases). Record evidence showing "other ADA complaints against Walmart similar to the allegations here" (Def. Br. ECF No. 257 at 5) is simply not the standard for issuing an injunction.

Moreover, Walmart's statement that "there is no evidence of other ADA complaints against Walmart similar to the EEOC's allegations" is simply incorrect. *Id.* at 5. For example, two years ago, another Wisconsin jury found Walmart violated the very same provisions of the ADA when it ended

2

reasonable accommodations for an employee who also had developmental disabilities—accommodations which had been in place for almost seventeen years. In that case, as here, the jury found Walmart's refusal to accommodate a long-time employee showed "malice or reckless disregard of [the employee's] rights under the ADA," awarding $5.2 million in compensatory and punitive damages as a result. Carter Reply Decl. Ex. 1.

Other public court filings reveal numerous ADA failure to accommodate complaints against Walmart, many with facts similar to those here.[1] Indeed, in Wisconsin alone, one disability rights organization has represented multiple clients who have experienced similar problems with Walmart's rigid scheduling system. Declaration of Monica Murphy ECF No. 259.[2] Another organization, A Better Balance, has written about Walmart's frequent refusal of accommodation requests after surveying over 1,000 employees. Carter Reply Decl., Ex. 6, pp. 21-28. Additionally, two courts of appeal have recently held that ADA claims about Walmart's failure to make schedule accommodations warranted trials. *Benson v. Wal-Mart Stores E., L.P*, 2021 WL 4190222 (1st Cir. Sept. 15, 2021); *Hazelett v. Wal-Mart Stores, Inc.*, 829 F. App'x 197, 202 (9th Cir. 2020).

Walmart, which bears the burden to prove that discrimination will not recur, offers no testimony or other evidence to support its astonishing claim that there are no other complaints like Spaeth's. Nor can it, because the claim is false.

### b. Walmart's "robust" policies failed to prevent discrimination.

Walmart cannot rely on the existence of its "robust" policies to argue that an injunction is

---

[1] Earlier this year, another federal lawsuit was filed in Maine, alleging Walmart "would not allow" a schedule change accommodation for a longtime employee with a disability "because of a new computerized scheduling system" under which "set schedules are not permissible" as accommodations for disabled employees. Carter Reply Decl., Ex. 2, pp. 7-8. Similar complaints are the basis of other lawsuits across the country. *Id.*, Ex. 3, p. 2; Ex. 4, p. 2, Ex. 5, p. 5.
[2] The EEOC offers the Declaration of Monica Murphy as rebuttal evidence to Walmart's assertion that "there is no evidence of other ADA complaints against Walmart similar to the EEOC's allegations here." ECF No. 257 at 5.

not needed. The Seventh Circuit reversed the district court's refusal to grant an injunction on such grounds in *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 864 (7th Cir. 2001). In *Bruso* the district court erroneously "found it persuasive that United has internal mechanisms in place to address complaints of harassment, and found it 'of no moment' that 'those mechanisms may not be 100% effective.'" *Id.* Here, the jury found that Walmart discriminated against Spaeth by denying a reasonable accommodation and did so maliciously or with reckless disregard for her rights under the ADA. *See* Special Verdict ECF No. 236. Similarly, the Seventh Circuit found that "[a]lthough United may have formal policies for reporting and addressing harassment, the jury concluded that King, Strickland, Gordon, and potentially others ignored those policies altogether when they chose to demote Mr. Bruso." *Bruso*, 239 F.3d at 864; *see also EEOC v. Custom Comp., Inc.*, No. 02-C-3768, 2007 WL 734395, at *19 (N.D. Ill. Mar. 8, 2007) ("the mere fact that Defendants have, and at all times had, written policies addressing sex harassment and retaliation does not demonstrate that injunctive relief is inappropriate, as these policies have been ignored"); *EEOC. v. Mgmt. Hosp. of Racine, Inc.*, 780 F. Supp. 2d 802, 823 (E.D. Wis. 2010), *aff'd in part, rev'd in part*, 666 F.3d 422 (7th Cir. 2012) ("[I]n finding defendants liable for [harassment] and awarding Powell punitive damages, the jury implicitly found that defendants' anti-harassment policy, training and complaint mechanism were deficient.").

