# EXHIBIT 6

# Pointing Out: How Walmart Unlawfully Punishes Workers for Medical Absences





the work and family legal center

June 2017

# Pointing Out: How Walmart Unlawfully Punishes Workers for Medical Absences

By Dina Bakst, Elizabeth Gedmark & Cara Suvall*
Published by A Better Balance © June 2017



**a better balance**
the work and family legal center

## Who We Are

A Better Balance is a national legal advocacy organization dedicated to promoting fairness in the workplace. We help workers across the economic spectrum care for their families without risking their economic security. Through legislative advocacy, litigation and public education, A Better Balance leverages the power of the law to ensure that no workers have to make the impossible choice between their job and their family. We believe that when all working parents and caregivers have a fair shot in the workplace, our families, our communities and our nation are healthier and stronger.

 www.abetterbalance.org

 @ABetterBalance

 https://www.facebook.com/ABetterBalance/

 https://www.instagram.com/a_better_balance/

In April and May 2017, A Better Balance and the OUR Walmart project of the Organization United for Respect (OUR)—a national non-profit organization dedicated to achieving economic stability and empowerment for the millions of people who work in retail—worked together to survey more than 1,000 current and former employees about their experiences with sick time at Walmart. Those survey responses helped to inform this report and many examples are highlighted throughout. We are indebted to OUR Walmart for their collaboration and to the workers for being willing to share their experiences.

*With appreciation for significant contributions by Molly Weston Williamson, Marcella Kocolatos, and Sarah Brafman.*

## Table of Contents

Executive Summary ........................................................................... 1

Introduction ................................................................................... 3

Our Approach .................................................................................. 6

Attendance at Walmart ....................................................................... 6

    The Point System ......................................................................... 7

    Excused Absences ......................................................................... 8

    The "Ostrich" Approach .................................................................. 9

    Unrealistic Notice Requirement ........................................................ 11

Legal Protections ........................................................................... 12

    The Family and Medical Leave Act ...................................................... 12

    The Americans with Disabilities Act ................................................... 21

    Pregnant Worker Fairness Acts ......................................................... 28

    Sick Time Laws .......................................................................... 30

Recommendations ............................................................................. 34



# Executive Summary

Walmart is proud of its heritage as a family-founded company. Ironically, while the Walton family touts its family values, Walmart's absence control program punishes workers who need to be there for their own families. Walmart disciplines workers for occasional absences due to caring for sick or disabled family members and for needing to take time off for their own illnesses or disabilities. Although this system is supposed to be "neutral," and punish all absences equally, along the lines of a "three strikes and you're out" policy, in reality such a system is brutally unfair. It punishes workers for things they cannot control and disproportionately harms the most vulnerable workers.

Punishing workers for absences related to illness or disability is not only unfair, it's often against the law. Based on our conversations with Walmart employees as well as survey results of over 1,000 current and former Walmart workers who have struggled due to Walmart's absence control program, Walmart may regularly be violating the federal Family and Medical Leave Act (FMLA) by failing to give adequate notice to its employees about when absences might be protected by the FMLA and by giving its employees disciplinary points for taking time to care for themselves, their children, their spouses or their parents even though that time is covered by the FMLA.

Similarly, we allege that Walmart's policies and practices of refusing to consider doctors' notes and giving disciplinary points for disability-related absences is a violation of the Americans with Disabilities Act (ADA). The ADA protects workers with disabilities from being disciplined or fired because of their disabilities. It also requires employers to engage in a good faith interactive process to determine an appropriate accommodation for workers with disabilities. Unfortunately, as detailed in this report, this is too often not Walmart's practice. Other federal, state and local laws such as pregnancy accommodation protections, and sick time laws, could also be at play. Walmart's policies and practices are not in compliance with many of these laws.

*Simply put:* Giving a worker a disciplinary "point" for being absent due to a disability or for taking care of themselves or a loved one with a serious medical condition is not only unfair, in many instances, it runs afoul of federal, state and local law.

We call on Walmart not only to follow the law, but to work with its employees who have occasional absences related to health and disability. Walmart can do better, and Walmart must do better. Workers and the advocates standing with them will not stop pushing until Walmart treats its workers fairly.

*We should not be punished with a point against us when we are sick.*

**—Anya,\* Idaho**

*I came down with a stomach flu and I had to call in due to vomiting and high fever and got a point cause of being sick ...I hate the fact we got to worry about getting fired cause we caught the flu.*

**—Veronica,\* Illinois**

*I was fired for caring too much for my loved one! I was there, loyal, for twenty-two years. Now my wife is gone, and I'm not working!*

**—Carl,\* Kentucky**

*My newborn son got put in the hospital for the RSV virus. I was told my job should be more important and come first . . . yeah, not over my child!*

**—Laronda,\* Tennessee**

# Introduction

Walmart presents itself with a smile—but workers there are not smiling. Employees (or "associates") at Walmart work long, irregular hours for low pay and few benefits. Working at Walmart can be a challenge. But while employees may wish the company were more supportive, many are still grateful for the job—they and their families rely on the paycheck to keep a roof over their heads and food on their table. That is why it is particularly devastating when Walmart—with its tremendous resources—chooses to adopt and promote corporate policies that treat hard-working employees like they are disposable.

Walmart is a retailing giant. With 2.3 million employees around the world[1] and total revenue of close to $486 billion in the most recent fiscal year,[2] Walmart is the world's largest company by revenue and the world's largest private employer. Here in the United States, Walmart is the country's largest private employer, with 1.5 million associates in 5,332 stores.[3] Many Walmarts are located in the Southeastern United States, where there are 1,875 stores and 540,074 employees.[4] Walmart can have particular significance in rural areas, where there may

be few other jobs available. Despite its tremendous resources, however, Walmart maintains punitive policies and practices that destabilize employees' lives and push them out of work when they need a paycheck the most. Because Walmart is so large, it often sets the standard for the entire retail industry. Pushing for change at Walmart can lead to broader reforms for workers everywhere.

This report is rooted in the experiences of workers around the country.[5] It shows how Walmart's "absence control program"[6]— in which workers are given disciplinary "points" for absences that can lead to termination — punishes workers who are absent for medical reasons, which are often emergencies, in a way that we allege violates a number of laws. Many Walmart workers, who are struggling to get by on Walmart hours and wages, live in fear that they are only one sick child or emergency room trip away from losing their job. Those who are most at risk are workers with illnesses, disabilities, pregnancy-related conditions, injuries or family health emergencies.

*My child got sick and had to go to the doctor's several times. The doctor's office is not open at night. Any time one of the kids get sick, I'm punished at work. I'm a single mom with no one to help. Trying to work and raise kids. Then work punishes me for being a good mom. Yay me.*

**—Barbara,\* Kentucky**

*People cannot predict when or how they get sick. . . Most if not all Walmart employees fear losing their jobs because of this. . .*

**—Karla,\* Tennessee**

Instead of policies and practices that respond to the reality of employees' lives with any sensitivity or flexibility, Walmart enforces its strict attendance control program in a way that violates the fundamental dignity and human rights of its employees and, in some situations, in a way that violates the law. Arleja's story illustrates these issues precisely.



## Arleja's Story

I was so excited to get my job at Walmart. I started as a Customer Service Manager at a Walmart Supercenter in Washington, D.C., in November 2015. I loved working there. It was a fast-paced and challenging environment. I worked overtime, and still showed up the next day eager to get back to work. It was rare for employees to get overtime and only the best workers received it—the fact that I was chosen made me feel like I was valued and like I was part of something. I found out in early January that I was pregnant with my fourth child. I excitedly told my co-workers my good news. Then, a week or so later, in the middle of my shift, I started having really painful cramps and shooting pains in my stomach. I was doubled over in pain. A co-worker checked on me, and I told her what was going on. She told me that I should go to the Emergency Room, even though that would mean that I would get a point for leaving work early. I called my doctor, who also said I should go to the hospital. But I couldn't afford to risk my job at Walmart, so I forced myself to work through the pain

1 Walmart 2017 Annual Report, p. 10, http://s2.q4cdn.com/056532643/files/doc_financials/2017/Annual/WMT_2017_AR-(1).pdf (last accessed May 16, 2017).

2 Walmart 2017 Annual Report, p. 14, http://s2.q4cdn.com/056532643/files/doc_financials/2017/Annual/WMT_2017_AR-(1).pdf (last accessed May 16, 2017).

3 Walmart 2017 Annual Report, p. 63, http://s2.q4cdn.com/056532643/files/doc_financials/2017/Annual/WMT_2017_AR-(1).pdf (last accessed May 16, 2017).

4 This calculation includes Alabama, Arkansas, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Virginia, and West Virginia as of February 2017. Walmart Corporate, Our Locations, http://corporate.walmart.com/our-story/our-locations (last accessed May 16, 2017).

