UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

   Plaintiff,

  v.                    Case No. 17-C-70

WAL-MART STORES EAST LP,

   Defendant.

---

## DECISION AND ORDER

---

  Plaintiff Equal Employment Opportunity Commission (EEOC) brought this action against Defendant Walmart Stores East LP on behalf of a former employee with Down Syndrome, Marlo Spaeth, alleging discrimination under Title I of the Americans with Disabilities Act of 1990 (ADA) and Title I of the Civil Rights Act of 1991. The EEOC alleged, among other things, that Walmart failed to accommodate Spaeth's disability. In particular, the EEOC asserted that Walmart violated the ADA by refusing to provide Spaeth with a permanent, modified fixed schedule of 12:00 p.m. to 4:00 p.m. after Walmart adopted a new customer-demand centric, automatic scheduling system that scheduled Spaeth to work from 1:00 p.m. to 5:30 p.m.

  After a four-day jury trial, the jury returned a verdict in favor of the EEOC, awarding $150,000 in compensatory damages and $125,000,000 in punitive damages. After the verdict was returned, the Court granted Walmart's oral motion to reduce the award of compensatory and punitive damages to the statutory maximum of $300,000. *See* 42 U.S.C. § 1981(a). The Court advised that it was withholding the entry of judgment until it determined the issues of equitable relief.

This matter comes before the Court on the EEOC's motion for equitable relief. In its motion, the EEOC seeks a permanent injunction as well as monetary relief to make Spaeth whole, including back pay, prejudgment interest, and a tax-component award. For the following reasons, the EEOC's motion will be partially granted.

ANALYSIS

A. Injunctive Relief

The EEOC requests that the Court grant the following injunctive measures for a period of five years:

**Equitable Relief Generally Applicable to Walmart**

1. Enjoin Walmart from denying reasonable accommodations to Walmart employees with disabilities within the United States in the absence of undue hardship on the ground that the accommodations and/or the need for accommodations are indefinite, long-term, or permanent.

2. Require Walmart to modify its accommodation policies to clarify that indefinite, long-term, or permanent disability accommodations are available to Walmart employees in the absence of undue hardship.

**Equitable Relief Applicable Within Walmart's Region 53**

3. Enjoin Walmart from failing to accommodate reasonable accommodations to employees with disabilities in violation of the ADA.

4. Require Walmart to provide notice to all of its employees informing them of the verdict and injunction in this suit and to specifically inform employees of their right to contact the EEOC without fear of retaliation.

5. Require Walmart to notify the EEOC within ninety days of any request for accommodation of an employee's disability, and provide the EEOC with a description of the request, the name, title, phone number, and address of the requestor, the steps taken by Walmart to accommodate the request, and the result of the request.

6. Require Walmart to provide training to its managers and supervisors regarding the obligation to grant schedule accommodations under the ADA in the absence of undue hardship and to remind them that a request for a schedule accommodation from a person with a disability cannot be denied at the store level.

7. Require Walmart to document and evaluate adherence to Walmart's Equal Employment Opportunity policies during the annual review process for its supervisors, managers, market people operation leads, and regional people directors.

8. Enjoin Walmart from engaging in any retaliation against any Walmart employees with disabilities who request schedule modifications as an accommodation of disability.

**Non-Monetary Equitable Relief Applicable to Marlo Spaeth**

9. Order Walmart to reinstate Marlo Spaeth as a Walmart employee, with a rate of pay of at least $16.77 per hour. Only if the Court finds that reinstatement is unavailable as a remedy, the EEOC asks for ten years of front pay to Marlo Spaeth in lieu of reinstatement.

10. Enjoin Walmart from engaging in any discrimination or retaliation against Marlo Spaeth due to her disability, or on the basis of her involvement in this lawsuit, or because of her enjoyment of any equitable or other remedies granted in this lawsuit.

11. Require Walmart to contact Marlo Spaeth's guardian regarding any discipline or coaching of Marlo Spaeth and any issues involving accommodations for Marlo Spaeth's disability.

Dkt. No. 251 at 1–3. The EEOC asserts that this injunctive relief is appropriate to ensure that Walmart employees will not be denied reasonable accommodations in violation of the ADA in the future.

