UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

        v.                                    Case No. 17-C-70

WAL-MART STORES EAST LP,

        Defendant.

**DECISION AND ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50 AND MOTION FOR A NEW TRIAL UNDER RULE 59 AND TO REMIT DAMAGES**

      Plaintiff Equal Employment Opportunity Commission (EEOC) brought this action against Defendant Walmart Stores East LP on behalf of a former employee with Down Syndrome, Marlo Spaeth, alleging discrimination under Title I of the Americans with Disabilities Act of 1990 (ADA) and Title I of the Civil Rights Act of 1991. The EEOC alleged, among other things, that Walmart failed to accommodate Spaeth's disability. In particular, the EEOC asserted that Walmart violated the ADA by refusing to provide Spaeth with a permanent, modified fixed schedule of 12:00 p.m. to 4:00 p.m. after Walmart adopted a new customer-demand centric, automatic scheduling system that scheduled Spaeth to work from 1:00 p.m. to 5:30 p.m.

      After a four-day jury trial, the jury returned a verdict in favor of the EEOC, awarding $150,000 in compensatory damages and $125,000,000 in punitive damages. After the verdict was returned, the court granted Walmart's oral motion to reduce the award of compensatory and punitive damages to the statutory maximum of $300,000. *See* 42 U.S.C. § 1981(a). The court

advised that it would withhold the entry of judgment until it determined the issues of equitable relief.

On February 22, 2022, the court partially granted the EEOC's motion for equitable relief. The court ordered Walmart to reinstate Spaeth as a Walmart employee immediately, at a rate of pay of $14.90 per hour and to consult with Spaeth's guardian regarding any need for discipline or accommodations while she continues her employment. The court also found that Spaeth was entitled to backpay, prejudgment interest, and a tax-component award. On March 22, 2022, the court entered judgment in favor of the EEOC and against Walmart, awarding Spaeth $150,000 in compensatory damages, $150,000 in punitive damages, $44,757.80 in backpay, $5,978.63 in prejudgment interest, and $68,926.16 for tax consequences, for a total award in the amount of $419,662.59.

This matter comes before the court on Walmart's renewed motion for judgment as a matter of law under Rule 50 and motion for a new trial under Rule 59 and to remit damages. For the following reasons, the motions are denied.

**ANALYSIS**

Rule 50 of the Federal Rules of Civil Procedure "allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Passananti v. Cook Cty.*, 689 F.3d 655, 659 (7th Cir. 2012) (citation omitted). The court is to decide "whether a highly charitable assessment of the evidence supports the jury's verdict or if, instead, the jury was irrational to reach its conclusion." *Thorne v. Member Select Ins. Co.*, 882 F.3d 642, 644 (7th Cir. 2018) (internal quotation marks omitted). The court must view the evidence presented at trial in the light most favorable to the party that prevailed before the jury and draw all reasonable

inferences in that party's favor. *Martin v. Milwaukee Cty.*, 904 F.3d 544, 550 (7th Cir. 2018). The court may not weigh the evidence or make credibility determinations. *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018). Although the court reviews the entire record, "it must disregard all evidence favorable to the moving party that the jury [was] not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Tart v. Ill. Power Co.*, 366 F.3d 461, 478 (7th Cir. 2004). Overturning a jury verdict is not something that courts do lightly. *Massey v. Blue Cross–Blue Shield of Ill.*, 226 F.3d 922, 925 (7th Cir. 2000). A jury verdict will be overturned only if "the moving party can show that no rational jury could have brought in a verdict against it." *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007) (internal citations and quotation marks omitted).

Walmart asserts that it is entitled to judgment as a matter of law because the EEOC offered no evidence showing that Walmart was aware that Spaeth's difficulty adjusting to her new schedule was linked to her Down Syndrome. At trial, the EEOC had the burden to show that (1) Spaeth is a qualified individual with a disability, (2) Walmart was aware of her disability, and (3) Walmart failed to reasonably accommodate that disability. *See Ekstrand v. Sch. Dist. of Somerset*, 683 F.3d 826, 828 (7th Cir. 2012). Walmart cites several Seventh Circuit cases for the proposition that "disabled employees must make their employers aware of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a statement from a doctor, before an employer may be required under the ADA's reasonableness standard to provide a specific modest accommodation." *See Wells v. Winnebago Cty., Illinois*, 820 F.3d 864, 867 (7th Cir. 2016) (internal quotation marks and citation omitted). It contends that Spaeth's accommodations were nonobvious and that the EEOC failed to show that Walmart received any medical evidence or statement from a doctor establishing that Spaeth's

3

difficulty adjusting to her new schedule was a limitation of her Down Syndrome. Walmart argues that the EEOC's own expert, Dr. David Smith, testified that most people have "no idea" that individuals with Down Syndrome have difficulty adjusting to change, such that the need for a fixed work schedule would accommodate that limitation. *See* Trial Tr. Day 2 at 413–14. It asserts that while Walmart knew Spaeth requested to return to her prior work schedule, it did not understand that Spaeth's request was linked to her disability or was one for an accommodation under the ADA.

Where the need for an accommodation is obvious, however, the employer must initiate an informal interactive process with the employee or those acting on the employee's behalf to determine whether a reasonable accommodation should be provided. In this case, the EEOC presented evidence that Spaeth's limitations and need for an accommodation were obvious. Walmart managers testified that they were aware that Spaeth needed extra support when changes were made to her routine and worked alongside her when she learned new tasks. *See id.* at 311, 330–31 (Castro); Trial Tr. Day 3 at 618–20 (Moss); 592 (Popp). After Walmart changed Spaeth's schedule in November 2014, Spaeth made repeated requests to return to her old schedule. Spaeth's sister and guardian, Amy Jo Stevenson, testified that she called Karen Becker, Walmart's Human Resources Coordinator, and advised that Spaeth could not handle the new schedule because of her Down Syndrome. Trial Tr. Day 1 at 91–92, 97–98 (Stevenson). After Spaeth's termination in July 2015, Stevenson met with Walmart managers, asking for reinstatement of Spaeth's position and a schedule accommodation due to Spaeth's Down Syndrome. During the meeting, Stevenson told Walmart managers that Spaeth had the right to an accommodation under the ADA. *Id.* at 96; Trial Tr. Day 2 at 276–77 (Castro). Rather than engage in an interactive process regarding an accommodation, Walmart ended all communication with Spaeth's family and reaffirmed her termination. *See* Tr. Ex. 34; Trial Tr. Day 2 at 277–85, 318–19 (Castro).

It was the jury's responsibility to assess credibility and resolve conflicts in the evidence regarding the obviousness of Spaeth's need for an accommodation. The jury deemed the EEOC's evidence to be more credible, and it is not for this court to substitute its view of the contested evidence for the jury's where the jury's findings were reasonable. The totality of the evidence presented at trial, combined with all reasonable inferences permissibly drawn therefrom, was sufficient to support the verdict when viewed in the light most favorable to the EEOC. Accordingly, Walmart's motion for judgment as a matter of law on this basis is denied.

Walmart also asserts that the jury's award of punitive damages was against the manifest weight of the evidence. Section 1981a(b)(1) provides that a complaining party may recover punitive damages "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The terms "malice" or "reckless indifference" in this section "pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). In other words, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Id.* at 536.

Walmart argues that its actions were not the result of animus or reckless disregard for Spaeth's rights but were instead mistakes caused by mere negligence. It asserts that its denial of Spaeth's request for an accommodation was based on a good faith misunderstanding of her disability. But the jury was entitled to reject Walmart's assertions that it misunderstood its ADA obligations and wanted to help Spaeth. While the actions of Walmart's employees may not have been the result of animus or ill will, it was not unreasonable for the jury to conclude that Walmart

5

knew that Spaeth's attendance problems were disability-related, was aware that Spaeth had a federally protected right, and rejected her request for a reasonable accommodation. Indeed, Walmart's written policies and procedures prohibit such conduct. The evidence at trial established that Walmart's managers and supervisors had undergone ADA and discrimination training and that Walmart failed to engage in the interactive process, cut off communications with Spaeth's family, and denied Spaeth's request for reinstatement. *See* Trial Tr. Day 2 at 256, 260–62, 279 (Castro); 423 (Spude); 468–69 (Stern); 583–86 (Popp); Trial Tr. Day 4 at 702, 720 (Spude); *see also* Trial Ex. 34. Based on the evidence presented at trial and the jury's determination that Walmart was aware of Spaeth's disability but refused her numerous requests for a disability accommodation, terminated her, and declined to reinstate her after Spaeth's sister referred to the ADA, Walmart acted "in the face of a perceived risk" that its conduct would violate federal law. *Kolstad*, 527 U.S. at 536. A rational jury could have found that Walmart acted with reckless indifference and had sufficient evidence to impose punitive damages. *See EEOC v. AutoZone, Inc.*, 707 F.3d 824, 835 (7th Cir. 2013).

Rule 59 of the Federal Rules of Civil Procedure allows a trial court to grant a motion for a new trial "on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Bowers v. Dart*, 1 F.4th 513, 521 (7th Cir. 2021) (internal quotation marks and citation omitted). When considering whether the jury's verdict goes against the manifest weight of the evidence, the court must perform "its own assessment of the evidence presented." *Lewis v. McLean*, 941 F.3d 886, 893 (7th Cir. 2019). At the same time, a jury's verdict will be set aside "only if 'no rational jury' could have rendered the verdict." *Bowers*,

6

Case 1:17-cv-00070-WCG   Filed 11/07/22   Page 6 of 9   Document 283

1 F.4th at 521 (internal quotation marks and citation omitted). The court's "narrow" role is to determine whether a "reasonable basis exists in the record to support the verdict." *Lewis*, 941 F.3d at 893 (citation omitted). Walmart asserts that the jury's verdict was against the manifest weight of the evidence because the EEOC did not meet its evidentiary burden to show that Walmart was aware of the link between Spaeth's attendance issues and her Down Syndrome. The court has concluded that a reasonable jury could find that Walmart was aware that Spaeth needed an accommodation because of her disability. The jury was well situated to answer that factual question, and this court will not disturb that conclusion.

Finally, Walmart requests that the court remit the compensatory damages award. A court may alter or amend a judgment where there is evidence of manifest error of fact or law. *See* Fed. R. Civ. P. 59(e). "When reviewing an award of compensatory damages, the court asks whether the award is 'monstrously excessive,' whether there is a rational connection between the evidence and the award, and whether the award is roughly comparable to awards made in similar cases." *EEOC v. Wal-Mart Stores, Inc.*, 503 F. Supp. 3d 801, 819 (W.D. Wis. 2020) (citing *Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015); *Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058, 1066 (7th Cir. 2001)).

Walmart contends that the court should remit the jury's $150,000 compensatory damages award to $15,000 because, while the evidence showed that Spaeth suffered depression after her termination from Walmart, trial testimony suggested that her depression was not solely caused by the events of this case. *See* Def.'s Br. at 30, Dkt. No. 278. It points to Dr. Smith's testimony that Spaeth did not begin experiencing depressive symptoms until "six to eight months" after her termination from Walmart, which coincided with "her mother's illness and subsequent passing." Trial Tr. Day 2 at 397–400 (Smith). But the EEOC presented evidence that Spaeth experienced

7

distress and confusion immediately following her termination. In particular, Spaeth testified that she was upset when she was terminated and that six years post-termination, she is still sad when she thinks about her discharge. *Id.* at 356–57 (Spaeth). Spaeth's roommate and stepsister, Barbara Barnes, testified that when Spaeth sees a Walmart commercial, she covers her face to avoid looking at it because it reminds Spaeth of her termination. *Id.* at 460–61 (Barnes). Stevenson also testified that, the day Spaeth was terminated, Spaeth was crying and could not talk on the phone and that, for years after the termination, Spaeth put her head in her hands anytime she heard the word "Walmart." Trial Tr. Day 1 at 92–94 (Stevenson). Stevenson indicated that Spaeth showed signs of memory loss after her termination and that Dr. Smith diagnosed Spaeth with depression and prescribed anti-depressant medication, which Spaeth continued to take at the time of the trial. *Id.* at 104–05. Dr. Smith testified that Spaeth reported that "every day is a bad day" since her termination. Trial Tr. Day 2 at 382–83 (Smith).

Walmart further asserts that the compensatory damages award should be remitted because the award here is not comparable to awards in other cases. Def.'s Br. at 29 (collecting cases). But the EEOC points to several cases in which large compensatory damage awards have been awarded in this Circuit. Pl.'s Br. at 31–32, Dkt. No. 281 (collecting cases). "Due to the highly fact-specific nature of Title VII cases, such comparisons are rarely dispositive" in any event. *See Vega v. Chi. Park Dist.*, 954 F.3d 996, 1008 (7th Cir. 2020). While another jury may have evaluated Spaeth's damages differently, the jury's verdict here is supported by ample evidence. Considering the record as a whole, the court cannot conclude that the jury's award of compensatory damages is irrational or unreasonable. Accordingly, the court will not remit the jury's compensatory damages award in this case.

## CONCLUSION

For these reasons, Walmart's renewed motion for judgment as a matter of law under Rule 50 and motion for a new trial under Rule 59 and to remit damages (Dkt. No. 277) is **DENIED**.

**SO ORDERED** at Green Bay, Wisconsin this 7th day of November, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge