UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.                                                     Case No. 17-C-70

WAL-MART STORES EAST LP,

    Defendant.

---

# DECISION AND ORDER DENYING RENEWED
# MOTION FOR ENTRY OF INJUNCTION

---

      Plaintiff Equal Employment Opportunity Commission (EEOC) brought this action against Defendant Wal-Mart Stores East LP on behalf of a former employee with Down Syndrome, Marlo Spaeth, alleging discrimination under Title I of the Americans with Disabilities Act of 1990 (ADA) and Title I of the Civil Rights Act of 1991. The EEOC alleged, among other things, that Walmart failed to accommodate Spaeth's disability by refusing to provide her with a permanent, modified fixed schedule of 12:00 p.m. to 4:00 p.m. after Walmart adopted a new customer-demand centric, automatic scheduling system that scheduled Spaeth to work from 1:00 p.m. to 5:30 p.m.

      After a four-day jury trial, the jury returned a verdict in favor of the EEOC and awarded $150,000 in compensatory damages and $125,000,000 in punitive damages. After the verdict was returned, the court granted Walmart's oral motion to reduce the award of compensatory and punitive damages to the statutory maximum of $300,000. *See* 42 U.S.C. § 1981(a). The court withheld the entry of judgment until it determined the issues of equitable relief.

      On February 22, 2022, the court partially granted the EEOC's motion for equitable relief. The court ordered Walmart to immediately reinstate Spaeth as a Walmart employee, at a rate of

pay of $14.90 per hour, and to consult with Spaeth's guardian regarding any need for discipline or accommodations while she continues her employment. The court also found that Spaeth was entitled to backpay, prejudgment interest, and a tax-component award. But the court denied the EEOC's request for other injunctive relief.

Judgment was entered in favor of the EEOC and against Walmart, awarding Spaeth $150,000.00 in compensatory damages, $150,000.00 in punitive damages, $44,757.80 in backpay, $5,978.63 in prejudgment interest, and $68,926.16 for tax consequences, for a total award in the amount of $419,662.59. Walmart appealed the jury's adverse finding on liability along with the awards of compensatory and punitive damages and the EEOC cross-appealed the denial of injunctive relief. The Seventh Circuit affirmed as to the jury's finding of liability and the awards of compensatory and punitive damages but vacated the judgment as to the denial of injunctive relief and remanded the matter to this court for further consideration of that issue.

This matter comes before the court on the EEOC's renewed motion for entry of an injunction. The EEOC requests that the court grant the following injunctive measures for a period of five years:

**Equitable Relief Generally Applicable to Walmart**

1. Enjoin Walmart from denying a reasonable accommodation to any Walmart employee with a disability within the United States, in the absence of undue hardship, on the ground that the accommodation and/or the need for accommodation is recurring, long-term, or permanent in nature.

2. Require Walmart to modify its accommodation policies to clarify that recurring, long-term, or permanent disability accommodations are available to Walmart employees, in the absence of undue hardship.

**Equitable Relief Applicable Within Walmart's Region 53**

3. Enjoin Walmart from failing to provide reasonable accommodations to employees with disabilities, in violation of the ADA.

4. Require Walmart to provide notice to all of its employees informing them of the verdict and injunction in this suit and to specifically inform employees of their right to contact the EEOC without fear of retaliation.

5. Require Walmart to notify the EEOC within ninety days of any request for accommodation of an employee's disability, and to provide the EEOC with a description of the request, the name, title, phone number, e-mail address, and mailing address of the requestor, the steps taken by Walmart to accommodate the request, and the result of the request.

6. Require Walmart to provide training to its managers and supervisors regarding the obligation to grant scheduling accommodations under the ADA in the absence of undue hardship and to remind them that a request for a scheduling accommodation from a person with a disability cannot be denied at the store level.

7. Require Walmart to document and evaluate adherence to Walmart's Equal Employment Opportunity policies during the annual review process for its supervisors, managers, market people operation leads, and regional people directors.

**<u>Non-Interference With This Injunction</u>**

8. Enjoin Walmart from interfering with the implementation of these injunctive provisions by retaliating against any person who requests an accommodation within the scope of this injunction, who opposes a practice that is a violation of this injunction, or who provides testimony or other assistance to the EEOC in investigating compliance with or enforcing this injunction.

Dkt. No. 302. For the following reasons, the motion will be denied.

Under the ADA, if an employer has "intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint," a district court "*may* enjoin [the employer] from engaging in such unlawful employment practice." 42 U.S.C. § 2000e-5(g)(1) (emphasis added); 42 U.S.C. § 12117(a). "District courts have wide discretion 'to fashion a complete remedy, which may include injunctive relief, in order to make whole victims of employment discrimination.'" *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013) (quoting *EEOC v. Gurnee Inn Corp.*, 941 F.2d 815, 817 (7th Cir. 1990)).

In deciding whether to grant injunctive relief, the court's "central task is to consider whether the employer's discriminatory conduct could possibly persist into the future." *EEOC v. Wal-Mart Stores*, 38 F.4th 651, 661 (7th Cir. 2022) (citing *AutoZone*, 707 F.3d at 840). "Because the determinative judgment is about the employer's potential future actions, the EEOC need not prove that the employer previously engaged in widespread discrimination, and 'injunctive relief is appropriate even where the EEOC has produced no evidence of discrimination going beyond the particular claimant's case.'" *AutoZone*, 707 F.3d at 840 (alterations omitted) (quoting *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997)). The employer has the "burden to establish that its discriminatory conduct is unlikely to recur." *EEOC v. Wal-Mart Stores*, 113 F.4th 777, 793 (7th Cir. 2024) (citing *AutoZone*, 707 F.3d at 840).

The conclusion that an employer "was intentionally engaging in an unlawful employment practice does not necessarily warrant the awarding of injunctive relief," however. *Williams v. Gen. Foods Corp.*, 492 F.2d 399, 407 (7th Cir. 1974). In determining whether to grant injunctive relief, the court must "balance the various equities between the parties and decide upon a result which is consistent with the purposes of" the ADA and the "fundamental concepts of fairness." *Id.* (internal quotation marks and citation omitted). The court may consider a number of factors, including whether the employer has "engaged in a pattern or practice of discrimination and whether current employees harbor discriminatory animus," *Wal-Mart Stores*, 38 F.4th at 661, and whether the relief requested is redundant to the employer's existing policies and procedures, *Miles v. Indiana*, 387 F.3d 591, 602 (7th Cir. 2004).

Walmart asserts that the injunctive relief requested is not appropriate because the conduct that the jury found actionable is unlikely to recur. It contends that this unique incident involved only one associate at one store and one kind of reasonable accommodation. Dkt. No. 305 at 25.

4

The EEOC argues that this case involved failures at "every level of the company" to recognize that a request for a long-term schedule modification is a reasonable accommodation under the ADA. Dkt. No. 307 at 11. It contends that the store's managers and supervisors denied Spaeth's request for a reasonable accommodation, that the regional human resources manager rejected her request for a schedule accommodation because Walmart had no obligation to make long-term or permanent schedule modifications as a reasonable accommodation, that this determination was consistent with company headquarters' directive not to alter the new computer-generated employee schedules, and that the Global Ethics department reviewed the company's treatment of Spaeth and concluded there was no violation of company policy.

Although many of the supervisors and managers involved in the decision-making process are still employed by Walmart, the continued employment of these supervisors and managers is not, by itself, a sufficient reason to grant the injunctive relief requested. There is little risk that similar violations will occur in the future because Spaeth did not accept reinstatement and is therefore no longer with Walmart. In addition, nothing in the record suggests that a "pattern or practice of discrimination" exists. *Wal-Mart Stores*, 38 F.4th at 661. Walmart asserts that there is no evidence of other ADA complaints against Walmart similar to the violation at issue here. Manitowoc Store Manager Kent Abitz testified at trial that he never terminated any other associate with disabilities for any reason. Trial Tr. Day 3 at 125–26, Dkt. No. 247. Walmart notes that it has been three years since the jury's verdict and there has been no recurrence of the conduct at issue since that time. *See* Dkt. No. 305 at 14.

This is not a case where Walmart employees exhibited animus or ill will against Spaeth individually or individuals with cognitive disabilities more generally. The record reflects that, for over 15 years, Walmart's management staff and associates took steps to help Spaeth succeed as an

5

Case 1:17-cv-00070-WCG    Filed 02/07/25    Page 5 of 11    Document 310

associate.  For instance, management staff reminded Spaeth of her schedule.  Trial Tr. Day 1 at 140, Dkt. No. 245; Trial Tr. Day 3 at 7–9.  Personnel Coordinator Karen Becker would personally handwrite Spaeth's schedule every week and had Spaeth read the schedule back to her, to ensure Spaeth knew the hours and days she was supposed to work.  Trial Tr. Day 1 at 175.  Management also encouraged Spaeth to finish her scheduled shifts.  *Id.* at 171; Tr. Day 3 at 66, 113–14.  During her tenure, other associates helped Spaeth by teaching her new job skills and devoting extra time to Spaeth's training.  Trial Tr. Day 2 at 73–74, Dkt. No. 246.  No one wanted to see Spaeth lose her job.  After Spaeth was terminated, Training Coordinator Debbie Moss cried as she walked Spaeth to the front of the store and gave Spaeth a hug as she left.  Trial Tr. Day 3 at 116–17. Spaeth testified that she liked her job at Walmart, that she wanted her job back, and that she missed the job and the people at Walmart.  Trial Tr. Day 2 at 121–22.  While the jury found that Walmart violated the ADA, Walmart management's actions were not taken with animosity toward this individual.  Instead, the history with this employee shows a positive attitude toward people with disabilities and Down Syndrome in particular.  "Where the presence of discriminatory animus or pattern makes future bad conduct more likely to occur, the absence of those factors makes future bad conduct less likely to occur."  *Wal-Mart Stores*, 38 F.4th at 661–62.  There is no evidence to suggest this is more than an isolated incident.

Moreover, Walmart has antidiscrimination and accommodation policies, such as an "Accommodation in Employment" policy, a "Discrimination & Harassment Prevention Policy," and an "Open Door Communications Policy," that include provisions addressing accommodations for employees with disabilities, prohibit discrimination or harassment based on disability, and encourage employees to bring concerns to their supervisor or manager.  Trial Exs. 1061, 1055–56. Walmart also has an Accommodation Service Center department that assists managers and stores

6

Case 1:17-cv-00070-WCG    Filed 02/07/25    Page 6 of 11    Document 310

with navigating accommodation requests. Trial Tr. Day 3 at 659–60. Walmart provides training on these policies to managers and employees. The EEOC argues that Walmart's policies and trainings are not effective because the regional and national Walmart officials believed their unlawful actions in this case were consistent with those policies. But, again, there is no evidence of any incidents of similar discrimination or that "the proven illegal conduct may be resumed." *AutoZone*, 707 F.3d at 842–43.

Nothing in the record suggests that Walmart is a corporation that "flouts its obligations or is unconcerned about complying with laws prohibiting discrimination." *EEOC v. CEC Entm't, Inc.*, No. 98-C-698, 2000 WL 1339288, at *27 (W.D. Wis. Mar. 14, 2000). The substantial verdict against Walmart and the publicity it generated serve as strong deterrents against any repeat of the conduct at issue in this case and create a strong incentive for Walmart to ensure that requests for reasonable accommodations are adequately addressed without court oversight of Walmart's administration and enforcement of its policies and procedures. *See* EEOC Press Release, *Jury Awards of $125 Million in EEOC Disability Discrimination Case Against Walmart*, EEOC (July 16, 2021), https://www.eeoc.gov/newsroom/jury-awards-over-125-million-eeoc-disability-discrimination-case-against-walmart; *see also EEOC v. Costco Wholesale Corp.*, No. 14-C-6553, 2017 WL 4570840, at *9 (N.D. Ill. May 15, 2017). Based on the record before the court, Walmart has established that discriminatory conduct is unlikely to persist in the future. *AutoZone*, 707 F.3d at 840. As a result, the court declines to enter injunctive relief.

In addition, the court finds that each of the eight requests for injunctive relief are unnecessary. The EEOC's first and third requests ask the court to enjoin Walmart generally from denying a reasonable accommodation to any Walmart employee with a disability within the United States, in the absence of undue hardship, on the ground that the accommodation and/or the need

7

for accommodation is recurring, long-term, or permanent in nature and to enjoin Walmart with respect to Region 53 from failing to provide reasonable accommodations to employees with disabilities in violation of the ADA. These requests are merely directives to have Walmart obey the law. "An injunction that does no more than order a defeated litigant to obey the law" is generally disfavored, as it raises concerns of overbreadth and vagueness. *AutoZone*, 707 F.3d at 841 ("An obey-the-law injunction departs from the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation."). Obey the law injunctions may be "appropriate in situations 'when the victorious employee remains at the company or has been reinstated; where the particular employees or supervisors responsible for the illegal conduct remain at the company; and/or where the employer has taken some particular action—like withdrawing an accommodation policy—that convinces the court that voluntary compliance with the law will not be forthcoming.'" *Wal-Mart Stores*, 38 F.4th at 662 (quoting *AutoZone*, 707 F.3d at 842–43).

Spaeth no longer works at Walmart and, although the supervisors involved in the unlawful conduct at issue remain employed by Walmart, there is no evidence suggesting that the proven illegal conduct might be resumed in the future. The EEOC's request would require the court to engage in continuous supervision and monitoring of Walmart's nationwide compliance with the ADA's reasonable accommodation provisions for its 1.6 million associates. *See How many people work at Walmart?*, WALMART, https://corporate.walmart.com/askwalmart/how-many-people-work-at-walmart (last visited Feb. 7, 2025). The more limited relief requested with respect to Region 53 requires supervision and monitoring of 114 stores and 30,000 associates. Trial Tr. Day 3 at 197, 220. Because nothing in the record "convinces the court that voluntary compliance with the law will not be forthcoming," the burdensome, expansive, and wide-reaching relief against

Walmart generally and Region 53 in particular is not warranted here. *Wal-Mart Stores*, 38 F.4th at 662 (quoting *AutoZone*, 707 F.3d at 842–43).

The EEOC characterizes its next set of requests for injunctive relief (Nos. 2, 4–7) as "supplemental provisions that are designed to further promote Walmart's compliance with the law and with the injunction." Dkt. No. 303 at 17. But requiring Walmart to modify its policies and training regarding the ADA's requirements are overly broad and appear to be redundant to the systems that Walmart has in place.

More specifically, the EEOC asks that the court require Walmart generally to modify its accommodation policies to clarify that recurring, long-term, or permanent disability accommodations are available to employees, in the absence of undue hardship. Walmart has an "Accommodation in Employment" policy, a "Discrimination & Harassment Prevention Policy," and an "Open Door Communications Policy." Trial Exs. 1061, 1055–56. Its policies identify modified work schedules as a reasonable accommodation. Trial Ex. 1061. It is not necessary to explicitly highlight that modified work schedules or *any* other reasonable accommodation may be recurring, long-term, or permanent.

The EEOC also seeks injunctive relief requiring that Region 53 "provide notice to all of its employees informing them of the verdict and injunction in this suit and to specifically inform employees of their right to contact the EEOC without fear of retaliation." Dkt. No. 302 at 1–2. But Walmart already posts its antidiscrimination and accommodation policies, which include anti-retaliation provisions, in its breakrooms and on its intranet for associates to view, Trial Tr. Day 3 at 152–56, and the court does not find it necessary to post notice of the verdict of this isolated incident in all the stores located in Region 53.

9

In addition, the EEOC asks that the court order Region 53 to provide training to managers and supervisors regarding the obligation to grant schedule accommodations under the ADA in the absence of undue hardship and to remind them that requests for a scheduling accommodation made by a person with a disability cannot be denied at the store level. Walmart provides annual training on discrimination and prevention as well as accommodation training at least once a year at all levels of the organization. *Id.* at 160. Therefore, the specific training requested by the EEOC is not necessary here.

The EEOC next asks that the court require Region 53 to notify the EEOC within 90 days of any request for accommodation of an employee's disability and provide the EEOC with detailed information about the accommodation request and its outcome made in all 114 stores located in Region 53. The EEOC further requests that the court require Region 53 to document and evaluate adherence to Walmart's Equal Employment Opportunity policies during the annual review process for all of its management associates, including supervisors, managers, market people operation leads, and regional people directors. Again, because nothing in the record "convinces the court that voluntary compliance with the law will not be forthcoming," the court finds that these requests are overly broad, unduly burdensome, and unnecessary. *See Wal-Mart Stores*, 38 F.4th at 662 (quoting *AutoZone*, 707 F.3d at 842–43).

Finally, the EEOC asks the court to enjoin Walmart from interfering with the implementation of these injunctive provisions by retaliating against any person who requests an accommodation within the scope of this injunction, who opposes a practice that is a violation of this injunction, or who provides testimony or other assistance to the EEOC in investigating compliance with or enforcing this injunction. Because the court is not granting any of the injunctive relief the EEOC seeks, this request is unnecessary.

10

While the Manitowoc store's response to Spaeth's accommodation request violated the ADA, the incident at this one store involved unique circumstances that do not justify the far-reaching and burdensome injunctive relief the EEOC seeks. The court notes that it is, of course, free to revise the EEOC's request for injunctive relief as appropriate. *See Wal-Mart Stores*, 113 F.4th at 793. But the court concludes that even modified injunctive relief is not warranted here. Given the adverse publicity Walmart suffered as a result of the jury's verdict, especially the $125 million award in punitive damages, and in the absence of any evidence of animus toward individuals with cognitive disabilities, the court is satisfied that Walmart, a nationwide retail store whose success is in no small measure dependent upon its public image, has taken and will continue to take every reasonable measure to ensure no similar incident occurs in the future.

**IT IS THEREFORE ORDERED** that the EEOC's renewed motion for entry of an injunction (Dkt. No. 302) is **DENIED**.

Dated at Green Bay, Wisconsin this 7th day of February, 2025.

William C. Griesbach
United States District Judge