### c. Walmart failed to comply with the ADA at multiple levels in the company.

Walmart's failure to follow its policy on reasonable accommodations was a repeated, systemic failure on the part of the corporation. Even with layers of review, beginning at the Manitowoc store and continuing through multiple levels of management up to Walmart corporate headquarters, Walmart repeatedly refused Spaeth's requests and disregarded her obvious need for an accommodation. When higher-level management was given a chance to undo Spaeth's discriminatory termination, Walmart doubled down on the termination instead.

First, Spaeth's immediate supervisors failed to grant her request for a schedule

accommodation. Trial Tr. ECF No. 247, p. 528:9-24. Then Walmart's personnel coordinator, Karen Becker, failed again to provide a schedule accommodation when Spaeth's sister, Amy Jo Stevenson, explained Spaeth could not handle the schedule because of Down syndrome. Trial Tr. ECF No. 245, p. 92:5-7. Instead of accommodating Spaeth, management disciplined her for the difficulties she had adjusting to a later work schedule and terminated her. Trial Tr. ECF No. 247, p. 565:9-20. Stevenson gave Walmart another chance to comply with the ADA when she brought an ADA fact sheet to a meeting and complained specifically about Walmart's refusal to accommodate Spaeth under the ADA. Trial Tr. ECF No. 245, pp. 95:16 - 96:5. Walmart ignored yet another chance to comply with the ADA when co-manager Robin Castro reached out to the Market Human Resources Manager, Lee Spude. Trial Tr. ECF No. 246 pp. 277:11 – 279:4. Despite the fact that Spude's main responsibility is ensuring compliance with Walmart guidelines and policy (Trial Tr. ECF No. 247 p. 651:2-13), Spude, again, failed to grant Stevenson's request to reinstate Spaeth with an ADA accommodation. After speaking with Spude, Castro filed a disability discrimination complaint with Walmart's ethics hotline. Trial Tr. ECF No. 246 at 339:2-25. Denise Morgan, ethics manager at Walmart's corporate headquarters, oversaw the investigation, but never reached out to Stevenson and Spaeth and refused to consider a reasonable accommodation. *Id.* at 338:1-339:25, 343:4 – 344:9. Walmart ignored its own policies repeatedly, at various levels within the company.

### d. Managers involved in the discrimination still work at Walmart.

The officials responsible for the discrimination against Ms. Spaeth remain at Walmart. While personnel coordinator Karen Becker retired after Ms. Spaeth was terminated, Walmart still employs all other members of Walmart's management who failed to comply with the ADA in this case – Lee Spude, Kent Abitz, Bonnie Popp, Robin Castro, Julia Stern, and Denise Morgan. Indeed, perhaps the most culpable official, Lee Spude, has been promoted. As People Director for Walmart's Region 53, he now oversees more than a hundred stores in a dozen territories, "about 30,000 people." Trial

Tr. ECF No. 247 at 649:7-651:13, 698:15-16. Given his broad and expanding set of responsibilities at the company, it is telling that Spude has "never seen a long-term permanent scheduling accommodation" at Walmart. *Id.* at 725:6-7; *see also* 728:25 -729:13. As these managers are still employed at Walmart, an injunction is appropriate to prevent future violations. *Ilona of Hungary*, 108 F.3d at 1579 ("[I]njunctive relief is justified in a case like this where the individuals who were found to have discriminated remain the defendant's primary decision-makers."); *EEOC v. Gurnee Inn Corp.*, 914 F.2d 815, 817 (7th Cir. 1990) (injunction needed where manager who "was aware of [the harasser's] conduct but did nothing to rectify it, still was employed by [defendant] when the court entered the injunction"); *EEOC v. North Star Hospitality*, 2014 WL 282026, at *5 (W.D. Wis. Jan. 27, 2014) (retention of manager involved in discrimination supports injunction).

## II. EEOC's requests are appropriately tailored and specific

The EEOC's requests are specifically designed to prevent Walmart from continuing to violate the reasonable accommodation provision of the ADA. Walmart is incorrect in asserting that the Court is limited to addressing violations identical to Spaeth's situation in all factual respects. Walmart violated Section 12112(b)(5)(A) of the ADA: "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability …unless…the accommodation would impose an undue hardship..." *Id.* The proposed injunctive provisions are designed to prevent further violations of that provision of the ADA.

There is reason to believe Walmart's hostility to long-term schedule accommodations is a nationwide problem, not a local one. Witnesses confirmed that *Walmart's home office* ordered the stores to deny requests for schedule adjustments. Trial Tr. ECF No. 246 at 249:3-8. This order to deny schedule accommodations applied to all employees, with no distinction made for employees with disabilities. Trial Tr. ECF No 247 at 602:17-19, 603:1-3, 22. But "modified work schedules" are expressly included in the ADA's definition of "reasonable accommodation." § 12111(9). Indeed, a

6

schedule accommodation is "reasonable on its face." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002). The order from Walmart's home office to act in a manner inconsistent with the ADA's requirements is an obvious basis "to conclude that Walmart's 'voluntary compliance' with the whole of the ADA's reasonable-accommodations provisions across the country 'will not be forthcoming.'" Def. Br. ECF No. 257 at 11 (citing *AutoZone*, 707 F.3d at 841-43). That a Regional Manager in charge of 30,000 employees testified that Walmart is not "obligated in any way to offer permanent long-term scheduling changes" strongly suggests a company-wide practice of resistance to such accommodations. Trial Tr. ECF No. 247 at 725:8-13; 728:25 -729:13.

Accordingly, the EEOC seeks to prevent future violations of ADA Section 12112(b)(5)(A) by enjoining Walmart, company-wide, from denying long-term disability accommodations in the absence of undue hardship. *See AutoZone,* 707 F.3d at 841 (requiring reasonable accommodations); *Ilona*, 108 F.3d at 1578 (7th Cir. 1997) (enjoining "any practice that discriminates on the basis of religion"); *EEOC v. RockAuto,* 2021 WL 3487668, at *8 (W.D. Wis. Aug. 9, 2021) ("Prohibition on age discrimination in hiring [] RockAuto shall not take the age of an applicant into consideration during its hiring process"); *N. Star Hosp.*, 2014 WL 282026, at *4 (prohibiting retaliation); *Mgmt. Hosp. of Racine, Inc.,* 780 F. Supp. 2d at 823 (E.D. Wis. 2010) (enjoining failure to address sexual harassment); *Custom,* 2007 WL 734395 at *20 (enjoining "violating Title VII with respect to sexual harassment and retaliation"). The EEOC's request here is "not simply an 'obey the law' injunction, but [is] tailored to the deficiencies identified in defendants' operations and it is limited in duration." *N. Star Hospitality*, 2014 WL 282026, at *6.

Within a much narrower geographic area, Walmart's Region 53, the EEOC seeks to enjoin Walmart from failing to provide reasonable accommodations, long-term or otherwise, and from retaliating against any employee who requests an accommodation. Pl. Br. ECF No. 252-1, § III.c.1 at 7; § III.c.3 at 10; § III.c.8 at 14; *see EEOC v. Wal-Mart Stores, Inc.*, 202 F.3d 281 (10th Cir. 1999)

(enjoining discrimination against individuals with disabilities). The Seventh Circuit upheld a similar injunction against failing to provide reasonable accommodations at all AutoZone stores in the Central District of Illinois: "[W]e have upheld obey-the-law injunctions when the victorious employee remains at the company or has been reinstated; where the particular employees or supervisors responsible for the illegal conduct remain at the company." *AutoZone*, 707 F.3d at 842 (7th Cir. 2013) (affirming in light of "intransigence at quite senior levels of management"). The jury found that Walmart acted "in reckless disregard of Ms. Spaeth's right not to be discriminated against" in awarding punitive damages. Jury Instructions ECF No. 234, § 3.13. An injunction requiring Walmart not to discriminate is appropriate here, where voluntarily compliance is unlikely.

EEOC also asks the Court to reinstate Marlo Spaeth. Pl. Br. ECF No. 252-1 § III.c.9 at 15. "Reinstatement is the preferred remedy for plaintiffs who have proven their termination was discriminatory and it should be awarded when feasible." *Morris v. BNSF*, 969 F.3d 753, 768 (7th Cir. 2020). Walmart makes no argument that reinstatement is not feasible and thus waives that point. Its argument that it had "lawful grounds" to discharge Spaeth is flatly inconsistent with the jury's findings and is not a basis for denying reinstatement. Special Verdict ECF No. 236, Questions 2, 5. There was ample evidence that any attendance problems were due to Walmart's ADA violations. Accordingly, EEOC also asks the Court to enjoin Walmart from engaging in further discrimination or retaliation against Spaeth once she is reinstated (Pl. Br. ECF No. 252-1, § III.c.10 at 16) and require Walmart to inform Spaeth's guardian of any issues involving accommodations for Spaeth's disability. *Id.,* § III.c.11 at 16. These provisions are reasonable and appropriate, as they are designed to aid in the implementation of the Court's order of reinstatement. *See EEOC v. DCP*, 608 F. Supp. 2d 107, 111 (D. Me. 2009) (injunction prohibiting retaliation). If the Court denies reinstatement, front pay is appropriate instead. *McKnight v. Dean*, 270 F.3d 513, 516 (7th Cir. 2001) (in the absence

of reinstatement, "a remedial gap will open up [without front pay]…a remedy limited to back pay will not make the plaintiff whole.").

The EEOC also seeks modification of Walmart's policies to clarify that long-term disability accommodations may be granted if they do not impose undue hardship (Pl. Br. ECF No. 252-1 § III.c.2 at 9), require training to Walmart's managers regarding the same (*Id.,* § III.c.6 at 13), consider adherence to EEO policies as a factor in management performance reviews (*Id.,* § III.c.7 at 14), and require Walmart to report to the EEOC regarding requests for accommodations and complaints (*Id.,* § III.c.5 at 12). Reporting, in particular, is key to detecting and addressing future violations.

Courts have granted injunctions requiring similar measures to ensure future compliance. *AutoZone,* 707 F.3d at 844 (requiring reporting of accommodation requests and defendant's response); *Ilona*, 108 F.3d at 1578 (requiring reporting of all requests for religious accommodations and the employer's response); *EEOC v. Serv. Temps*, 679 F.3d 329 (5th Cir. 2012) (injunction against discrimination, requiring notice of verdict, training, and reporting); *RockAuto,* 2021 WL 3487668, at *8-9 (requiring new antidiscrimination policy, training, and reporting of complaints); *N. Star Hosp.*, 2014 WL 282026, at *4 (requiring policy adaptation and training). Walmart argues that EEOC's requests are unnecessary because Walmart's policies already "contemplate" modified work schedules and make "no distinction between short-term and long-term schedule modifications." Def. Br ECF 257 at 12. But trial testimony shows that Walmart's actual practice differs. In reality, Walmart's home office instructed managers to deny requests for schedule accommodations. Trial Tr. ECF No. 246, p. 249:3-8, 474:16-19, 602:17-19, 603:1-3, 22. Walmart's policies must be modified to clarify that permanent or long-term disability accommodations *are* available to employees. *Johnson*, 91 F.3d 1529, 1542 (2d Cir. 1996) (ordering defendant to revise policies). And to verify compliance, Walmart should be required to report requests for accommodations to EEOC. *Serv. Temps,* 679 F.3d at 329-30 (requiring reporting). Likewise, courts often require training. *EEOC v. Dolgencorp*, LLC, 899 F.3d 428

9

Case 1:17-cv-00070-WCG   Filed 10/15/21   Page 13 of 20   Document 260

(6th Cir. 2018) (requiring training). Adding EEO compliance to managers' performance reviews promotes accountability and is appropriate when managers knew of the discriminatory conduct but did nothing to correct it. *See Gurnee Inn*, 914 F.2d at 816-817 (requiring new procedure to enforce anti-discrimination policy).

Walmart misstates the holding of *Gurnee Inn*, Def. Br. 16, in which the Seventh Circuit found injunctive relief was appropriate where there was a lack of grievance procedures and a manager who failed to address harassment was still employed in a position of authority. *Gurnee Inn*, 914 F.2d at 816-817. Like the employer in *Gurnee Inn*, Walmart has made no substantive changes to the practices that failed Marlo Spaeth in this case. Instead, Walmart "offered no evidence to suggest that they no longer will discriminate" and "insisted throughout this litigation that they in fact never discriminated." *Ilona*, 108 F.3d at 1579. "In these circumstances, [] there certainly is a possibility that the discriminatory conduct could persist." *Id.* Therefore, EEOC also asks the Court to require Walmart to provide notice of the verdict in this case to all employees, including a reminder to employees of their right to contact the EEOC without fear of retaliation. Pl. Br. ECF No. 252-1, § III.c.4 at 12. Appellate courts have upheld such injunctions in EEOC cases. *Serv. Temps*, 679 F.3d at 329-30 ("publicly post, a notice explaining the ADA's protections"); *EEOC v. Boh Bros.*, 731 F.3d 444, 470 (5th Cir. 2013) (requiring notice to employees of policy change and verdict); *Mgmt. Hosp.*, 780 F. Supp. 2d at 823 (requiring notice posting of judgment, training, reporting complaints, and new policy); *Custom Comp.*, 2007 WL 734395, at *20 (requiring notice of verdict, new policy, training, reporting). The EEOC's requests are specifically tailored to prevent further violations of the ADA's reasonable accommodation provision.

### III. Complete relief requires back pay, interest, and a tax component award

The parties apply essentially the same methodology for computing monetary relief in many respects, applying annual raises to Spaeth's rate of pay during the backpay period, computing

prejudgment interest using the Prime Rate and quarterly compounding, computing lost wages and prejudgment interest using a placeholder date of December 31, 2021 for entry of judgment, and computing a tax component award for the negative tax consequences of lost wages and compensatory damages. The parties' disagreements involve four issues: 1) whether Walmart has proven that Spaeth's backpay should be cut off after some period of time for failure to mitigate; 2) the amounts of Spaeth's pay raises for the backpay period; 3) the number of hours per week used to compute backpay; and 4) how to estimate Spaeth's "effective tax rate" when computing the tax offsets. Once the Court has resolved these disputes, the EEOC suggests that the parties be directed to submit updated computations that implement the Court's resolution of these issues.

### a. Back pay of $77,307 is appropriate.

Walmart has not met its burden to prove the affirmative defense of failure-to-mitigate. To prevail, Walmart must prove two elements: (1) that the plaintiff was "not reasonably diligent in seeking other employment," and (2) that "with the exercise of reasonable diligence there was a reasonable chance that the [plaintiff] might have found comparable employment." *EEOC v. Gurnee Inn Corp.*, 914 F.2d 815, 818 (7th Cir. 1990). On the first element, Walmart focuses narrowly on the number of applications submitted by Spaeth, rather than looking at the totality of efforts made by Spaeth or on her behalf. Such efforts also included posting Ms. Spaeth's job interest on Facebook, inquiring about jobs at various potential employers, meeting with staff at Spaeth's local sheltered workshop, and even applying for funding through Manitowoc County. Stevenson Decl., ECF No. 253. The question is not whether these efforts were exhaustive, but simply whether they were reasonable. Walmart has not proven a lack of reasonable diligence.

However, even if Walmart had satisfied the first element, it fails on the second. Walmart offers no convincing evidence that Spaeth was likely to *obtain* comparable employment. *See Vega v. Chicago Park Dist.*, 954 F. 3d 996, 1000 (7th Cir. 2020); *Gaddy v. Abex Corp.*, 884 F.2d 312, 319 (7th

11

Case 1:17-cv-00070-WCG   Filed 10/15/21   Page 15 of 20   Document 260

Cir. 1989). While Walmart's store manager, Kent Abitz, testified regarding the availability of open positions in Manitowoc and opined that Spaeth could have found an open position at Lowes (Trial Tr. ECF No. 247, p. 642:10-643:8), this does little to show that there was a reasonable probability *Spaeth*—an individual with a significant disability who had recently been fired by Walmart — would have received a job offer. Abitz's testimony does nothing to show that Spaeth was likely to find an employer willing to provide the extra support she needed during training or learning new routines. The Court should find that Walmart has not proven this affirmative defense.

### i. Backpay for 16 hours of work per week is appropriate

Spaeth is available to work four weekdays from noon to 4pm. Trial Ex. 1. Store Manager Abitz testified that it was difficult to keep his store fully staffed, that the store had unfilled positions for associates from 2015 to the present, and that there was great competition for reliable employees. Trial Tr. ECF 247, pp. 641:25 - 6422:9. Lee Spude testified, ". . . at Walmart we always could use the help. We always need good associates." *Id.* at 676:3-5. In light of these facts, it is reasonable to conclude that, absent the violations of the ADA that caused disruptions to Spaeth's work habits, Walmart would have maximized Spaeth's labor by scheduling her from noon to 4pm on the four weekdays she was available to work. Walmart should not benefit from a lower average hours worked figure that was caused, in significant part, by its own unlawful actions.

### ii. The EEOC's estimated wage increases for Spaeth are reasonable

In the absence of information about how Walmart has increased employee pay during the last six years, the EEOC applied a 5% yearly increase to Spaeth's hourly wage during the backpay period, based on the average rate at which Spaeth's wages actually grew over her 16 years at Walmart. Carter Decl. ECF No. 254 at ¶ 7. Walmart has not attempted to rebut this estimate by showing what employees in Spaeth's position actually received in recent years. Instead it simply selects a narrower range of years from Ms. Spaeth's past to suggest that her wage increases should be

frozen at $0.40 per hour for every year since 2015. Def. Br. ECF No. 257 at 25-26; Tseytlin Decl. ECF No. 258, Ex. 2. This is implausible. Indeed, Walmart boasts on its website that starting wages for associates are competitive and were raised by more than 50 percent in the past five years. Carter Reply Decl., ¶ 7. While Walmart argues that Spaeth would only be paid a wage of $14.90/hour in what would have been her 22nd year with the company, on its website, Walmart reports that the average total compensation and benefits for hourly associates exceeds $18. *Id.* Walmart, despite superior access to information, has done little to show that the EEOC's proposed 5% raises are unreasonable. Moreover, all uncertainties in back pay calculations are resolved against the discriminating employer. *Steward v. General Motors*, 542 F.2d 445, 452 (7th Cir. 1976); *Ortega v. Chicago Bd. Educ.*, 280 F. Supp. 3d 1072, 1092-93 (N.D. Ill. 2017). The Court should adopt the EEOC's estimated annual raises.

### b. The parties agree on the method for computing prejudgment interest

The parties use the same methodology for computing prejudgment interest on Spaeth's lost wages: the Prime Rate, compounded quarterly.[3] Once the Court has determined the amount of backpay, the prejudgment interest computations can be updated accordingly.

### c. Tax-component awards are appropriate for both backpay and compensatory damages

The EEOC seeks a tax component award to offset the additional tax burden Spaeth will incur both as a result of receiving backpay in a lump sum and as a result of compensatory damages being subject to income taxes. Notably, Walmart does not dispute that a tax component award may be awarded for the taxes due on compensatory damages. Walmart offers no response to the EEOC's argument on this point. *See* Pl. Br. ECF No. 252-1 at 20-24; Def. Br. ECF No. 257 at 27-

---

[3] Small discrepancies in the interest rates originally used by the EEOC *understated* prejudgment interest by less than $4. *See* Carter Reply Decl. ¶ 9. Because the error favors Walmart, and for the sake of simplicity, the EEOC retains its original figures here.

30. Instead, Walmart briefly contends that no tax component award is appropriate for any part of the judgment at all, for lack of "special circumstances." While the Seventh Circuit has explained that a tax component award should fit "the circumstances peculiar to the case," it has expressly stated that this refers to "the *plaintiff's* circumstances." *Vega v. Chicago*, 12 F.4th 696, 707 (7th Cir. Sep. 1, 2021) (emphasis added). The factors Walmart references—its purported good faith and its "robust" accommodation policies—are irrelevant, as they have nothing to do with Spaeth's circumstances. *See* Def. Br. ECF No. 257 at 27-28. The out-of-circuit case Walmart cites likewise looks to the circumstances *of the aggrieved individuals* and whether a tax component award was needed to make them whole, not any of the factors mentioned by Walmart. *Sears v. Atchison*, 749 F.2d 1451, 1456 (10th Cir. 1984).

Here, the tax burden Spaeth will incur is greater than the tax burden she would have incurred in the absence of Walmart's violation of the law. It is true that a tax-component award will not be appropriate in all cases: a person who is owed a small amount of lost wages will not always be taxed at a rate higher than the rate that would have applied while she was employed. But Spaeth *will* be taxed at a higher rate, as was explained in the EEOC's opening brief. Walmart does not dispute this. Under these circumstances, a tax-component award is appropriate.

Walmart also takes issue with how the EEOC computed the effective tax rate that will apply to Spaeth. Defendant contends, without legal authority, that when computing taxes *on Spaeth's backpay and compensatory damages* the Court must ignore a large part of the judgment—namely, punitive damages—even though it will be part of Spaeth's income and therefore will affect her effective tax rate. By contrast, in computing the taxes Spaeth will owe, the Court should perform the same calculation the IRS would and should use the entire amount of the judgment that will be paid to Spaeth to determine her effective tax rate. Indeed, in *Vega*, in which the plaintiff received backpay and compensatory damages but sought a tax component award only for backpay, the Seventh

14

Circuit held that it was permissible to consider compensatory damages when computing the "effective tax rate." *See* 12 F.4th at 707 (rejecting argument "that including compensatory damages to calculate Vega's effective tax rate was error"). This illustrates that while a tax component award may only be sought for taxes due on certain portions of the judgment, the *entire* judgment is relevant to determining the effective tax *rate*. Walmart incorrectly computes Spaeth's taxes as if she will not be receiving income from punitive damages. *See* Tseytlin Decl., at ¶ 15.[4]

Using the EEOC's backpay and interest figures and adding compensatory damages, which total $237,193, Walmart computes that Spaeth will pay $57,813 in taxes on those amounts. *See id.* This effective tax rate of 24.37% ($57,813 divided by $237,193), however, is not the rate Spaeth would actually pay. In reality, the taxes due on the entire judgment of $387,193 would be $110,313. *See* Carter Decl. ECF No. 254 at ¶ 19. This is an effective tax rate of 28.49% ($110,313 divided by $387,193). Thus, the actual tax burden Spaeth will incur on $227,307 in backpay and compensatory damages is 28.49% of that amount, or $64,761— $6,948 more than Walmart's estimate. As a result of understating the taxes on backpay and compensatory damages, Walmart also understates the appropriate tax-component awards for those amounts. Accordingly, a tax component award should be granted in the amount of $99,632 ($65,747 for compensatory damages and $33,885 for lost wages). Pl. Br. ECF No. 252-1, pp, 20, 24; Carter Decl. ECF No. 254 ¶¶ 17-31.

IV.     Conclusion

THEREFORE, the EEOC respectfully asks this Court to enter an injunction against Walmart for five years and to grant other equitable relief to Marlo Spaeth including reinstatement (or front pay), back pay with interest, and a tax component award.

Respectfully submitted this 15th day of October 2021.

---

[4] Relatedly, Walmart also conflates whether to consider punitive damages in estimating tax rates with the issue of whether to grant a tax-component award for taxes Spaeth will owe *on the punitive damages award itself*. The EEOC is not seeking a tax component award for the taxes due on punitive damages.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Counsel for Plaintiff

*/s/ Leslie N. Carter*
Leslie N. Carter
Trial Attorney

*/s/ Carrie Vance*
Carrie Vance
Trial Attorney

310 West Wisconsin Avenue, Suite 500
Milwaukee, WI 53203-2292
☏ (414) 662-3711
📠 (414) 297-3146
leslie.carter@eeoc.gov
carrie.vance@eeoc.gov

*/s/ Richard J. Mrizek*
Richard J. Mrizek
Trial Attorney

*/s/ Justin Mulaire*
Justin Mulaire
Supervisory Trial Attorney

230 S. Dearborn Street, Suite 2920
Chicago, IL 60604
☏ (312) 872-9724
richard.mrizek@eeoc.gov
justin.mulaire@eeoc.gov

16
Case 1:17-cv-00070-WCG   Filed 10/15/21   Page 20 of 20   Document 260