5 Some Walmart worker stories have been lightly edited for grammar and clarity. For those workers who wished to remain anonymous, a pseudonym is indicated with an asterisk.

6 Throughout the report, when we refer to Walmart's absence control program, we mean the practices and policies that are involved in giving a "point" or otherwise disciplining a worker related to attendance. Our understanding of this program is based on our conversations with Walmart workers and some written policies and information from Walmart, as accessed by Walmart workers. Nothing in this report is intended to represent the entirety of Walmart's corporate or Human Resources policies or any statements by Walmart.

Case 1:17-cv-00070-WCG   Filed 10/15/21   Page 5 of 22   Document 261-6

for the rest of my shift before going to the Emergency Room that night.

Between the hospital, a follow-up emergency ultrasound, and a doctor's order to rest, I was out of work for the next two days. I followed the proper call-out procedure and told a manager that I would be out. I also wanted to make sure Walmart wouldn't be short-staffed, so I told a manager that I had arranged for one of my co-workers to substitute for me if that would be helpful, but they never followed up with him. I was given points for those two absences. I got a disciplinary coaching for attendance because I missed those two days, and I told my manager that wasn't fair because the two days were because of a medical emergency related to my pregnancy. I tried to hand in paperwork showing that I had been at the hospital and a letter from my doctor explaining the pregnancy complications I was having, but my manager refused to take them. I asked that she not hold those days against me, but she said there was nothing she could do, that they were unauthorized absences. I even went to the Store Manager to plead my case, but he said the same thing—that those absences couldn't be authorized, and I had to be disciplined for them. Walmart policy.

Unfortunately, in February, I started having terrible pregnancy-related nausea. It was so bad that a few mornings I could not even get out of bed. I couldn't do anything. When that happened, I tried bringing in notes from my doctor explaining that I was having severe nausea related to my pregnancy, but

again my managers refused to even look at them. Soon after, I was fired for going over the point limit for new hires because of my absences related to the medical issues I was having related to my pregnancy. I begged them to make an excuse for my absences because there was nothing I could have done about them and they were due to my pregnancy, but I was told that under Walmart's policies that simply didn't matter.

When I lost my job, I lost so much—it was hard to get by, and I was so nervous that my kids and I would become homeless. I was good at my job at Walmart, and that job meant so much to me. Even now, I would go back to Walmart in a heartbeat if they apologized or acknowledged that it was wrong that I was fired just for being pregnant.

## Our Approach

In November 2016, A Better Balance filed a class-based "pattern and practice" charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that Walmart's strict and punitive absence control program unlawfully pushes employees, including Arleja, out of work. The charge alleges that Walmart's absence control program is illegal in some situations because Walmart refuses to consider doctor's notes to authorize absences or provide exceptions to its policies for reasons related to medical issues and disabilities. These workers tell us a story with a common theme: Walmart punished me and pushed me out of my job when I needed it most.

In April and May 2017, A Better Balance and OUR Walmart worked together to survey more than 1,000 current and former employees about their experiences with sick time at Walmart. The responses we received to this survey reinforced how difficult Walmart's absence control program makes life for workers. Walmart's policies and practices, including giving points for medical and disability-related absences and refusing to consider doctors' notes, are widespread and consistent around the country.

Drawing on the real stories of Walmart workers around the country, this report shines a light on the devastating effects of the absence control program. Disproportionately low-wage and women of color,[7] these workers and their

stories all too often go unnoticed by policy makers, the media and the public at large. This report centers their experiences—the most powerful call for advancing change at Walmart and across the country. Finally, this report discusses the federal and state laws, such as the Family and Medical Leave Act and the Americans with Disabilities Act, that protect workers from being pushed out of work merely for needing some time off.

*I think it is ridiculous that work has to be put first instead of human life.  It is a sad thing Walmart chose to punish their associates because of their absences due to medical and sickness. . . But to me my family comes first when sick cause we only have one life to live. Does Walmart have no heart when it comes to sickness?*

**—Maria,** ☆ **Texas**

## Attendance at Walmart

Walmart has hundreds of different policies, many of which are not distributed to employees but rather are available only on Walmart's internal computer system, the Wire. We have heard from Walmart employees that they often do not know which policies apply to them; while technically these policies are available to Walmart employees, in reality, this system often works to keep employees in the dark. Many employees are only permitted

---

7 According to Walmart's 2015 Diversity and Inclusion Report, https://cdn.corporate.walmart.com/01/8b/4e0af18a45f3a043fc-85196c2cbe/2015-diversity-and-inclusion-report.pdf (last accessed May 17, 2017) p. 7, women make up 57% of Walmart's workforce, and people of color make up 40% of Walmart's workforce. Women and people of color are significantly less well-represented in man-

*agement and salaried positions, so these numbers are much higher for lower-paid hourly associate positions.*

to access the Wire while they are on the clock (sometimes with a manager hovering nearby), and they are told that their use of the Wire is logged by Walmart. This report does not attempt to comprehensively review all of Walmart's policies. In this section, we will provide basic information about Walmart's policies related to attendance and absence control.

*I've called in sick I think three times last winter, but each time I've been told I've just 'lost points' (of which I have no idea what that means nor how to tell how many 'points' I have). Therefore, I think I must be getting close to the 'limit of points' so I just don't call out sick anymore at all. For all I know, I might have a week of paid sick leave, however no one will show me how to see how many hours I actually have, so I act like I have none left. . . It's very easy to use them up too quickly, thus I won't use any more until I have an explanation.*

**—Jackie,\* California**

## The Point System

Walmart uses a point system to discipline workers. Walmart calls each point an "occurrence." If you get too many points, then you are fired. Workers can receive points for any number of infractions—from talking back to a supervisor or taking too long during a break, to working too slowly or being absent from or late to work.

Walmart gives workers disciplinary points for any time away from work that they consider "unauthorized."

*My daughter was having seizures, I had to take time off to monitor her. They counted it against me. . . I passed out at work. They sent me to the hospital. The next day, they fired me for it. Walmart is a joke. People have lives outside of work, we get sick, we have children, things happen and Walmart literally covers NOTHING.*

**—Allison,\* Ohio**

One unauthorized absence is one point. According to Walmart, an absence means working less than half of your scheduled shift. So someone could get a full point even if she worked almost five hours out of her ten-hour shift before needing to leave to take her child to the hospital. Showing up more than 10 minutes late leads to half of a point.

One no-call/no-show (meaning that the employee did not call in to report the absences at least an hour in advance) is four whole points. Someone who calls 45 minutes before their shift starts to explain that an emergency has just come up and they need to be absent would receive four points under this policy.

*I got into a car wreck on my way to work and was sent by ambulance to the hospital. I had two fractured ribs and a concussion. I reached a manager from the hospital, who said it would be ok, and I came into work the next day with wrapped ribs and a concussion. The front manager then said that they wouldn't accept the doctor's note from the hospital, and they fired me for missing that day.*

**—Megan,\* Oklahoma**

Those who have worked at Walmart for less than six months are terminated at four points, and employees who have worked there longer are terminated for nine points in a six-month rolling period.[8] That means, for example, if an employee who has worked at Walmart for five months is heading to work 45 minutes before her shift when her daughter starts throwing up and needs to be home from school, that employee would lose her job if she stays home with her sick child—even if she had not missed a single day and never been even 10 minutes late the entire time she worked there. It also means, for example, that a ten-year Walmart employee whose only attendance issue is being 11 minutes late approximately once every three weeks would be terminated for exceeding the points limit (even if she regularly stays late beyond the end of her shift). Even before someone has four or nine points, they can still receive disciplinary "coachings" that remain in workers' files. Having any points or coachings on one's record can prevent a worker from getting assigned additional hours or a much-needed raise or promotion.

The strict occurrence limit is particularly challenging for people with caregiving responsibilities—people who need to care for sick children, partners or parents—as well as people with disabilities and medical conditions that require them to occasionally miss work without weeks of advance notice.

## Excused Absences

While Walmart's attendance policy[9] claims to classify absences due to a "reasonable accommodation" (a term of art from disability law) and some other reasons as authorized and therefore not subject to discipline, workers still do receive points from managers. In a survey of over 1,000 Walmart workers, 85.4% agreed with the statement: I think Walmart has a problem of regularly punishing people (eg. a point, occurrence, verbal warning, firing, etc…) who have absences due to a disability or serious illness. Workers reported hearing the same thing from manager after manager: there is no such thing as an excused absence.

........................
8 The details of Walmart's attendance policy may vary slightly by state. The detail in this paragraph is from the current Washington, D.C., Attendance Policy (2016). It is our understanding from speaking with workers and advocates that this attendance policy information is consistent with typical attendance policies in other states.

........................
9 Based on the Washington, D.C., Attendance Policy.

*My appendix ruptured while at work and because I already had eight points, I could not leave work to go to the ER without pointing out and losing my job. I should have been able to leave to go to the ER and not worry about losing my job. I had even said to management, 'So if I fall out because of my appendix and have to go out in an ambulance...I will get a point and lose my job?' The response from management was, 'Yes.'*

**—Sam,\* Kentucky**

In addition to company practice, Walmart's written policies, particularly those handed out to employees, can be profoundly misleading and reinforce the idea that no absences will be excused. We have heard that when new employees are trained at Walmart, the only information they are given on paper is information related to when an employee gets points and what the point limits are, and that employees need to access the in-store online system the WIRE in order to find out more about authorized absences. In another example, when Walmart changed some of its attendance policies in early 2016, workers were given a Personal Associate Summary Sheet (PASS), which they were required to sign, describing how the absence control program worked. The PASS included information about how points are accrued and the new limit at which workers are fired for points, but contained no information about excused absences. By firmly reminding Walmart workers of the company's strict attendance policy, without any explanation

of excused or authorized absences, it is no wonder that Walmart workers live in fear of losing their jobs when illness strikes them or a member of their family.



**I think Walmart has a problem of regularly punishing people who have absences due to a disability or serious illness**

| 85.4% AGREE |
| 14.6% DISAGREE |

## The "Ostrich" Approach

Another aspect of Walmart's approach to its absence control program is that Walmart has a practice that seemingly attempts to insulate managers from finding out that workers are absent for reasons that may be protected by law. According to Walmart workers around the country, managers do not consider doctors' notes from employees. When employees try to avoid a point by bringing in a note showing that they were at the doctor for their child, or were in the emergency room for themselves, Walmart's policy and practice is to not consider the content of the note in deciding whether to treat the absences as unauthorized. Managers often refuse to even look at or physically take

a note. Thus, the proof that the employee was telling the true reason for their absence often does not go into their file and Walmart can claim they did not know about this reason.

*I was vomiting blood and had to go to the ER. I was there for two days and each day was a point. I then had two days off, and I brought my hospital notes in when I went back. They would not accept them.*

**—Leah,\* Kentucky**

Instead of considering why employees were absent—and, as discussed below, letting workers know whether the reasons for their absences might be protected by law—Walmart too readily closes its eyes to the reasons behind employees' absences. Walmart's practice of refusing to consider doctors' notes or to listen to the reasons why employees are absent could be a concerted effort to avoid hearing information that could trigger legal responsibilities. But that approach doesn't work.

*I had a stomach bug, nothing I ate or drank would stay down. Was out for two days (couldn't risk more). When I returned to work, management asked if I knew how many absences I had. 'Yes, I know.' She said I could bring in doctor's notes if I wished but they wouldn't excuse the absence.*

**—Naomi,\* Virginia**

Walmart's "ostrich approach" means that Walmart puts its head in the sand to avoid seeing FMLA and ADA violations, paid sick day violations and pregnancy discrimination, but those issues are still there in the lives of its employees. Sometimes, Walmart tries to outsource its legal responsibilities to a company called Sedgwick, which seemingly handles many, if not most, of Walmart employees' requests for reasonable accommodations, leaves of absence and other absence authorizations. For example, Walmart sometimes tells employees with absences of more than three days to contact Sedgwick for a "leave of absence," without explaining what Sedgwick exactly does, what Walmart's policies are and which laws may protect an employee from being punished for attendance-related issues. Employees around the country agree that dealing with Sedgwick is rarely helpful—it's slow, unresponsive and confusing to deal with.

*I asked for two weeks off to receive mental health treatment. Sedgwick finally got back to me within the last 48 hours of my requested leave, which I hadn't taken because it wasn't approved. Thanks, Sedgwick.*

**—John,\* California**

The responsibility of following the law when it comes to employees' absences rests on Walmart and Walmart alone. Walmart cannot avoid legal obligations by refusing to consider doctors' notes and information about absences, and it cannot push that responsibility onto someone else.

## Unrealistic Notice Requirement

Walmart's attendance policy makes it almost impossible for employees to get absences approved in advance even when employees tell supervisors about them weeks ahead. The policy requires:

(1) that an employee notify management three weeks in advance of an absence; and

(2) that management approve that absence; and

(3) that management choose to build the requested absence into the schedule

in order for an absence not to count against them.

That means, for example, if an employee has a child who needs to have a follow-up doctor's appointment during work hours in two weeks (or even 20 days), there is no way that he can get an absence excused for that day even with the long lead time and even if he were to arrange with a co-worker to take over the shift. It is often impossible to request time off three weeks in advance, especially for unpredictable personal or family needs, but even for foreseen reasons. For example, someone who almost always is scheduled to work nights might make a doctor's appointment for during the day, only to find out that they have been put on the schedule for a day shift. Since managers sometimes fail to post schedules three weeks in advance, it may be too late to request time off under the policy and too late to get a new doctor's appointment that doesn't interfere with a shift.

Of course, emergency situations would never be authorized under this unrealistic three-week advance notice requirement. The survey results indicated that 78 percent of those who were absent for a medical emergency were also punished for an absence.



**78 percent of workers who were absent for a medical emergency were also punished for an absence**

*My eight-month-old daughter got pneumonia in January 2017. I am a single mom and no one could watch her, so I had to take a week off work while she was recovering. I took in a note from the hospital and my manager said they would take me off the schedule, but they never did and I got points for being out. Then in February, my daughter had an allergic reaction and I had to rush her to the hospital and miss work. Because of this, I lost my job. I loved my job and I lost it and lost my place because I couldn't find work soon enough. I am now homeless. I wish Walmart didn't have such a horrible attendance policy. I always showed up on time and was one of their good employees.*

**—Nicole,✩ Texas**

*My mother has a degenerative disc disease of the spine, she sometimes needs to be taken to her doctor's appointments. I try to request the day off ahead of time, up to 30 days notice depending on the doctor she is seeing. My manager doesn't approve days off until two weeks ahead, misses that I put it in almost a month ago, and schedules me for that day. . .[then] I call off and get a point. I find that utterly ridiculous.*

**—Martha,✩ Florida**

*I've requested off more than three weeks ahead of time for my or my daughter's doctor's appointments. But when I am unable to make it to work, I am still punished even though I not only requested off but also brought it to a manager's attention.*

**—Mary, Ohio**

# Legal Protections

Based on what we have heard from workers across the country, we allege that Walmart's absence control program regularly violates the law by punishing workers even when the reason for an absence is a serious medical issue or disability. Walmart employees have told us that they feel vulnerable and anxious. Workers live in fear of getting sick or needing to care for an ill family member, as they know how easy it is to be disciplined and even terminated under Walmart's policies.

While Walmart makes its workers feel like they are completely at management's mercy, the reality is that there are laws that protect them. In addition to the aforementioned FMLA and ADA, Pregnant Worker Fairness Acts and Sick Time Laws protect workers from being punished for particular absences.

## The Family and Medical Leave Act (FMLA)[10]

### What is the FMLA?

The Family and Medical Leave Act (FMLA) was passed by Congress in 1993 to help working men and women balance the conflicting demands of work and personal life. The act recognizes that there will be times when someone cannot work because of their own,or their family member's, medical issues, and that people caring for their own or a

10 For all stories shared in this section, employees indicated that they have worked at Walmart for over a year and at least 25 hours per week, which would likely be sufficient for eligibility under the FMLA. However, A Better Balance has not done a full review of all of the facts of each of these stories, and does not make representations about each employee's eligibility for the FMLA or whether the medical condition involved would actually be covered by the FMLA.

Case 1:17-cv-00070-WCG   Filed 10/15/21   Page 9 of 22   Document 261-6

family member's serious medical condition should not lose their job. [11]

*I had to call out because I was scheduled to work the day of my son's knee surgery. I got a point. After his knee surgery, I had to leave him in the hospital while I worked.*

**—Jamie,\* South Carolina**

*I had a really bad illness, and my doctor told me to rest in order to fully recover. I went to personnel to ask if they would let me follow my doctor's direction and accept a doctor's note, since he advised me to take three days off while I was on prescription antibiotics. They told me no, so I went to work even though I was sick, and I did not fully recover from my illness. The doctor said that I could have suffered serious ear damage due to lack of rest and proper care due to Walmart's policy.*

**—Carly,\* Florida**

The FMLA gives eligible employees—those who have worked for 12 months[12] and at



*A treasured family photograph of Brittany's mother*

# Brittany's\* Story

Six years ago, I worked for a Walmart in a small town in Texas. I worked there for two years before my wife and I decided to move to North Carolina for a job opportunity. Unfortunately, a little over a year ago in early 2016 my mother became gravely ill with cirrhosis of the liver, so we moved our lives back to Texas in order to be near her and to care for her. When I got back home, my mom was in the Intensive Care Unit (ICU), and we learned that she had also had a stroke. She clearly was not doing well, and we found out she likely wouldn't recover. In March 2016, my wife and I started working at a Walmart close to my mom.

I hoped that working near my mom would let me be there for her. Walmart did not let that happen. Even though I was a hard worker and worked full-time hours, I was often given "points" for absences when I needed to take care of my mom. I knew I

would be fired if I got nine points, so I was constantly walking on eggshells because I was terrified of being terminated and losing the paycheck we depended on. My manager said they don't accept doctor's notes or medical excuses, though my manager did informally excuse a few of my absences. But adding insult to injury, they would hold the few times they did not give me points for absences over my head—when I would request additional time off to take care of my mom, they would not only tell me that they would be unexcused, but they would threaten to go back into the system and give me points for the old absences too if I requested additional time off. This made my work environment really stressful—I never knew how many points I had, and my managers used my mom's condition to have power over me and my situation. Being in limbo like that while being constantly threatened with termination was even worse than just knowing where I stood.

I had heard about the FMLA, so I asked whether my absences could be excused. My manager told me that they couldn't because I had not yet been working there long enough to apply. I just learned recently, in a conversation with A Better Balance, that since I had worked at Walmart before just a few years ago, it might be the case that Walmart was supposed to count the time I worked at the other Walmart and add it together to equal over 12 months, which could have made me covered by the FMLA. Walmart never told me that.

The worst part came at the end. My mother was receiving hospice care because we

knew there was no treatment for her—they were just trying to keep her comfortable. She was on her deathbed when I requested time off to be with her, but my request was denied. Walmart said I would be fired if I took the time off. My mother died alone in early April 2017. Not being with her when she passed was devastating.

I know that I am not the only person who has dealt with this—my wife has had similar trouble while she has been trying to care for her mother who has cancer. She works the night shift so she can be around to take my mother-in-law to chemo and radiation treatments during the day. Even though she lets them know what schedule she needs in order to work and also care for her mother, sometimes they still schedule her when they know she cannot work and she is given points for her absences. It is a very stressful situation for her, and I hate that she has to deal with this too.

I am telling my story because I think it is so important that Walmart not be allowed to get away with treating their employees so poorly. We work incredibly hard for them and deserve a little flexibility to care for our loved ones. My mother always taught me to stand up for what is right. I pray no one is ever put in the predicament that Walmart put me in.

...................
11 This section focuses on the federal FMLA, but many states also have their own state-specific FMLAs, which often exceed the protections of the federal FMLA. For an overview of some state FMLA laws, see http://www.ncsl.org/research/labor-and-employment/state-family-and-medical-leave-laws.aspx (last accessed May 16, 2017). Violations of the federal FMLA will nearly always also be violations of state FMLAs, and situations that do not violate the federal law may well still violate state laws.
12 The 12 months do not need to be twelve months in a row—if an employee worked for a Walmart previously, with less than a seven-year gap in employment, the previous employment can be added to current employment. See 29 U.S.C. § 825.110. The working hour requirement for 1,250 hours, however, must have been in within the last 12 months.

## Tracey* & Brian's* Story

My fiancé Brian and I were excited to begin working at a Walmart in Mississippi in February 2016. I work as a customer service supervisor and Brian worked in stocking and produce.

In late 2016, Brian and I found out we were expecting our first child together. It has been a difficult pregnancy, and I had to go to the ER several times due to severe cramping. Brian drove me to the hospital and helped me stay calm as I waited. He called out of work to help care for me each time I was in the ER. Even though both of us had doctor's notes for every absence, we both received points every time I went to the ER. Walmart would not even look at the notes or excuse any of the absences.

Brian also called out a couple times when I got into a car accident two months into my pregnancy. Again, he stayed home to care for me and got points for those days as well. Then, Brian experienced terrible food poisoning and had to miss work due to his own illness. He was fired shortly after because he got too many points.

I am now close to pointing out as well. A little more than a year after I began working, I had to go back to the ER again because of the cramping and fear that I might lose the baby. Every day, I go to work scared that I'm just one ER visit away from getting fired.

It has now been three months since Brian was fired, and despite his best efforts and his great work ethic, Brian hasn't found a new job yet. I feel so guilty that Brian lost his job because he prioritized caring for me during my pregnancy. Walmart should not force partners to choose between caring for their loved ones when they need it most and keeping their job.

Now, I am eight months pregnant and I'm concerned we won't have enough money to support our new baby. Though I had hoped to take a few weeks to recover after the baby is born, I am now planning to go back to work a week after I give birth. Otherwise, I'm scared we'll be homeless with a newborn. The way that Walmart treated me and Brian for trying to be healthy and supportive during my pregnancy has made what should be the most exciting time in our lives a time of great uncertainty and fear.



## Sherry's Story

I have worked at Walmart in Mountain Home, Arkansas since 2008. In February 2016, I developed sciatica in both my legs. On a few occasions, the pain would be so severe that I needed to stay home from work. I was out four times between February and April and received a point each time I was out.

In April, I went to speak to my manager because I noticed she had begun to significantly cut my hours. I was also afraid that I'd rack up too many points due to my condition and get fired. I informed her that I was able to work but just had to occasionally take a day off due to the pain. She told me that I should take a leave of absence. I cried and told her I needed to pay my bills and did not want to be pushed out onto leave.

Only after I spoke to another co-worker at Walmart did I learn that I could apply for FMLA leave and use it on an intermittent basis so that I could stay on the job but take days off when the sciatica flared up. If it had not been for that chance conversation with my co-worker, I might be out of a job. Even though I am now on FMLA, I also never got those four points back.

least 1,250 hours in the last 12 months for an employer with fifty or more employees—the right to take up to 12 weeks of unpaid, job-protected leave for childbirth and bonding with a new child, dealing with one's own serious health condition or caring for a family member who has a serious health condition.[13] It is important to note that the law does not just cover your own personal illness (like your own diabetes), but also a family member's serious illness (like a mother's hospitalization). A qualified employee may take leave for a set period of time or on an "intermittent" (occasional) basis—for example, to attend weekly chemotherapy treatments on Wednesdays.

Some common serious health conditions that qualify for FMLA leave are:

1) conditions requiring an overnight stay in a hospital or other medical care facility, like having a minor heart attack;

2) conditions that incapacitate the employee or an employee's family member (for example, they are unable to work or attend school) for more than three consecutive days and require ongoing medical treatment (either multiple appointments with a health care provider, or a single appointment and follow-up care such as prescription medication);

3) chronic conditions that cause occasional periods when the employee or the employee's family member is unable to work and requires treatment

13. 29 U.S.C. § 2612(a)(1)(c). The family members covered by the FMLA are a spouse, a child and a parent.

by a health care provider at least twice a year, like Crohn's Disease, asthma, diabetes, or rheumatoid arthritis; and

4) pregnancy (including prenatal appointments, inability to work due to morning sickness, and bed rest). [14]

---

*My wife is a diabetic and on multiple occasions I've had to leave early to rush her to the ER for diabetic ketoacidosis [an acute, life-threatening complication of diabetes]. It has caused me to get written up a full point each time. When I get sick and call in, I've already accumulated too many points not to worry about losing my job.*

**—Josh,\* Alabama**

---

*My son was hospitalized for pneumonia. It was so bad that he stopped breathing in the ER and they needed to put him on oxygen. I got points even after telling management why I was out. They give points no matter what.*

**—Ashana,\* Tennessee**

---

*My daughter was born with a congenital brain defect. It causes a lot of issues for babies. When I have been absent to help with an issue my daughter is having, I get a point. Walmart hasn't let me know about the FMLA.*

**—Christopher,\* Pennsylvania**

---

*My daughter has asthma. When she starts to have trouble breathing and is wheezing really bad, I need to take off because she may need to go to the ER to make her better. I get points when I take off to be with my daughter during asthma attacks.*

**—Diana,\* Louisiana**

## Notice Requirement

It is the employer's responsibility, not the employee's, to determine whether a request for time off from work is likely to be covered by the FMLA. For the law to kick in, employees must notify their employers in advance when they know that they are planning to take leave, though if the leave is required for an emergency or if the need comes up unexpectedly, then employees only have to let the employer know as soon as they are able to (even if that is during or after the leave). [15] For example, if a worker on his way to work received a call from his child's daycare that the child had an asthma attack, then the worker could not be punished for taking the child to the emergency room and later that day informing their employer about the problem.

---

A worker who needs leave for an FMLA-qualifying reason does not need to mention any magic words, like "FMLA," when he or she makes the request, [16] and the request does not have to be in writing. [17] A worker could simply describe her need for time off and the medical reason behind it, such as saying, "I need to go to the doctor for an issue with my pregnancy" or "I need to take my mom to the doctor for her Alzheimer's." If the employer has follow-up questions or wants medical documentation, it is on the employer to try to get that information from the employee. [18]

16 9 C.F.R. § 825.302(c).

17 Employees only need to give "verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c).

18 "In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c).

---

*I have an ill father, who has diabetes and cancer, and sometimes I need to take him to the doctor. When I need to take off to care for him, I'm punished and given a point. My manager didn't mention FMLA or tell me to contact Sedgwick—I was told that doctor appointments are unexcused absences.*

**—Robert,\* Nevada**

So if an employee says to her employer that her son is really sick, and that's why she needs to miss work, it then becomes the employer's responsibility to find out whether the absences should be protected by the FMLA. The employer could ask follow-up questions to find out whether the son spent a night in the hospital or if the illness was connected to an ongoing chronic condition or any of the other ways that medical issues may be covered by the FMLA. Similarly,

14 United States Department of Labor, The Employee's Guide to the Family and Medical Leave Act, p. 4, available at https://www.dol.gov/whd/fmla/employeeguide.pdf (last accessed April 17, 2017).

15 See 29 C.F.R. § 825.303(a).



when an employee tells an employer that she has the flu and may be out for a few days, it is on the employer to figure out whether the flu incapacitated her for more than three days (even if the employee was not supposed to work each of those days). Where an employee tells an employer that an absence is due to a medical condition, the employer is considered to be on notice, and it becomes the employer's responsibility to let the employee know about the FMLA and to follow up to figure out whether the absence is covered by the FMLA. [19]

## Employers Cannot Punish Employees for Using the FMLA

Employers may not punish an employee because of the employee's FMLA-protected absences. The FMLA regulations say that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies."[20] "No fault" attendance policies are the same as absence control policies. It is illegal to use an employee's need for and use of FMLA leave against the employee in any way.[21]

19 See Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1131 (9th Cir. 2001). See also Price v. City of Fort Wayne, 117 F.3d 1022, 1026 (7th Cir. 1997) ("The FMLA does not require that an employee give notice of a desire to invoke the FMLA. Rather, it requires that the employee give notice of need for FMLA leave.").
20 29 C.F.R. § 825.220(c).
21 See, e.g., Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112 (9th Cir. 2001) (holding that employer-defendant violated the FMLA by using plaintiff-employee's FMLA-protected leave as a negative factor in its decision to terminate her).

*My mother was rushed to the emergency room with heart complications and I needed to be there in case anything happened! Walmart told me that's why they give us nine allowed occurrences.*

**—Nina,\* Wisconsin**

## Walmart and the FMLA

Based on information provided to us by numerous workers, we believe that Walmart regularly gives workers points for FMLA-qualifying absences, and that Walmart disciplines and even fires some employees for absences that are protected under the FMLA. We also believe, based on stories we have heard from workers as well as Walmart's practice of not considering doctors' notes, that Walmart is regularly in violation of the FMLA by shirking its responsibility to identify eligible leaves and absences. Walmart's policy and practice of refusing to consider doctors' notes, and telling employees that medical issues are no "excuse" for absences, prevent it from identifying and properly classifying absences that are protected under the FMLA.

*I was feeling really bad one Monday morning before I had to go to work so I decided to go to the hospital. When the doctors came in the room and did tests, they found out that I had a serious bladder infection and strep throat. The doctor took me out of work. I took my excuse to my managers and the store manager, and they said they were not going to accept the excuse!*

**—Danique,\* Virginia**

*As a mother and a person, we get sick every once in a while. It's something we have no control over! We still get punished with a point regardless of whether we have a doctor's note, and they expect us to not work around food and customers sick! My son had pneumonia, his life was on the line, and I still couldn't be excused from work. Just pitiful!*

**—Shala,\* West Virginia**

Walmart's attendance policy mentions that workers can speak with a Human Resources representative about a leave of absence if he or she will be out for more than three days, but this alone is not even close to sufficient to fulfill Walmart's responsibilities under the law of giving notice to its employees about the FMLA. It shifts the responsibility onto the employee to learn about protections and to identify FMLA-covered conditions rather than keeping that responsibility on the employer where it belongs. Absences that are three days

or fewer may also be covered by the FMLA, for example if the absence involved an overnight stay, pregnancy or a chronic condition. While Walmart may be attempting to insulate itself from information that could give it notice of FMLA-covered absences and shift responsibility for FMLA issues onto Sedgwick, its third-party leave manager, the responsibility to identify and respond appropriately to FMLA requests lands squarely in Walmart's lap.

*My husband has cancer and there's times he gets badly sick and I need to be there to help him. For example, one time I had to call in because I was in the hospital with my husband. I contacted management, but nothing happened and I had to take a point for my absence.*

**—Veronica,\* Illinois**





## 22.5%

## 77.5%

● NOTIFIED OF FMLA ● NOT NOTIFIED

**Just 22.5% of employees who were absent and are likely FMLA eligible\* were notified of the FMLA**

*\*Employees indicated they have worked for Walmart for over a year and for at least 25 hour per week.*

---

*My daughter attempted suicide and was in the ICU and the doctors didn't know if she would make it. The assistant manager told me she would remove my hours from the schedule but they never did. I was pointed and coached for missing work when I spent time with her.*

**—Abigail,\* New York**

Any FMLA-eligible requests that do not make it to Sedgwick because a manager does not inform an employee that she should contact them, or because Walmart regularly fails to inform employees of the significance of contacting Sedgwick (that it is a necessary step in receiving FMLA-protected time), or

because the system is in effect impossible to navigate, would still be legal violations. Because of its absence control program, Walmart makes it harder for employees with serious medical conditions, or who have family members with serious medical conditions, to care for themselves or their family without losing their jobs.

---

*Sometimes my son gets sick with colds that require breathing treatments because he has asthma. I get an occurrence every time I have to stay home to get my son breathing treatments. I have tried contacting Sedgwick before about these absences for my son, but I got points for those days anyway so it's probably not even worth it to contact them. Because of the points I got for staying home when he had breathing problems, I couldn't be with him when he broke his arm, because I would have too many and would get fired, and I need my job.*

**—Sarah,\* North Carolina**

## The Americans with Disabilities Act (ADA)

### What is the ADA?[22]

The Americans with Disabilities Act (ADA) of 1990 prevents employers from discriminating against employees with disabilities, which can include conditions like epilepsy, major

.......................
*22 This section focuses on the federal ADA, but many states also have their own state-specific disability protections, which may exceed the protections of the federal ADA.*

## April's Story

I have worked at Walmart in Florida for the past three years. Last year, I had a heart attack at work. I was working at self-checkout and started feeling very sick, sweaty, and having pain in my arm. I kept telling the managers that I didn't feel right, but they just walked by. I asked a coworker for aspirin, for my chest and arm pain. I sat down to see if the pain would calm down. I felt deep chest pain, I felt sweaty, and was fading in and out of consciousness. It was really scary.

A manager finally called an ambulance, but then left me alone to wait for the ambulance. By the time the ambulance got there, I couldn't concentrate and felt much worse. The paramedic recommended taking me to the hospital. I said, "I can't leave without telling a manager." I was worried about being fired. A paramedic went over to the manager to tell the manager that they were taking me to the hospital.

The paramedic took me to the hospital, and I later found out that I got a point for leaving in the ambulance. At the hospital, the doctors strongly recommended I stay the night and the next day for medical monitoring and further testing. I told them that I couldn't do that because I work at Walmart and would be given another point if I didn't make it into work.

I knew it could be dangerous to leave the hospital early, but I felt like I didn't have a choice. I couldn't afford to lose my job. The hospital released me and I went back to work the next day. I am desperate to keep this job to feed and clothe my daughter.

My doctor later yelled at me for not staying overnight for observation and testing.



## Charmaine's\* Story

I've worked at Walmart in Wyoming for the past six years. Walmart has always known about my asthma. I have to carry my nebulizer with me to work every day. When my asthma kicks up sometimes, there is no way I can work. In the past when I needed to be absent because of my asthma, management never listened to the reason for my absence. They just gave me points and that was that.

This past winter I got sick and was not able to even walk 10 feet without losing my breath and having an asthma attack. I work in produce, and the cold and the heavy merchandise I pick up was not helping my breathing. Management still told me to come in. I ended up having an asthma attack at work. I was in the back room when I started having trouble breathing. One of my coworkers asked me if I was okay. I managed to tell him, in between wheezing, what was happening. He went to get somebody. Someone else tracked down my manager. I was told to sit down and take a

Case 1:17-cv-00070-WCG   Filed 10/15/21   Page 14 of 22   Document 261-6

fifteen-minute break. Everyone in the room watched me do my breathing treatment and then walked away.

No one ever asked me if I needed medical attention. I eventually asked to leave because it hurt to breathe. My assistant manger said, "I can't approve this. This is going to be a point." I left anyway because I needed to rest at home while using my nebulizer. I did get a point for that.

No worker should be forced to put their job before their health. I'm sharing my story because I want Walmart's unfair policy of punishing workers because they have a medical condition to change.



## Kayla's Story

I started working as a deli associate at Walmart in Ashtabula, Ohio in November 2016. I have a condition called polycystic ovarian syndrome, which means I develop cysts on my ovaries. About two-and-a-half months ago, one of these cysts burst. I had to go to the hospital immediately. I almost bled out. I ended up having one of

my ovaries removed. I was unconscious for almost two days.

My first day in the hospital, I was supposed to go to work. My fiancée called Walmart on my behalf because he knew about Walmart's policy of firing workers automatically if they no-call/no-show, and he did not want me to lose my job. He spoke to a store manager and explained why I was unable to report to work.

According to my doctor, I should have stayed in the hospital for two weeks longer than I did. But I went back to work after only three days there because I was afraid of losing my job. Even though my fiancée notified Walmart of my medical condition right away, I knew that my absences would not be excused because Walmart does not accept doctor's notes or medical documentation of any kind. I was right. When I returned to work I was given three and a half disciplinary points for my absences, one point for each of the three days I was in the hospital and one-half of a point for the day I returned to work late from the hospital. If I have more absences, I could be fired.

Walmart's disciplinary points system puts workers in a very difficult situation when something like this happens. I was so afraid that I would be fired because of something I had no control over. Workers should not be punished just because they or a family member are sick.



## Katie's Story

I started working at Walmart in Pennsylvania in September 2015. About a year later, I had a miscarriage. The day it happened, I didn't go in to work because I was emotionally and physically a wreck. I had to go to the ER. I was told that I wasn't eligible for medical leave since I had not yet been employed at Walmart for a full year and that my absences would be counted against me. I returned to work as soon as I could, even though I was still in so much pain. My first day back, I wanted to leave work early because I was bleeding, but I would have gotten at least half a point if I did, so I stuck it out.

Because of the serious and prolonged pain I was in after my miscarriage and the continued heavy bleeding I was experiencing, I went back to the doctor. The doctor told me that I had to rest for an additional week, and gave me a note stating that I needed about a week of additional recovery time. My manager wouldn't accept it. I explained the situation,

but my manager told me if I were to call out of work for a week those days would all be counted against me. Because of my medical condition, I had no choice but to call out anyway. While I was still recovering, I received a message that I could be fired if I called out again. So I was forced to go back to work. I ended up receiving around six disciplinary points due to my miscarriage.

Later in the year, I got the flu. I was throwing up and couldn't get out of bed. I'm a responsible person and didn't want to risk getting others sick. That's wrong, and I won't do it. At that point I had worked at Walmart for more than a year. But based on what Walmart had previously told me about taking medical leave, I understood that workers could contact Sedgwick only to be approved for long-term medical leaves of absence, and that they needed to tell Sedgwick how long they would be out in order to be approved. At the time, I didn't know for sure how long I needed, and I didn't want to be out of work without pay longer than necessary. No one at Walmart suggested I might be eligible for FMLA or how it works. So I stayed home and got points.

I didn't ask to have a miscarriage. I didn't ask to get the flu. It just happens. You need time to recover, and you shouldn't be forced to go in to work and be in pain or get other people sick. Punishing workers just because they're sick or a family member is sick is wrong.

Case 1:17-cv-00070-WCG   Filed 10/15/21   Page 15 of 22   Document 261-6

depressive disorder, cancer, wheelchair use, hypertension or cerebral palsy, just to name a few, depending on how the condition affects the employee. It also requires employers to make what are called "reasonable accommodations" for employees with known disabilities, so long as the accommodations can be made without undue hardship to the employer.[23] For example, an employer may need to make a workplace accessible for someone using a wheelchair or acquire equipment for a blind employee. The ADA covers a wide range of physical and mental medical conditions that substantially limit one or more of a person's major life activities (like the ability to read, lift, walk, breathe, stand, etc.).

*I get migraines. They never understand. I throw up, can't see out of both eyes, and get dizzy but they don't care. It's never excused even when they send me home.*

**—Casandra,** ✲ **Texas**

*I am a type 1 diabetic. I am forced to work no matter the situation. Even when my blood sugar is 600+ and my heart is pounding out of my chest about to explode.*

**—Anne**✲**, Kentucky**

In 2008, the Americans with Disabilities Act Amendments Act (ADAAA) expanded the ADA's definition of disability to include less severe impairments as well as temporary

impairments.[24] For example, the ADAAA clarified that impairments related to short-term conditions such as pregnancy can be covered disabilities under the ADA.[25]

*"I had hyperemesis [severe nausea and vomiting] when I was pregnant and I was punished for missing work when I had a note from the doctor saying I needed to miss work. And I also went into pre-term labor and was in trouble for that. I got pointed multiple times."*

**—Tiana,** ✲ **Kentucky**

Congress made clear in the ADAAA that the purpose of the law was "to carry out the ADA's objectives of providing 'a clear and comprehensive national mandate for the elimination of discrimination' and 'clear, strong, consistent, enforceable standards addressing discrimination' by reinstating a broad scope of protection to be available under the ADA."[26]

The ADA also prevents employers from having a job requirement or standard that screens out people with disabilities unless the standard is both job-related and necessary.[27]

## Accommodation Requests and the Interactive Process

The ADA does not require employees to request a reasonable accommodation in a

formal way or by using any particular words. Rather, an employee asking in plain English for some adjustment or change related to a medical condition counts as a request for a reasonable accommodation.[28] A request alone is not enough to get a reasonable accommodation, but it is all that is necessary to start an "interactive process" with the employer. An employee who lets an employer know that a difficulty at work is related to a medical condition (or where the connection to a medical condition is known to an employer) has also made a request for a reasonable accommodation.[29] In the interactive process, the employer works with the employee to figure out whether the employee is covered by the ADA and whether the accommodation requested, or another accommodation that would meet the needs of the employee, can be implemented without being an undue hardship on the employer. That process may involve requesting more information or documentation, and it may involve conversations with the employee to explore accommodation options.

## Attendance and Reasonable Accommodations

A reasonable accommodation under the ADA may include modifications to workplace policies.[30] This includes modifications to attendance and punctuality policies if such modification is not an undue hardship. The Equal Employment Opportunity Commission

(EEOC), the federal agency that enforces the ADA, has issued clear guidance to employers about modifying or adjusting attendance policies in order to reasonably accommodate employees with disabilities. In a question-and-answer document, the EEOC makes this position clear, writing:

> **Q:** "Does the ADA require employers to modify attendance policies as a reasonable accommodation, absent undue hardship?
>
> **A:** Yes. If requested, employers may have to modify attendance policies as a reasonable accommodation, absent undue hardship."[31]

Similarly, the EEOC has also made clear that unpaid leave may be a reasonable accommodation.[32] This is the case even if an employee has exhausted her previously earned leave time.[33] Where the EEOC provides examples of the types of situations that would be undue hardships on employers, it is clear that undue hardship is a very high burden.[34]

23 42 U.S.C. § 12112(b)(5)(a)

24 42 U.S.C. § 12102(4)

25 See 9 C.F.R. §1630.2(j)(1)(ix), see also EEOC, Enforcement Guidance: Pregnancy Discrimination and Related Issues, "Americans with Disabilities Act," https://www.eeoc.gov/laws/guidance/pregnancy_guidance.cfm#_ftnref140 (last accessed May 17, 2017).

26 42 U.S.C. § 12101(b)(1).

27 42 U.S.C. § 2112(b)(6).

28 EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, https://www.eeoc.gov/policy/docs/accommodation.html#requesting%20. (last accessed May 24, 2017).

29 Id.

30 42 U.S.C. § 12111(9)(B).

31 EEOC, The Americans with Disabilities Act: Applying Performance and Conduct Standards to Employees with Disabilities, https://www.eeoc.gov/facts/performance-conduct.html (last accessed May 17, 2017).

32 EEOC, Employer-Provided Leave and the Americans with Disabilities Act, https://www.eeoc.gov/eeoc/publications/ada-leave.cfm (last accessed May 17, 2017).

33 Id.

34 See EEOC, The Americans with Disabilities Act: Applying Performance and Conduct Standards to Employees with Disabilities, https://www.eeoc.gov/facts/performance-conduct.html (last accessed May 17, 2017) for examples illustrating the type of high burden that might support a showing of undue hardship.

Case 1:17-cv-00070-WCG   Filed 10/15/21   Page 16 of 22   Document 261-6

## Walmart and the ADA

Thousands of Walmart workers around the country have had situations where they have had medical conditions requiring some time away from work. When they approach managers and ask that an absence be considered authorized, that is a request for a reasonable accommodation under the ADA. We have heard story after story of managers following Walmart's practice of refusing to consider doctors' notes and refusing to consider information about the reason for an absence.

*My blood pressure peaked out at 194/99 and I nearly passed out. After close monitoring by pharmacy staff it finally came down enough for me to call someone to come pick me up and take me home. I was given a half a point for leaving early. I was told nothing could be done. It was policy.*

**—Hannah,\* Arkansas**

When Walmart refuses to receive information from its employees about the reason they were out and the reason they are requesting a modification of the attendance policy, Walmart violates the ADA by shutting down the interactive process before it even begins. Not only does this refusal violate federal law, but it violates the company's own procedure laid out in Walmart's Accommodation in Employment Policy, which claims that after an accommodation request, Walmart will "begin working with you."

*I was off work for severe, debilitating migraines where I could not move or function. Over six months, I had seven absences because of those severe migraines, and two more for helping my sister in the hospital and my mother after a car accident. Walmart fired me for having too many absences. Walmart did let me use my earned PTO, but then they fired me for using it. I was never given an accommodation packet, and was told that I couldn't contact Sedgwick since the absences were sporadic, not one long period of time for a leave of absence. They would never accept doctors' notes even though I offered to bring them in.*

**—Lina,\* Minnesota**

*"I have very bad asthma and allergies. I have had to miss work, or leave early to go straight to the Emergency Room for treatment. Walmart management counted these against me. They had no compassion and were rude about it. Management would not take my doctors' notes. This is unfair and in my opinion illegal. Walmart will end up being sued eventually."*

**—Kevin,\* Virginia**

Walmart's next steps are supposed to be determining whether the employee is an employee with a disability, and then determining whether the requested accommodation or another accommodation would let the employee continue to work

without being an undue hardship. Instead, Walmart avoids getting this information from its employees. When it does that, Walmart is exercising bad faith and failing to live up to its responsibilities under the ADA, pushing people with disabilities who need reasonable accommodations out of their jobs.

For Walmart to adjust its policy as a reasonable accommodation, it could simply not count an absence for disciplinary purposes or could agree to change an employee's schedule in a way that makes it so that she can be out that day without being absent from work. Employers cannot claim something is an undue hardship just because it causes some expense or inconvenience; rather, undue hardship means "an action requiring significant difficulty or expense,"[35] taking into account fact-specific analysis including the size of the business, number of employees and the financial resources of the employer, among other factors.[36]

*I have kidney problems due to diabetes. When I had to miss some work because of my kidney problems, my manager told me that I would get points and that they couldn't accept doctors' notes. They never told me to contact Sedgwick or gave me any kind of accommodation packet.*

**—Daniel,\* Tennessee**

People with disabilities are too often pushed out of their jobs at Walmart just for needing flexibility beyond the limits of the strict absence control program. It would be very

35 42 U.S.C. § 12111(10)(A)
36 42 U.S.C. § 12111(10)(B)

difficult for Walmart to show that making a modification to the absence control program, such as by increasing the number of points an employee can get before being disciplined or terminated (just four for a new employee), or letting a worker with a disability arrive fifteen minutes late on occasion, would be an undue hardship. The way Walmart's absence control program is designed and implemented makes workers requiring reasonable accommodations more likely than other workers to be pushed out of their jobs.

## *Pregnant Worker Fairness Acts (PWFAs)*

### What are Pregnant Worker Fairness Acts (PWFAs)?

Pregnant Worker Fairness Acts (PWFAs) are an umbrella term for laws, generally modeled on the ADA, that guarantee at least some reasonable accommodations to certain employees who need them due to pregnancy, childbirth and related conditions so long as the accommodation is not an undue hardship on the employer. In addition, these laws typically require an employer to engage in an interactive process with pregnant employees who need a reasonable accommodation. Although the language varies from state to state (as does the title), generally speaking these laws close a loophole in protections for pregnant workers with health needs that arise from pregnancy but may not qualify as a disability under the ADA. These laws typically pass with broad bipartisan support.

## PWFAs and Leave or Attendance Modification as a Reasonable Accommodation

Under many PWFAs, workers who are pregnant, recovering from childbirth or breastfeeding have the right to reasonable accommodations that may include additional breaks, modification of work hours and unpaid time off from work. For example, the Washington, D.C., Protecting Pregnant Workers Fairness Act identifies certain reasonable accommodations covered by the statute that include policy modifications and accommodations related to attendance.[37] The law states that reasonable accommodations include, but are not limited to, modifying a work schedule or unpaid time off from work to recover from childbirth. These examples make it clear that modifying schedules or attendance requirements may be a reasonable accommodation under the statute.

PWFAs may provide job protection for some absences during a woman's pregnancy or following childbirth where other laws fall short. For example, while only some pregnant workers are eligible for intermittent FMLA due to restricted eligibility in the federal statute, workers who are covered by a state or local PWFA may receive a reasonable accommodation of an adjusted attendance policy that would allow them to take time to attend an appointment or manage pregnancy-related conditions, like nausea or back pain, without being penalized.

## Walmart and PWFAs

Walmart's practice of refusing to look at doctors' notes or to consider reasons for an employee's absence can be particularly harmful to pregnant workers who need medical treatment or an accommodation. Giving a pregnant worker a point for missing work due to morning sickness could be a violation of a state or city PFWA. Because of Walmart's practices related to its absence control program, we allege that pregnant workers are regularly pushed out of work if they need a reasonable accommodation in order to attend medical appointments or manage temporary conditions related to a pregnancy. For example, A Better Balance recently spoke with a Walmart worker named Ciana* who worked at a store in Colorado. Ciana worked in the deli department, and was a model employee. When she was pregnant, she started having some bad nausea. Her doctor gave her medication that usually helped her and made it so she could work, but sometimes being around food would make her so nauseous that she would have to leave work. She got points for each of those days that she left early, and was fired for getting too many points. Colorado's PWFA says that employers must provide reasonable accommodations to employees with health conditions related to their pregnancies.[38] Reasonable accommodations that Walmart could have taken would include working with her to modify her schedule or to raise the limit for points at which she would be fired. Even if her nausea would not be considered a disability (though severe pregnancy-related nausea can rise to the level of a disability depending on how it affects a pregnant woman), Walmart was required by Colorado's PWFA to reasonably accommodate Ciana unless it would be an undue hardship.

37 See https://ohr.dc.gov/sites/default/files/dc/sites/ohr/publication/attachments/PregnantWorkers_WorkplacePoster_052615_FINAL.pdf (last accessed May 17, 2017) for a summary of the law, and http://www.dcregs.dc.gov/Gateway/NoticeHome.aspx?noticeid=5173512 (last accessed May 17, 2017) for the full text of the law.

38 Colorado Code, Ann. § 24-34-402.3

## Who is Covered by a PWFA?

### Twenty states and five cities have some version of a PWFA.

**States:**
Alaska
California
Colorado
Connecticut
Delaware
Hawaii

Illinois
Louisiana
Maryland
Minnesota
Nebraska
New Jersey
New York

North Dakota
Rhode Island
Texas
Utah
Vermont
Washington
West Virginia

**Localities:**
New York City, N.Y.
Washington, D.C.
Philadelphia, P.A.
Central Falls, R.I.
Providence, R.I.

*Go to our website to see details by state: abetterbalance.org/know-your-rights/*

## Sick Time Laws

Sick time laws are becoming increasingly common across the United States. These popular laws are passing in states and localities across the nation, often with very high levels of support. Sick time laws give workers the right to earn paid time off that can be used when they or their family members are sick, need preventive care or, in many places, need time to attend to safety needs in the case of domestic violence. These laws prevent employers from holding it against workers when they take time off for these purposes. Sick time laws are on the books in seven states (Connecticut, California, Massachusetts, Oregon, Vermont, Arizona and Washington State), 29 cities (including three of our largest: New York, Chicago and Los Angeles)[39] and two counties.[40] To date, more than 14 million workers have gained paid sick time through these laws.[41] Many other states and localities are considering paid sick time legislation so it is expected that there will be more and more of these laws in the coming months and years.

Ensuring that workers have access to paid and job-protected sick time is not only a moral issue—no parent should have to choose between leaving a seriously ill child alone in the hospital and losing a job—but also a personal and public health issue. Workers who interact with customers and

39 This includes 13 cities in New Jersey (Newark, Passaic, East Orange, Paterson, Irvington, Trenton, Montclair, Bloomfield, Jersey City, Elizabeth, Plainfield, Morristown, New Brunswick), 7 cities in California (San Francisco, Oakland, Emeryville, Santa Monica, San Diego, Los Angeles, Berkeley), 9 other cities across the country) Chicago, IL; Seattle, WA; New York, NY; Tacoma, WA; Spokane, WA; Philadelphia, PA; Pittsburgh, PA; Minneapolis, MN; St. Paul, MN).

40 Montgomery County, MD and Cook County, IL.

41 See http://familyvaluesatwork.org/media-center/paid-sick-days-wins (last accessed May 17, 2017).

prepare food, for example, should not be forced to come to work when they are contagious and likely to spread illnesses to co-workers and customers alike.

> *My son gets sick a lot, and then I get sick too. I got points for pink eye, the flu, and when I had to stay home with my son from daycare because he had a fever. When my son and I had strep throat, I called my manager to let him know. He told me I had to come in—even though I was contagious and could infect my co-workers and customers—or be pointed.*
>
> **—Robin,\* West Virginia**[42]

> *I worked in the Deli. I know you should not have any type of illnesses and be working in the Fresh area (Deli, Bakery, Produce, and Meat Departments). The sad thing is that we still do — that is, if you want to keep your job. Especially in the Deli Department. We Deli associates would still work our schedule even though we are sick with nausea, runny noses, coughing, fevers, having strep throat, bronchitis, runny diarrhea, etc.*
>
> **—Melissa,\* Nebraska**

All sick time laws allow workers to earn paid sick time based on hours worked, but laws vary as to the exact rate.[43] It is most common

for laws to give workers the right to earn one hour of sick time for every 30 hours worked, though some laws have workers earn paid sick time at a different rate. Most laws limit the total number of hours that are protected by the law per year, but employers are certainly permitted to let employees earn and use more than the total covered by the law and at a faster rate than the law provides. Although many of these laws allow small employers to provide less sick time or to provide some of the time unpaid, for large employers like Walmart, most jurisdictions guarantee workers the right to earn and use up to at least 40 hours (five eight-hour days) of paid sick time per year.[44]

> **For more detailed information about each of the sick time laws, and to compare sick time policies around the country, see http://www.abetterbalance.org/resources/paid-sick-time-legislative-successes/**

All sick time laws give workers the right to use their time to recover from their own illness, or to care for an ill or injured relative. Sick time can be used for the worker's child or spouse under all laws and can be used for a worker's

parent everywhere except for Connecticut. In most places, workers can also use sick time for a grandparent, grandchild, sibling, parent-in-law or domestic partner.[45] Many laws recognize the growing diversity of American families and allow sick time to be used to care for families of choice.[46]

Finally, all sick time laws protect workers against retaliation for the use of covered sick time under the law. Most importantly, this means that workers cannot be fired because of their use of protected sick time, but it also means they cannot be demoted or have their hours reduced. These protections also generally prohibit the use of sick time under the law from being counted against workers under a discipline policy, such as by giving a worker a disciplinary point for the use of legally-protected sick time.

## Walmart and Sick Time Laws

Where these laws apply, they provide yet another reason that Walmart must provide some additional flexibility in its attendance policy. The states and localities where these laws are in effect, and where Walmart claims that it is fully complying with the law, are a case study in the fact that Walmart can run its business smoothly and successfully while providing some job-protected sick time.

However, many of Walmart's existing attendance policies in locations with sick time laws in effect raise serious concerns

regarding compliance. For example, Walmart's Attendance/Punctuality Policy for the District of Columbia suggests that using paid sick time protected under the Washington, D.C., law might be considered an unexcused absence if not approved by the employee's manager or supervisor. Because employees receive points for unauthorized absences, which can subject them to disciplinary measures including termination, if true, this would run afoul of the law. Even if Walmart has a sick time law policy "overriding" the attendance policy, the fact that these requirements are in the attendance policy and may contradict the requirements of the sick time policy could confuse and mislead workers.

Similarly, Walmart attendance policies from both D.C. and California purport to require employees to call in to report an absence at least one hour prior to the start of their shift, which as we understand is the policy nationwide. Many sick time laws, including those in both D.C. and California, set specific requirements regarding when and how employees can be required to give notice of an unforeseeable or emergency use of sick time, generally dependent on the particular situation. An across-the-board requirement that employees provide notice one hour prior to the start of their shifts would likely be in conflict with the applicable legal requirements. Again, even if Walmart does not enforce the attendance policy this way, the fact that this requirement is in the attendance policy could unlawfully confuse and mislead workers.

---

42 These two stories are not from places with sick time laws, but are included to show the public health dynamic underlying these laws and to illustrate the public health concerns involved in requiring employees to come to work sick.

43 A rate of one sick time hour per forty worked hours is used in Connecticut; Washington State; Cook County and Chicago, IL;

Tacoma, WA; and Philadelphia, PA. Different rates are used in the laws in Pittsburgh (1 hour of sick time for every 35 hours worked) and Vermont (1 hour of sick time for every 52 hours worked). In Washington, DC; Seattle, WA; and New Brunswick, NJ, the rate at which workers earn sick time varies based on the number of people employed by the worker's employer.

44 Workers may be eligible to earn and use more than 40 hours per year in Washington, DC; Montgomery County, MD; Seattle, WA; Minneapolis and St. Paul, MN; and 5 cities in California. Vermont and Tacoma only give workers the right to earn and use up to 24 hours (3 eight-hour days) of sick time per year. Under California's state law, workers have the right to earn up to 48 hours (6 eight-hour days) of sick time per year, but only have the right to use up to 24 hours of paid sick time per year.

45 Many laws only cover a registered domestic partner.

46 This is true of most of the laws passed in California cities. In addition, laws passed in the past year in Minneapolis, Saint Paul, Chicago, Cook County and Los Angeles recognize chosen family by allowing leave to be used to care for someone who has the equivalent of a family relationship or, in Minneapolis, who lives in the employee's household.

Walmart's complicated system of overlapping and sometimes conflicting policies, to which workers have at best limited access, makes it difficult to determine what policy is actually being followed in any particular location. This creates confusion for workers that can make it difficult for them to understand and use their rights, and it raises the possibility that there may be other violations of sick time laws in Walmart's implementation of which workers and advocates are not aware.

# Recommendations

***Walmart cannot get away with failing to comply with federal, state and local laws. Walmart must change its policies and practices to ensure that no Walmart worker who is protected by law against being punished for certain absences gets a point or a coaching for that absence.***

Walmart must ensure that its policies and practices governing attendance, and the fact that some absences are protected by law, are clear and transparent. Workers must be able to understand the absence control program and where they stand. Managers and hourly employees alike must have the information they need to identify when absences should not be counted against workers under the policy and under the law.

Walmart's policy must go beyond merely saying that absences protected by law may be authorized. Workers may not know what that means, and it is Walmart's obligation to make sure these laws are followed. The policy should state that absences related to a disability or serious medical condition may be authorized, with appropriate language for additional state and local legal protections, and should lay out a clear and accessible procedure for workers to request that absences be authorized. The policy should explicitly state that medical providers' notes will be considered in determining whether an absence will be authorized. Before employees are disciplined or terminated, the policy should also provide a

clear review procedure that includes worker input. Through this review procedure, Walmart should evaluate whether any of an employee's attendance-related points should have properly been deemed authorized under the law and under the policy before punishing any worker for absences. Finally, Walmart must fully train its managers and human resources personnel on how to treat absences appropriately.

While this report is focused on legal violations related to Walmart's absence control program, complying with the law alone is not enough to support Walmart workers. Members of the worker-led OUR Walmart have launched a campaign calling on Walmart to fix their broken sick day policy and address other issues that make it difficult for those who work at America's largest corporate employer to make ends meet. In a letter sent to Walmart's CEO signed by OUR Walmart members and dozens of organizations, including A Better Balance, OUR Walmart members wrote: "Economic stability is not just about wages - it's about whether we can take care of our families, plan our lives and have lives outside of our jobs. With unpredictable schedules, increasing use of part-time and temporary staff and inadequate leave policies, corporations in the United States have created a crisis of economic stability for all, but particularly women, who represent the majority of all low-wage employees and the majority of Walmart's workforce." Walmart should change its policy so that no worker is fired merely for getting sick or caring for an ill family member, even if the absence is not technically protected by law. Walmart needs to publicly commit to changing

Case 1:17-cv-00070-WCG   Filed 10/15/21   Page 20 of 22   Document 261-6

their sick time policy to ensure that associates can earn and use paid sick time without incurring penalties.

Walmart should also improve its scheduling process so that employees can get more predictable and stable schedules. Workers should be able to work while still having scheduling requests accommodated and without having to have "open availability." We urge Walmart to expand eligibility for and benefits of its Short Term Disability plan, to give the employees who need it most financial support during periods of disability and family leave. All workers at Walmart should feel that they are able to work in a safe environment where disability-related reasonable accommodations, including those for pregnancy, are made and respected. Implementing these changes would help support employees and their families. Walmart must listen to the stories of its workers.





*A Better Balance is a legal advocacy organization dedicated to promoting fairness in the workplace and helping workers care for their families without risking their economic security.*

40 Worth Street 10ᵗʰ Floor New York, NY 10013 | t: 212.430.5982 | info@abetterbalance.org

abetterbalance.org