"District courts have wide discretion 'to fashion a complete remedy, which may include injunctive relief, in order to make whole victims of employment discrimination.'" *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013) (quoting *EEOC v. Gurnee Inn Corp.*, 941 F.2d 815, 817 (7th Cir. 1990)). Once a court finds that an employer has "intentionally engaged in . . . an unlawful employment practice," the court "may enjoin [the employer] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include . . . equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1); 42 U.S.C. § 12117(a) (ADA enforcement provision that incorporates § 2000e-5). The conclusion that

a defendant "was intentionally engaging in an unlawful employment practice does not necessarily warrant the awarding of injunctive relief," however. *Williams v. Gen. Foods Corp.*, 492 F.2d 399, 407 (7th Cir. 1974). In determining whether an injunction should be granted, the court must consider "whether the employer's discriminatory conduct could possibly persist in the future." *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 864 (7th Cir. 2001) (citation omitted). "Because the determinative judgment is about the employer's potential future actions, the EEOC need not prove that the employer previously engaged in widespread discrimination, and 'injunctive relief is appropriate even where the EEOC has produced no evidence of discrimination going beyond the particular claimant's case.'" *AutoZone*, 707 F.3d at 840 (alterations omitted) (quoting *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997)). The employer has the burden of proving that the discrimination is unlikely to continue or that the claimant's case is "somehow different from the norm." *Id.* at 840–41 (internal quotation marks and citation omitted).

Walmart asserts that the EEOC's requests are overly burdensome, unnecessary, overbroad, and vague. The EEOC's first categories of requests for relief are applicable to Walmart generally and Region 53, where the Manitowoc store at issue is located. After careful consideration of the facts underlying this case, the Court concludes that these broad requests for relief are inappropriate. The injunctive relief the EEOC requests are, for the most part, directives that Walmart obey the law. "An injunction that does no more than order a defeated litigant to obey the law raises several concerns," including overbreadth and vagueness. *Id.* at 841 ("An obey-the-law injunction departs from the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation."). The EEOC asserts that its requests addressed to the company as a whole are warranted because Walmart's actions are not unique to the Manitowoc store. But this unique incident involving one store does not warrant the far-reaching injunction the EEOC seeks. The EEOC's requests require continuing

4

court supervision and monitoring of Walmart's nationwide compliance with the ADA's reasonable accommodation provisions with respect to its nearly 1.6 million associates employed in the United States. *See About*, WALMART, https://corporate.walmart.com/about (last visited Feb. 22, 2022). Even limiting the injunctive relief to Region 53 would require monitoring 114 stores and 30,000 associates. This type of obey-the-law injunction burdens the Court, Walmart, and the EEOC with the costs and resources associated with the requested relief and is "enforceable via contempt motion, bypassing the normal administrative and adjudicative processes for ADA accommodation claims." *See AutoZone*, 707 F.3d at 841. Such expansive and wide-reaching relief against Walmart generally and Region 53 is not warranted here.

In addition, the relief requested is redundant to Walmart's existing policies. More specifically, Walmart has an "Accommodation in Employment" policy, an Accommodations Service Center that reviews and grants reasonable accommodations, a "Discrimination & Harassment Prevention Policy," and an "Open Door Communications Policy." Walmart maintains that it communicates its policies to all associates at orientation; provides training on the policies, including the schedule change accommodation policy; and makes its policies available by posting them in breakrooms and on the intranet. Walmart also provides annual ADA training to management. *See* Exhibit 1064 (ADA Manager Training Course). The EEOC argues that Walmart's policies failed to prevent discrimination here and that the managers involved with the discrimination are still employed by Walmart. But the continued employment of the supervisors involved is not, by itself, a sufficient reason to grant the injunction. Walmart's policies and procedures inform its employees of their rights under the ADA, and the EEOC has not shown that "the proven illegal conduct may be resumed." *AutoZone*, 707 F.3d at 842; *see also EEOC v. Wal-Mart Stores, Inc.*, No. 17-cv-739, 2020 WL 1527324 (W.D. Wis. Mar. 31, 2020). There is no evidence to suggest that Walmart is a corporation that "flouts its obligations or is unconcerned

5

about complying with laws prohibiting discrimination." *EEOC v. CEC Entm't, Inc.*, No. 98-C-698, 2000 WL 1339288, at *27 (W.D. Wis. Mar. 14, 2000). The substantial verdict against Walmart and the publicity it generated serve as strong deterrents against any repeat of the conduct at issue in this case and create a strong incentive for Walmart to ensure that requests for reasonable accommodations are adequately addressed without court oversight of Walmart's administration and enforcement of its policies and procedures. *See* EEOC Press Release, *Jury Awards of $125 Million in EEOC Disability Discrimination Case Against Walmart*, EEOC (July 16, 2021), https://www.eeoc.gov/newsroom/jury-awards-over-125-million-eeoc-disability-discrimination-case-against-walmart; *see also EEOC v. Costco Wholesale Corp.*, No. 14-C-6553, 2017 WL 4570840, at *9 (N.D. Ill. May 15, 2017).

This is not a case where Walmart employees exhibited animus or ill will against Spaeth individually or individuals with cognitive disabilities more generally. The record reflects that, for over 15 years, Walmart's management staff and associates took steps to help Spaeth succeed as an associate. For instance, management staff reminded Spaeth of her schedule. Trial Tr. Day 1 at 140, Dkt. No. 245; Trial Tr. Day 3 at 7–9, Dkt. No. 247. Personnel Coordinator Karen Becker would personally handwrite Spaeth's schedule every week and had Spaeth read the schedule back to her, to ensure Spaeth knew the hours and days she was supposed to work. Trial Tr. Day 1 at 175. Management also encouraged Spaeth to finish her scheduled shifts. *Id.* at 171; Trial Tr. Day 2 at 246, Dkt. No. 246; Trial Tr. Day 3 at 66, 113–14. During her tenure other associates helped Spaeth by teaching her new job skills and devoting extra time to Spaeth's training. Trial Tr. Day 2 at 73–74. No one wanted to see Spaeth lose her job. After Spaeth was terminated, Training Coordinator Debbie Moss cried as she walked Spaeth to the front of the store and gave Spaeth a hug as she left. Trial Tr. Day 3 at 116–17. Spaeth testified that she liked her job at Walmart, that she wants her job back, and that she misses the job and the people at Walmart. Trial Tr. Day 2 at

6

121–22. While the jury found that Walmart violated the ADA, the conduct of Walmart's management staff does not suggest a need for such broad injunctive relief. Walmart already provides training that is intended to encourage management and associates recognize that a request for a reasonable accommodation may be made even though the phrase "reasonable accommodation is not used. Exhibit 1064 at D1567–68. On this record, the Court concludes that the relief the EEOC seeks regarding Walmart generally and its Region 53 is unnecessary to make Spaeth whole or ensure that Walmart does not commit future violations of the ADA.

The EEOC also requests non-monetary equitable relief applicable to Spaeth. First, the EEOC seeks reinstatement of Spaeth as a Walmart employee. If an employer is found to have intentionally engaged in an unlawful employment practice, the court may order "such affirmative action as may be appropriate," including reinstatement. 42 U.S.C. § 2000e-5(g)(1). In cases where reinstatement is unavailable, the court may award front pay as an alternative remedy. *See Williams v. Pharmacia, Inc.*, 137 F.3d 944, 951–52 (7th Cir. 1998). While reinstatement is generally the preferred remedy over front pay, *Morris v. BNSF Railway Co.*, 969 F.3d 753, 768 (7th Cir. 2020), "[t]he court has discretion to grant or deny reinstatement and it may consider a number of factors in exercising that discretion, including hostility in the employment relationship and the lack of an available position to which to reinstate the plaintiff." *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1141 (7th Cir. 1994) (citation omitted).

Walmart does not argue that reinstatement would not be reasonable. Instead, it asserts that reinstatement is not appropriate because it had lawful grounds to discharge Spaeth. Walmart maintains that, even with her preferred schedule of 12:00 p.m. to 4:00 p.m., Spaeth had an unsatisfactory attendance record, which provided sufficient grounds for Walmart to discharge her. But Walmart's position is inconsistent with the jury's findings. The Court concludes that

7

reinstatement is an appropriate remedy in this case. Therefore, Walmart is ordered to reinstate Spaeth as a Walmart associate, at a rate of pay, as explained below, of $14.90 per hour.

Next, the EEOC asks that the Court enjoin Walmart from engaging in any discrimination or retaliation against Spaeth due to her disability, on the basis of her involvement in this lawsuit, or because of her enjoyment of any equitable or other remedies granted in this lawsuit. Again, the Court will not order a broad, "obey the law" injunction, as there is no evidence that Walmart's compliance with the law will not be forthcoming. *See AutoZone*, 707 F.3d at 841–43.

Finally, the EEOC requests that the Court require Walmart to contact Spaeth's guardian regarding any discipline or coaching of Spaeth and any issues involving accommodations for Spaeth's disability to prevent a recurrence of discrimination against Spaeth. Walmart argues that the EEOC's request is overbroad and has no time limit. The evidence in this case, however, shows that Walmart managers did in fact communicate with Spaeth's guardian mother until she entered a nursing home and Spaeth's sister took over the role of guardian. Such communication appears to have served both employee and employer in the past. The Court sees no reason why such communication regarding discipline or the need for accommodations would not help avoid any misunderstanding that could lead to problems in the future.

Accordingly, the Court imposes the following injunction against Walmart: Walmart must reinstate Marlo Spaeth as a Walmart employee, at a rate of pay of $14.90 per hour. Walmart shall also consult with Spaeth's guardian regarding any need for discipline or accommodations while she continues her employment.

### B. Monetary Relief

The EEOC seeks monetary relief for Spaeth, including backpay, prejudgment interest, and a tax component award. The EEOC asserts that backpay should be awarded in the amount of $77,307. "A plaintiff who wins a favorable verdict on an ADA claim is presumptively entitled to

8

Case 1:17-cv-00070-WCG   Filed 02/22/22   Page 8 of 12   Document 266

backpay." *Stragapede v. City of Evanston, Illinois*, 865 F.3d 861, 868 (7th Cir. 2017). Backpay is "the difference between actual earnings for the period and those which she would have earned absent the discrimination by defendant." *Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc.*, 755 F.2d 599, 606 (7th Cir. 1985). Once the plaintiff submits evidence to support her backpay calculations, the burden "shifts to the defendant to show that the plaintiff failed to mitigate damages or that damages were in fact less than the plaintiff asserts." *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994). Walmart argues that Spaeth failed to mitigate her damages, and that, mitigation aside, the EEOC inflated Spaeth's projected wage rate and average hours worked.

To prove a failure to mitigate damages, the employer must show that "(1) the employee failed to exercise reasonable diligence to mitigate his damages, and that (2) there was a reasonable likelihood that the employee might have found comparable work by exercising reasonable diligence." *Stragapede*, 865 F.3d at 868 (citation and alterations omitted). In this case, Spaeth, through Stevenson, submitted three job applications since her 2015 discharge. Stevenson also posted a general inquiry about potential job opportunities for Spaeth on Facebook and submitted targeted inquiries to the Wellness Center, the company where her brother worked, and the sheltered workshop where Spaeth had previously worked. Walmart asserts that these efforts do not amount to an exercise of reasonable diligence. The Court does not need to address whether Spaeth had failed to exercise reasonable diligence to mitigate her damages, however, because Walmart has not established that Spaeth likely would have found comparable work. In support of its argument that Spaeth was likely to obtain comparable employment, Walmart relies on the trial testimony of its Manitowoc store manager, Kent Abitz, who testified that there "are positions at other retailers," like Lowe's, near Walmart's Manitowoc Store. Trial Tr. Day 3 at 642. But Walmart has not shown that this position is substantially equivalent to the position Spaeth held at Walmart.

9

Therefore, Walmart has not met its burden to show that there was a reasonable likelihood that Spaeth would find comparable work by exercising reasonable diligence.

The EEOC asserts that its requested backpay amount of $77,307 represents lost wages for the period of July 16, 2015, to December 31, 2021, and is based on a 16-hour-per-week schedule, a wage of $12.50 per hour during the first year of the backpay period, and wages increasing approximately 5% per year thereafter. It contends that a 5% annual raise is consistent with Spaeth's history of raises at Walmart. Walmart asserts that the EEOC's figures are inflated. It argues that the Court should find that Spaeth would have received an annual raise of $0.40 per hour, as she did for the seven years before her termination. *See* Trial Exs. 11–17. The Court agrees that a $0.40 per hour raise each year is consistent with the most "current wage information available." *Garcia v. Sigmatron Int'l, Inc.*, 130 F. Supp. 3d 1249, 1258 (N.D. Ill. 2015). Although the EEOC asserts that the average total compensation and benefits for hourly associates exceeds $18 an hour, that is a nationwide average, and the EEOC has not presented evidence that it is representative of or consistent with what an associate in Manitowoc, Wisconsin would make. The Court concludes that, for the purposes of backpay calculations, Spaeth's wage rate would be $12.50 per hour from July 2015 to July 2016 and would increase $0.40 per hour each year thereafter, amounting to an hourly wage of $14.90 beginning July 2021.

As to the estimated number of hours Spaeth would work each week, the EEOC asserts that Spaeth would work 16 hours each week, based on the availability form she submitted to Walmart. Walmart asserts that, based on the average number of hours Spaeth worked during the last two years of her employment (July 2013 to July 2015), Spaeth would have worked 9.52 hours per week. The Court finds that Spaeth's work history, rather than her stated availability, is the best indicator of what she would have worked absent her discharge. Therefore, Spaeth's backpay award should be calculated based on her working 9.52 hours each week.

The EEOC also asserts that the judgment should include prejudgment interest based on its calculation of Spaeth's lost wages. The parties agree that prejudgment interest should be computed at the prime rate and compounded quarterly. The Court concludes that an award of prejudgment interest is warranted and must be computed at the prime rate and compounded quarterly.

The EEOC seeks a tax-component award to offset the additional tax burdens Spaeth will experience as a result of her back-pay and compensatory damages award. A tax-component award is "a payment geared toward easing the increased tax burden that results from a lump-sum award of back pay." *Vega v. Chi. Park Dist.*, 954 F.3d 996, 1010 (7th Cir. 2020) (citation omitted). Although Walmart argues that this case does not present special circumstances that warrant a tax-component award, the Seventh Circuit has not held that a plaintiff should receive a tax-component award only in extreme circumstances. *See Wal-Mart Stores*, 2020 WL 1527324, at *5 (citing *EEOC v. N. Star Hosp., Inc.*, 777 F.3d 898, 904 (7th Cir. 2015)). Instead, the Seventh Circuit has held that a tax-component award is appropriate in discrimination cases to offset the tax burden a plaintiff will carry as a result of an award of wage-replacement income, explaining that "without the tax-component award, [the plaintiff] will not be made whole." *N. Star Hosp.*, 777 F.3d at 904. Indeed, the remedial scheme in the ADA is designed to make the plaintiff whole. *See id.*; *AutoZone*, 707 F.3d at 840. The district court has "wide discretion in computing tax-component awards" and in fashioning an award that "fits the circumstances particular to the case." *Vega v. Chi. Park Dist.*, 12 F.4th 696, 707 (7th Cir. 2021) (internal quotation marks and citations omitted). Spaeth is entitled to a tax-component award, but the award is limited to the increased tax liability on the award of backpay and compensatory damages only. While backpay and compensatory damages are intended to make the plaintiff whole and to redress the wrongs committed against her, the purpose of punitive damages is to punish blameworthy behavior and deter future wrongful acts.

11

In sum, Spaeth is entitled to backpay, prejudgment interest, and a tax-component award, to be calculated by the parties consistent with this order.

## CONCLUSION

For these reasons, the EEOC's motion for equitable relief (Dkt. No. 251) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Walmart is ordered to reinstate Marlo Spaeth as a Walmart employee immediately, at a rate of pay of $14.90 per hour. Walmart shall consult with Spaeth's guardian regarding any need for discipline or accommodations while she continues her employment. Spaeth is also entitled to backpay, prejudgment interest, and a tax-component award.

Walmart's motion for leave to file a sur-reply (Dkt. No. 262) is **GRANTED**. The Clerk is directed to detach and e-file the sur-reply (Dkt. No. 262-1).

The Court will withhold entering judgment to allow the parties to calculate the amounts of backpay, prejudgment interest, and the tax component consistent with this order. Within 14 days of the date of this order, the parties must submit an updated damages chart, setting out the backpay, prejudgment interest, and tax-component amounts Spaeth is entitled to for the period from July 2015 to the date of her reinstatement.

**SO ORDERED** at Green Bay, Wisconsin this 22nd day of February, 2022.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge